IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| AMERICAN SMALL BUSINESS LEAGUE, <br><br> Plaintiff, <br><br> v. <br><br> U.S. SMALL BUSINESS ADMINISTRATION, <br><br> Defendant. | Case No. 20-cv-04619-MMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO STAY; DEFERRING RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
|---|---|

Before the Court are: (1) plaintiff American Small Business League's ("ASBL") Motion for Summary Judgment, filed September 4, 2020, and (2) defendant U.S. Small Business Administration's ("SBA") Motion to Stay, filed September 18, 2020. The SBA has filed opposition to ASBL's Motion for Summary Judgment, to which ASBL has replied; ASBL has filed opposition to the SBA's Motion to Stay, to which the SBA has replied. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

## BACKGROUND

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was enacted in response to the COVID-19 pandemic, see CARES Act, Pub. L. 116-136, 134 Stat. 281 (2020), which Act, by amending Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a), established the Paycheck Protection Program ("PPP"), see id. § 1102(a). Under the PPP, the SBA is authorized to provide small businesses

---

[1] By order filed October 19, 2020, the Court took the matters under submission.

with loans where the applicant certifies, inter alia, "the uncertainty of current economic conditions makes necessary the loan request to support . . . ongoing operations." See id. § 1102(a)(2)(G)(i)(I).  PPP loans can be used to cover a number of business expenses, including "payroll costs," "costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums," "rent," and "utilities."  See id. § 1102(a)(2)(F)(i).  On April 24, 2020, Congress passed, and the President signed, legislation by which the initial allocation for PPP loans was raised to $659 billion.  See Act of April 24, 2020, Pub. L. 116-139, 134 Stat. 620 (2020).  As of August 8, 2020, the SBA has approved over 5 million PPP loans, totaling over $525 billion.  See Paycheck Protection Program, SBA, https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program#section-header-11 (last visited Oct. 22, 2020).

In the instant action, ASBL alleges that, on April 9, 2020, it made a Freedom of Information Act ("FOIA") request to the SBA, which request ASBL amended on April 16, 2020, to seek "[d]ata showing how the appropriated funds from the CARES Act were distributed through [the] PPP program."  (See Compl. ¶ 18.)  According to ASBL, "[t]o date, the SBA has not produced any records to ASBL in response to ASBL's FOIA request," aside from providing hyperlinks to the following: (1) "a public summary document which stated, in very broad terms, the total approved PPP loans and amounts distributed nationally, by state, and by industry," and (2) "information the SBA made public on July 6, 2020," which information, ASBL alleges, consists of the following:

> For all PPP loans of $150,000 or more, the SBA released business names, addresses, NAICS codes, zip codes, business type, demographic data, non-profit information, name of lender, jobs supported, and loan amount ranges, stating whether each loan was for $150,000-$350,000, $350,000-$1 million, $1-2 million, $2-5 million, or $5-10 million.  For all PPP loans of less than $150,000, the SBA released this same limited information except — critically — borrower names and addresses.

(See id. ¶¶ 16, 19, 22 (internal quotation and citation omitted).)  ASBL further alleges the SBA "has not fully informed ASBL of the extent to which it has records that are responsive to ASBL's FOIA request," nor has it stated "whether and the extent to which it

intends to disclose records and information in response to ASBL's FOIA request" and "whether or the extent to which it intends to withhold records or information based on FOIA exemptions, or, if so, what exemptions it believes might apply." (See id. ¶¶ 23-25.)[2]

Based on the above allegations, ASBL, on July 10, 2020, filed the instant action pursuant to FOIA, seeking an injunction directing the SBA to fully respond to ASBL's FOIA request.

On September 4, 2020, ASBL moved for summary judgment, seeking "immediate disclosure" of "the same information about each and every loan approved by the SBA as part of the $650 billion Paycheck Protection Program . . . that the SBA publishes on its website about other loans made pursuant [to] 15 U.S.C. section 636(a)," including all borrower names, loan amounts, and the extent, if any, to which each borrower's PPP loan was forgiven. (See Mot. for Summ. J. at 1:19-26, 2:24-26.)

On September 18, 2020, the SBA filed opposition to ASBL's motion and moved to stay the instant action pending resolution of two earlier-filed FOIA cases, WP Co. LLP v. U.S. Small Business Administration, No. 20-cv-01240-JEB (D.D.C. May 12, 2020) ("Washington Post") and Center for Public Integrity v. U.S. Small Business Administration, No. 20-cv-01614-JEB (D.D.C. June 19, 2020). (See Opp. to Mot. for Summ. J. at 1:1-23; Mot. to Stay at 1:1-23.)  The Court first addresses the Motion to Stay.

**DISCUSSION**

**A.   Motion to Stay**

In Washington Post and Center for Public Integrity, the plaintiffs therein seek the same PPP loan information as ASBL seeks in the above-titled action.  Both Washington Post and Center for Public Integrity are currently proceeding before Judge James E. Boasberg of the District Court for the District of Columbia, and briefing on the parties' cross-motions for summary judgment was completed on September 29, 2020.  See Min.

---

[2] On October 16, 2020, the Court ordered the SBA to file, by October 30, 2020, a response to ASBL's FOIA request to the extent ASBL seeks PPP loan information.

3

Order, Washington Post, No. 20-cv-01240-JEB (D.D.C. July 21, 2020); Min. Order, Center for Public Integrity, No. 20-cv-01614-JEB (D.D.C. Aug. 11, 2020).

### 1.     Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). A court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," even if the "issues in such proceedings" are not "necessarily controlling of the action before the court." See Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979).

The proponent of a stay bears the burden of showing such relief is warranted. See Clinton v. Jones, 520 U.S. 681, 708 (1997). In deciding whether to stay proceedings pending resolution of another action, a district court must weigh "the competing interests which will be affected by the granting or refusal to grant a stay," including (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." See Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).

### 2.     Discussion

The Court considers each of the above-listed factors, in turn.

#### a.     Damage Resulting from Granting of Stay

The Court first considers the "possible damage which may result from the granting of a stay." See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

Here, ASBL argues, a stay "would delay a decision on ASBL's motion until after Congress decides whether (and if so how) to spend hundreds of billions more taxpayer

4

dollars on additional COVID-19 relief efforts, and until after the November election," whereas, ASBL asserts, "ASBL and the public need complete information about how PPP dollars were spent now . . . so that they can engage with their representatives about future relief efforts in a fully informed manner." (See Opp. to Mot. to Stay at 4:5-11 (emphasis omitted).)

In so arguing, ASBL assumes this Court, unlike the District Court for the District of Columbia, will be able to issue a decision within the time frame it proposes. As a practical matter, however, a relatively quick decision in the above-titled case is unlikely. Although, as ASBL points out, the SBA has opposed ASBL's motion solely on procedural grounds,[3] the SBA, in the two District of Columbia cases, has made clear it is withholding the requested information pursuant to FOIA Exemptions 4 and 6, i.e., "confidential commercial information" and "information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," and ASBL has included, as an exhibit to its motion, the SBA's argument in support of such position. (See Declaration of Karl Olson ("Olson Decl."), Ex. P (SBA's Motion for Summary Judgment in Washington Post) at 1.)[4] In addition, to the extent ASBL, while acknowledging the "issues" presented in the instant action and Washington Post "overlap," asserts the "legal arguments" presented in the two cases are "different" (see Opp. to Mot. to Stay at 6 n.6), the one argument

---

[3] In its opposition to ASBL's motion, the SBA argued only that the Court should stay the instant case pending a decision in the two District of Columbia cases, or, in the alternative, deny ASBL's motion "as premature." (See Opp. to Mot. for Summ. J. at 1:10-16.)

[4] The Court hereby GRANTS ASBL's unopposed Request for Judicial Notice, wherein ASBL seeks judicial notice of the following documents: (1) spreadsheets available on the SBA's website, (2) the PPP "Borrower Application Form," (3) news articles, (4) government publications and records, and (5) the SBA's motion for summary judgment and supporting declaration in Washington Post. See Fed. R. Evid. 201(b) (providing court may judicially notice facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." (internal quotation and citation omitted)); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of documents filed in other cases).

identified by ASBL as not being raised in Washington Post has been raised in Center for Public Integrity (see Reply in Supp. of Mot. to Stay at 3:2-6 (citing plaintiff's cross-motion for summary judgment in Center for Public Integrity)).  Under such circumstances, a decision on ASBL's motion in this case would require the Court to review a patchwork of briefing submitted in three separate cases.

Further, there is no indication that the District Court for the District of Columbia will not act expeditiously to resolve the motions before it.  The complaint in Washington Post was filed May 12, 2020, two months before the filing of the complaint in the instant action, and the complaint in Center for Public Integrity was filed June 19, 2020, three weeks before the filing of the complaint in the instant action.  Additionally, the motions before the District Court for the District of Columbia are, as noted, fully briefed.[5]

In any event, even if the Court were to decide ASBL's motion in its favor within the proposed time frame, one cannot predict how the disclosure of the requested PPP loan information would impact the upcoming election and Congress' decision with respect to funding the PPP.

In sum, the Court finds the harm asserted by ASBL is too speculative to weigh against the granting of a stay.

### b.  Hardship or Inequity Party May Suffer Absent Stay

The Court next considers the second of the above-referenced factors, "the hardship or inequity which a party may suffer in being required to go forward."  See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

In that regard, ASBL contends, "proceeding with this case would cause [the SBA] no hardship at all, since briefing on summary judgment here is now complete."  (See Opp. to Mot. to Stay at 5:11-14.)  In response, the SBA states it "does not suggest that it

---

[5] ASBL points out that the briefing on its motion was completed four days before the briefing in the District of Columbia cases.  That four day difference, however, is unlikely to have any effect, let alone a significant one, on the timing of a decision in either of the two districts.

would suffer any hardship or inequity . . . beyond the risk of being bound by inconsistent rulings." (See Reply in Supp. of Mot. to Stay at 4:23-5:2 (internal quotation and citation omitted).) The SBA's concern is, however, more appropriately addressed in connection with the third factor.

Accordingly, the Court finds the SBA has not demonstrated a harm sufficient to weigh in favor of the granting of a stay.

### c. Orderly Course of Justice

Lastly, the Court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

In that regard, the SBA states the District Court for the District of Columbia "handles more FOIA cases than any other jurisdiction," and argues this Court "would benefit from that court's analysis and conclusions as to whether the very information at issue here is exempt from disclosure under FOIA." (See Mot. to Stay at 8:11-13, 8:18-21.) As noted, the SBA also argues a stay "would reduce the risk of conflicting judicial decisions." (See id. at 9:6-9.) In response, ASBL states this Court is "perfectly capable of deciding FOIA cases in general and this case in particular, and the absence of argument or evidence in opposition to [ASBL's] motion for summary judgment makes the Court's job easier." (See Opp. to Mot. to Stay at 6:10-13.)

Although the Court does not quarrel with the initial half of ASBL's argument, it does, however, for the many reasons set forth in its discussion of the first factor, disagree with the latter half. As set forth in greater detail above, the Court, in this instance, would need to consider not only ASBL's arguments but also the briefing submitted in two other cases, and, particularly given the implication of third-party privacy interests, any such decision cannot be made solely on the basis of ASBL's arguments.

By contrast, the District Court for the District of Columbia has all of the briefing it needs in one place, and awaiting a ruling in the District of Columbia cases may well avoid

7

the issuance of conflicting decisions.  In particular, depending on how the District Court for the District of Columbia resolves the motions before it, either the requested PPP information will be disclosed, thereby potentially mooting ASBL's motion, or this Court will separately address the merits of ASBL's motion with the benefit of another district court's reasoning.  See, e.g., First Amendment Coal. v. U.S. Dep't of Justice, No. 12-cv-1013-CW, 2012 WL 3027460, at *4 (N.D. Cal. July 24, 2012) (staying, "in the interest of judicial economy," ruling on cross-motions for summary judgment in FOIA case pending decision in earlier-filed FOIA cases involving same requested information); see also Min. Order, Evans v. CIA, No. 11-cv-2544 (D. Colo. Nov. 30, 2011) (granting stay in FOIA case pending final judgment in earlier-filed FOIA case involving same requested information).

Accordingly, the Court finds the third factor weighs in favor of the granting of a stay.

### d. Conclusion: Motion to Stay

Based on all of the above, the Court, while mindful of the concerns raised by ASBL, will grant the relief requested.  As previously ordered, however, the SBA must provide, no later than October 30, 2020, a response to ASBL's FOIA request for PPP loan information.  Further, as set forth below, the Court will direct the SBA to provide a response to the remainder of ASBL's FOIA request.

## B. Motion for Summary Judgment

By its Motion for Summary Judgment, ASBL seeks, as noted, disclosure of "the same information about each and every PPP loan . . . that the SBA publishes on its website about other loans made pursuant [to] 15 U.S.C. section 636(a)." (See Mot. for Summ. J. at 1:19-26.)

In light of the foregoing, the Court will defer ruling on ASBL's motion for summary judgment pending a decision in the two District of Columbia cases.

## CONCLUSION

For the reasons stated above:

1. The SBA's Motion to Stay is hereby GRANTED, and, to the extent ASBL's

FOIA request seeks PPP loan information, the above-titled action is hereby STAYED pending a decision in Washington Post and Center for Public Integrity.

2. The parties are hereby DIRECTED to submit, no later than 14 days after such decision, a Joint Status Report apprising the Court of the effect thereof on the instant action and proposing a schedule for proceeding in the instant action.

3. The SBA is hereby DIRECTED to provide, by November 20, 2020, a response to the remainder of ASBL's FOIA request.

4. The Court hereby DEFERS ruling on ASBL's Motion for Summary Judgment pending a decision in Washington Post and Center for Public Integrity.

**IT IS SO ORDERED.**

Dated: October 26, 2020

MAXINE M. CHESNEY
United States District Judge