1  KARL OLSON (SBN 104760)
   AARON R. FIELD (SBN 310648)
2  IRENE LEE (SBN 331485)
   CANNATA, O'TOOLE & OLSON LLP
3  100 Pine Street, Suite 350
   San Francisco, California 94111
4  Telephone:    (415) 409-8900
   Facsimile:    (415) 409-8904
5  Email:        kolson@cofolaw.com
                 afield@cofolaw.com
6                ilee@cofolaw.cm

7  Attorneys for Plaintiff,
   AMERICAN SMALL BUSINESS LEAGUE

8

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14 | AMERICAN SMALL BUSINESS | Case No. 3:20-cv-04619-MMC
   | LEAGUE, |

15 |         Plaintiff, | **DECLARATION OF KARL OLSON IN
   |                    | SUPPORT OF PLAINTIFF AMERICAN
16 |    vs.             | SMALL BUSINESS LEAGUE'S NOTICE OF
   |                    | MOTION AND MOTION FOR ATTORNEY'S
17 | UNITED STATES SMALL BUSINESS | FEES AND COSTS
   | ADMINISTRATION, |

18 |         Defendant. | Date:  May 26, 2023
                        | Time:  9:00 a.m.
19                      | Place: Courtroom 7 – 19th Floor
                        | Judge: Hon. Maxine M. Chesney

20

21

22

23

24

25

26

27

28

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

I, Karl Olson, declare as follows:

1. I am a member in good standing of the State Bar of California and a partner at Cannata, O'Toole & Olson, counsel of record for plaintiff American Small Business League (hereafter "plaintiff" or "ASBL"). I make this declaration of personal knowledge, except as to matters stated on information and belief, and as to such matters I believe them to be true.

2. On April 9, 2020, ASBL submitted a Freedom of Information Act ("FOIA") request to the United States Small Business Administration ("SBA") for records pertaining to any committees, advisory panels, or groups that have worked with the SBA from January 1, 2014 to present. Attached hereto as **Exhibit A** is a true and correct copy of this FOIA request. This was recorded by the SBA as FOIA Request Nos. SBA-2020-000566 ("566"), SBA-2020-001132 ("1132"), SBA-2020-001133 ("1133"), and SBA-2020-001134 ("1134"). On April 16, 2020, during a discussion of FOIA request 566 (1132/1133/1134), ASBL further requested, among others, records regarding the distribution of funds through the CARES Act and additional funding for the CARES Act and the Paycheck Protection Program ("PPP"). These were large Covid-19 relief funds which had just launched at the outset of the pandemic and were matters of intense and extraordinary public interest. Attached hereto as **Exhibit B** is a true and correct copy of confirmations received regarding FOIA requests 566, 1132, 1133, and 1134. Attached hereto as **Exhibit C** is a true and correct copy of my April 16, 2020 correspondence requesting an additional search for CARES Act and PPP records for FOIA request 566. FOIA Request No. SBA-2020-001133 was later limited in or around January 2021 to documents relating to ASBL, its president Lloyd Chapman, Raytheon Technologies Corporation, the Regional Regulatory Fairness Boards, Secretary of Defense Lloyd Austin, and the Advisory Committee on Veterans Affairs. Attached hereto as **Exhibit D** is a true and correct copy of this communication in or around January 2021.

3. On April 9, 2020, ASBL submitted a FOIA request for records pertaining to the SBA's Press Office and Terrence Sutherland. This was recorded as FOIA Request No. SBA-2020-000565 ("565"). Attached hereto as **Exhibit E** is a true and correct copy of FOIA request 565. On June 1, 2020, ASBL submitted a FOIA request for all emails regarding the SBA's

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

1    Regional Regulatory Fairness Boards.  This was documented as FOIA Request No. SBA-2020-

2    001532 ("1532").  Attached hereto as **Exhibit F** is a true and correct copy of FOIA request

3    1532.  On June 19, 2020, ASBL submitted a FOIA request for emails and correspondences by

4    certain enumerated individuals in the National Small Business Development Center Advisory

5    Board, Women's Business Enterprise National Council, and National Women's Business

6    Council.  This was documented as FOIA Request No. SBA-2020-001953 ("1953").  Attached

7    hereto as **Exhibit G** is a true and correct copy of FOIA request 1953.  SBA attempted to assess

8    fees against ASBL for FOIA Request Nos. 565, 1532, and 1953 and failed to provide a fee

9    reduction to ASBL as a news gathering organization.  ASBL later challenged, in a separate

10   action, the "search and review" fees the SBA tried to impose, and Magistrate Judge Donna Ryu

11   upheld ASBL's position and disallowed the "search and review" fees SBA tried to impose,

12   ruling that ASBL qualified as a newsgathering organization.  *American Small Business League*

13   *v. United States Small Business Administration,* No. 4:21-cv-02877-DMR, 2022 WL 2047557

14   at *15 (N.D. Cal. June 7, 2022).

15          4.      On September 4, 2020, ASBL moved for partial summary judgment against the

16   SBA as to FOIA Request No. SBA-2020-000566 for the release of information regarding the

17   distribution of funds for the CARES Act through the PPP.  This motion for partial summary

18   judgment focused on the issue of whether the SBA was obligated to release the names and loan

19   amounts of individuals and businesses who received loans under the "Paycheck Protection

20   Program" ("PPP"). In response, the SBA moved to stay proceedings in this action while a

21   similar issue as to release of names and loan amounts of PPP borrowers was pending in the

22   United States District Court for the District of Columbia.  On October 26, 2020, this Court

23   stayed proceedings to the sole extent that ASBL sought the same PPP loan information (names

24   and loan amounts of PPP borrowers) at issue in the District of Columbia case.  This Court lifted

25   the stay in this case on November 20, 2020, and the records sought by that request showing PPP

26   loan names and loan amounts, among other things, were then released.

27          5.      On December 1, 2020, in response to Request No. 1133, the SBA produced six

28   Microsoft Excel spreadsheets containing loan-level data for PPP borrowers.  This data includes

2

not only borrower names and loan amounts, but also contains information regarding the name of each lender, the types of businesses that received a loan, the dates on which their loans were approved, and the number of employees reported for each borrower.

6. On January 22, 2021, the SBA produced a total of only **nine pages** of documents in response to ASBL's request for records involving communications among the White House, Congress and the SBA related to additional funding for the CARES Act (a Coronavirus relief program) and PPP (SBA-2020-000566). Attached hereto as **Exhibit H** is a true and correct copy of the nine-page document production. The release of only nine pages of records raised red flags with us because it seemed highly implausible that there would be only nine pages of records involving a program which consumed hundreds of billions of dollars of federal spending. We questioned the SBA repeatedly about the search terms it had used and eventually, after extensive correspondence between us and the SBA and numerous conference calls attended by myself, Aaron Field and Irene Lee of our office, and Indraneel Sur of the Department of Justice, and David Fishman and Karen Hunter of the SBA, and this Court's order in Dkt. No. 65, the SBA released **17,000 pages** of records responsive to this request (after **initially** claiming it had only **nine** pages of records).

7. On February 8, 2021, after improperly assessing excessive fees against ASBL, the SBA produced 1,005 pages of documents responsive to FOIA Request No. SBA-2020-000565 relating to the SBA's Press Office and Terrence Sutherland. On February 12, 2021, March 10, 2021, April 15, 2021, May 14, 2021, June 21, 2021, April 4, 2022, and April 5, 2022, the SBA released records responsive to FOIA Request No. SBA-2020-001532, regarding the Regional Regulatory Fairness Board. On February 18, 2022 and April 14, 2022, ASBL notified the SBA of improper withholdings made by the agency and disputed the agency's assertion of FOIA Exemption 5 throughout the document production. After reassessing its withholdings, the SBA released some of the disputed documents on May 6, 2022.

8. On August 20, 2021, this Court ordered the SBA to produce all non-Regional Regulatory Fairness Board records responsive to the April 9, 2020 FOIA requests by December 17, 2021. Dkt. No. 51. On September 29, 2021, the SBA released records in response to

ASBL's narrowed FOIA Request No. SBA-2020-001133.

9. One of the primary issues which came up in the initial phase of this case was ASBL's request for the names and loan amounts of recipients of loans from the PPP. The SBA initially refused to provide this information in response to ASBL's FOIA request and in response to numerous other FOIA requests from members of the news media. Eventually ASBL filed suit in this Court seeking names and loan amounts of recipients of PPP loans. Members of the news media including the *Washington Post* and other media entities also filed suit seeking that information in the District Court for the District of Columbia, and public radio station KPCC filed suit seeking names and loan amounts in the Central District of California. The plaintiffs in all of these lawsuits viewed obtaining this information as time sensitive, given the intense public interest surrounding the $500 billion-plus PPP program, and the intense scrutiny of that program in the run-up to the November 2020 election. Therefore, the plaintiffs in the *ASBL*, *Washington Post* and KPCC cases all sought the earliest possible hearing and decision in their respective cases, and none of the plaintiffs knew which case would be decided first. In light of this, we sought an early hearing, prior to the November 2020 election, in the *ASBL* case. In the interest of judicial economy and avoiding unnecessary expenditure of time and money, however, I communicated with the SBA's counsel, James Bickford, on September 1, 11 and 15, 2020 about consolidating the *ASBL* and KPCC cases (Mr. Bickford and I were both counsel in both of those cases, with Mr. Bickford representing the SBA in both this case and the KPCC case in the Central District of California , while I represented ASBL in this case and KPCC in the Central District of California). Mr. Bickford refused to agree to consolidate the ASBL and KPCC cases.

10. After Judge James Boasberg of the District Court for the District of Columbia ruled that the names and loan amounts of PPP loan recipients were not exempt from disclosure, and this Court ordered that SBA disclose names and loan amounts of PPP loan recipients shortly thereafter, a large portion of this case revolved around ASBL's FOIA request for communications among the White House, Congress and the SBA concerning additional funding for the PPP under the CARES Act (a Coronavirus relief package). On January 27, 2021, the

4

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

SBA took the position that there were only nine pages of paper records responsive to that FOIA request, which was very surprising to me and ASBL given that the program involved the expenditure of hundreds of billions of dollars.

11. I corresponded with Mr. Bickford on February 2, 2021 regarding what search terms the SBA had used to come up with only nine pages of records. He refused to tell us and eventually told the Court on or about a February 5, 2021 Case Management Conference discussion that SBA would not disclose the search terms used unless ASBL agreed to treat that information as an inadmissible settlement communication. Following the February 5, 2021 CMC, I called and corresponded with Mr. Bickford about what search terms SBA had used, and we challenged the adequacy of SBA's search terms on February 26, 2021 and asked again on March 4, 2021 what search terms SBA had used. Again, the SBA declined to disclose the search terms and the matter was discussed again at a further CMC on March 26, 2021, again without resolution. Attached hereto as **Exhibit I** is the parties' joint case management statement dated March 19, 2021 and identified on the docket as Docket Number 45.

12. Eventually, Mr. Bickford took a leave from the case, and there were a number of virtual meetings attended by me, Aaron Field and Irene Lee from my office represented ASBL, and by SBA's counsel Indraneel Sur of the Department of Justice and in-house SBA counsel David Fishman and Karen Hunter from the SBA legal office. We met with Messrs. Sur and Fishman and Ms. Hunter on January 26, 2022 regarding search terms; communicated with them on January 28, 2022 and February 11, 2022 regarding crafting more inclusive search terms; and called them on February 14, 2022 and February 23, 2022 regarding such search terms. On February 11, 2022, ASBL proposed ten new search terms to the SBA in an attempt to obtain further records and to ensure that all responsive records were located. A true and correct copy of our February 11, 2022 communication is attached hereto as **Exhibit J**.

13. On March 1, 2022, the SBA informed ASBL that, given the large amount of "hits" for each proposed search term and the SBA's deadline to move for summary judgment, the SBA could not undertake any additional substantial effort to translate these "hits" into responsive documents. The parties agreed to limit the number of search terms, and on March 3,

2022, ASBL proposed three new search terms to the SBA. A true and correct copy of our March 3, 2022 communication is attached hereto as **Exhibit K**.

14. Eventually, on May 24, 2022, the SBA agreed to use more inclusive search terms proposed by ASBL, but the SBA took the position that it would take a year to produce the records resulting from the more inclusive search. ASBL took the position that the records could and should be produced in much less than a year, and eventually this Court ordered, in Docket No. 65, that the SBA should finish production of the records in far less than a year. Finally, the SBA produced approximately **17,000** pages of records responsive to the same 2020 FOIA request for communications among Congress, the Trump White House and the SBA as to which the SBA had originally told ASBL and this Court that there were only **nine** (9) pages of paper records. The SBA completed the production of records responsive to this Court's Order in Docket No. 65 by the end of 2022.

15. On December 22, 2022, ASBL informed the SBA of disputed withholdings from its latest productions from June 2022 to November 2022. On January 10, 2023 and January 13, 2023, the SBA withdrew its withholdings on three pages of documents that were produced. On February 14, 2023, the SBA agreed to release two more pages of documents in full, but maintained that it would require additional time to reassess the other withholdings at issue. On February 23, 2023, ASBL informed the SBA that it would not litigate the remaining SBA withholdings, and agreed with the SBA that the merits phase of this litigation had concluded. ASBL did this **not** because it agreed that the remaining withholdings were proper or justified, but because we had already procured **17,000** pages of records from the SBA and because it seemed that litigating the status of a few more did not justify the time and energy and expense of further litigation, but rather that recouping the hundreds of thousands of dollars of attorney's fees ASBL had already incurred through an attorney's fees motion was a higher priority.

16. Many of the records disclosed by the SBA after it agreed to expand its search terms at ASBL's insistence concerned dissatisfaction from both Democratic and Republican members of Congress at the SBA and Treasury Department's implementation and administration of the PPP. Attached hereto as **Group Exhibit L** are a selection of bipartisan

letters from Congress to the SBA and the Treasury regarding fraud in the PPP.

17.     After these and other records were released, ASBL expediently reviewed thousands of pages of records that were produced.  This review was extensive and required a substantial amount of time to review the documents produced in order to properly determine whether the SBA's withholdings were valid and whether ASBL would continue to dispute the government's claimed basis for withholding documents.  ASBL also expended a significant amount of time disputing many of the withholdings that the SBA made in its subsequent productions over the past three years.  This review would ultimately result in the further production of documents from the SBA, including records relating to the Regional Regulatory Fairness Boards and those relating to efforts to obtain additional funding for the CARES Act and PPP.

18.     I have written several op-ed articles based on the information that ASBL received in this litigation in an effort to shine more light on PPP spending and the SBA's shortcomings in its administration of the PPP and other small business programs.  Attached hereto as **Exhibit M** is a true and correct copy of an op-ed I wrote for the *San Francisco Chronicle* entitled *Small Businesses Need Relief, Now.  Get on It, Congress* dated December 3, 2020.  Attached hereto as **Exhibit N** is a true and correct copy of an op-ed I wrote for the *San Jose Spotlight* entitled *Olson: Feds Giving Small Business Short End of the Stick* dated September 26, 2022.

19.     The SBA's own Inspector General criticized the SBA's administration of the PPP, pointing to thousands of loans doled out to recipients who apparently defrauded the government.  On January 14, 2021, the SBA's Office of the Inspector General ("OIG") released an inspection report regarding the implementation of the PPP.  SBA Office of the Inspector General, *Report No. 21-07: Inspection of SBA's Implementation of the Paycheck Protection Program* (Jan. 14, 2021) https://www.sba.gov/sites/default/files/2021-01/SBA%20OIG%20Report-21-07.pdf.  The OIG found that the SBA had approved approximately 55,000 loans, at an estimated $7 billion, to potentially ineligible businesses; that the SBA's PPP publicly-reported and loan-level data was inaccurate and incomplete; and that the SBA's initial implementation was not executed efficiently (resulting in, among other issues,

confusion amongst lenders and borrowers). The SBA has since issued further guidance to aid lenders and borrowers. *Id.* at 6, 10, 15. With regard to the potentially ineligible businesses that received PPP funds, more than 2,900 of these businesses obtained a Taxpayer Identification Number after February 15, 2020 – the date by which businesses were required to be in operation. *Id.* at 6. More than 43,000 PPP loans totaling $11.7 billion exceeded the per-employee maximum loan amount by approximately $3.7 billion. *Id.* at 7. Approximately $1.7 billion of these loans were reduced or cancelled because of potentially erroneous initial approval amounts. *Id.* Lastly, approximately 355 businesses that obtained PPP loans, totaling approximately $856 million, were ineligible because they exceeded the maximum size. *Id.* at 8.

**Experience and Requested Hourly Rates**

20. I have extensive experience in media and First Amendment litigation, and in California Public Records Act and Freedom of Information Act ("FOIA") litigation in particular, that supports my requested hourly rate of $850 an hour.

21. I was admitted to the California Bar and the Bar of this Court in 1982 after graduating, *magna cum laude*, from the University of California Hastings College of the Law (now called UC Law San Francisco) that year. I was later admitted to the Bar of the 9th Circuit Court of Appeals and the U. S. Supreme Court. From 1982 to 1983 I served as a law clerk and then research attorney to Justice Joseph R. Grodin, first on the California Court of Appeal and then on the California Supreme Court when he was elevated to the California Supreme Court in December of 1982. I worked as an associate at Morrison & Foerster from 1983 to 1986, and then at the firm of Cooper, White & Cooper in San Francisco, as an associate from 1986 to 1989 and then as a partner from 1990 to 1997. In 1997, I co-founded the firm of Levy, Ram & Olson, which became Ram & Olson in 2009 and then Ram, Olson, Cereghino & Kopczynski in 2011. In 2017, I joined my current firm as a partner. Because I have practiced at large, medium-sized and small firms in the Bay Area, and have handled cases throughout California, I am quite familiar with prevailing hourly rates for attorneys in California and in particular San Francisco, where I have spent my entire career.

DECLARATION OF KARL OLSON IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS, CASE NO. 3:20-CV-04619-MMC

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

22.     I have specialized in media and First Amendment law since 1986.  I won the James Madison Freedom of Information Award from the Northern California Society of Professional Journalists in 2005, and was a co-winner of that award in 2018.  I also won the California Newspaper Publishers Association Freedom of Information Award in 2012.  I have been named a Northern California "SuperLawyer" for approximately 12 years in a row and as "Lawyer of the Year" for Northern California in the Litigation-First Amendment field by Best Lawyers for 2019.

23.     For approximately the last 20 years, my practice has concentrated heavily on the California Public Records Act as well as, more recently, the Freedom of Information Act.  I was lead counsel of record for the prevailing petitioner, Contra Costa Newspapers, Inc., in the case of *International Federation of Professional and Technical Engineers Local 21 v. Superior Court* (2007) 42 Cal.4th 319, where the California Supreme Court held that there is a right of access to named public employees' salaries.  I argued that case in the Supreme Court, the Court of Appeal and the trial court.  I was also counsel of record for the prevailing petitioner, *The Sacramento Bee*, in the case of *Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, where the Court of Appeal held that there is a right of access to named public employees' pension amounts.  I represented media and non-profit organizations as *amici curiae* in the case of *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, and split the oral argument time before the California Supreme Court in that case.  I have handled many other Public Records Act cases throughout the state of California.  I have also handled a number of Freedom of Information Act (FOIA) cases in the Northern District of California.

24.     I am familiar with my law partner Aaron Field's background and experience in media and access law.  I worked with Mr. Field on media and access law matters before he joined our firm, and I now supervise Mr. Field's work on media law and government transparency matters.  Mr. Field has media and government transparency law experience that supports his requested hourly rate of $425 an hour.

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

25.     Mr. Field earned a B.A. degree from St. John's College in Santa Fe, New Mexico in 2009, and a J.D. degree from U.C. Hastings College of the Law in 2015.  Mr. Field joined our firm (then "Cannata O'Toole Fickes & Almazan LLP") in 2015 and has worked here ever since.

26.     Before law school, Mr. Field worked for former Federal Communications Commission General Counsel and Associate Deputy Attorney General Bruce Fein, first as a legal intern, and then as a Paralegal and Executive Assistant.  Mr. Field supported Mr. Fein's work on media law and First Amendment cases.

27.     In law school, Mr. Field worked for me and Ram, Olson, Cereghino & Kopczynski as a Law Clerk; as a Summer Associate at Kerr & Wagstaffe, a San Francisco litigation boutique with a media and First Amendment law practice; and as a Legal Intern at the First Amendment Coalition ("FAC").  Mr. Field did media and First Amendment law work in all of these roles. Notably, Mr. Field assisted me in representing multiple news media organizations as amici curiae before the California Court of Appeal and the California Supreme Court in *City of San Jose v. Superior Court*, 2 Cal.5th 608 (2017), the landmark California Public Records Act case referenced above.  He was also a member of the Moot Court Team and the Moot Court Board. He represented Hastings in three moot court competitions and won First Place and Second Best Brief in the 2015 Jerome Prince Memorial Evidence Competition at Brooklyn Law School.

28.     Mr. Field has represented parties in a broad array of civil litigation matters in state and federal courts, at the trial and appellate levels.  However, he focuses his practice on media and First Amendment law.  He and I have worked together on numerous media law matters, including access matters arising under the California Public Records Act and FOIA.

29.     Mr. Field has also served, since early 2018, as the Attorney Co-Chair of the Freedom of Information Committee ("FOIC") of the Northern California Chapter of the Society of Professional Journalists.  The FOIC is a committee of journalists and First Amendment lawyers that advocates for free speech and transparent government, including in California Public Records Act cases.  For his advocacy in that role, Mr. Field was awarded SPJ NorCal's 2019 Excellence in Journalism Award for Meritorious Service to his SPJ NorCal chapter.

DECLARATION OF KARL OLSON IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS, CASE NO. 3:20-CV-04619-MMC

30.     Mr. Field and I have been awarded attorney's fees at rates consistent with those requested here in other recent cases.  For example, in *Relente v. Viator*, Case No. 12-cv- 05868- JD (N.D. Cal.), I was awarded fees at $750 per hour in 2015.  In *Ehret v. Uber*, Case No. 3:14-cv-113-EMC (N.D. Cal.), I was awarded fees at $800 per hour in 2017.  In *Hoeper v. City and County of San Francisco*, San Francisco Superior Court, Case No. CGC-15- 543553, I was awarded fees at $750 per hour, and Mr. Field was awarded fees at $350 per hour, in 2017.  In *Tobinick v. Regents of the University of California*, Los Angeles Superior Court Case No. BS170575, the Los Angeles County Superior Court awarded fees based upon a rate of $775 per hour for my time in 2019.

31.     I am familiar with my associate Irene Lee's background and experience in FOIA litigation.  Ms. Lee graduated from UC Hastings and joined our law firm in 2019, where she is now an Associate.  In law school, Ms. Lee worked as a Legal Intern at the Electronic Frontier Foundation, where she helped prepare FOIA requests.  She was also a member of the UC Hastings moot court team and moot court board.  Ms. Lee has played a significant role in California Public Records Act and Freedom of Information Act cases in which our firm represented the requesters, as well as representing our law firm's clients in a wide range of other matters.  In my opinion, the requested hourly rate of $350 per hour for her time is reasonable given her background and experience, and significantly lower than prevailing hourly rates  for attorneys of her experience in large San Francisco firms.

32.     I am also familiar with my former paralegal/legal assistant Kristel Gelera's background and experience in FOIA and other litigation.  Ms. Gelera graduated from California State University, Sacramento with a B.A. in Public Relations in 2011, and obtained a Certificate in Paralegal Studies from California State University – East Bay in 2019.  Ms. Gelera joined our law firm in February 2019, and is a highly skilled and efficient legal assistant and was an integral member of our team until her departure in February 2023 to join a large international law firm. She worked on many FOIA matters, as she often collaborated with myself and Mr. Field.  Our firm generally bills clients for Ms. Gelera's work by the hour, consistent with what I believe to be

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

the usual practice of law firms in major California legal markets. I am aware of firms that bill out senior paralegals at over $200 or $250 per hour, or more.

33.     I am also familiar with paralegal/legal assistant Joshua Ram's background and experience in litigation. Mr. Ram graduated from the University of California, Santa Cruz with a B.A. in Politics in 2016. Mr. Ram joined our law firm in July 2019 where he assists in numerous litigation matters, including FOIA and California Public Records Act litigation. Previously, Mr. Ram worked as a paralegal at the law firm of Ram and Olson in San Francisco during the summers of 2009, 2010, and 2012. Mr. Ram also has experience with media and news organizations as a freelance news writer.

34.     In my opinion, the claimed hourly rate of $185 for Ms. Gelera and Mr. Ram is reasonable given their level of skill and experience, and is lower than rates that courts in major California legal markets have awarded for paralegals. *See, e.g., In re Magsafe Apple Power Adapter Litig.*, Case No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) (holding in 2015 that in the Bay Area, reasonable hourly rates for paralegals and litigation support staff range from $150 to $240."); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *21 (C.D. Cal. Mar. 24, 2015) (approving "paralegal fees at rates between $240 for a paralegal with five years' experience to $345 for a paralegal with 23 years' experience").

35.     On January 18, 2023, Magistrate Judge Donna M. Ryu awarded ASBL attorney's fees and costs in a related FOIA case against the SBA which was litigated in 2021 and 2022. In doing so, Magistrate Judge Ryu approved of the following hourly rates: $800 an hour for myself, $400 for junior partner Aaron Field, $325 for Irene Lee, and $175 for paralegal Kristel Gelera. Attached hereto as **Exhibit O** is a true and correct copy of Magistrate Judge Ryu's January 18, 2023 Order (Docket Number 56) in *American Small Business League v. Small Business Administration*, No. 4:21-cv-02877-DMR (N.D. Cal.). The rates sought here are basically the same as those approved by Magistrate Judge Ryu except for adjustment by approximately 6 percent to account for one year's inflation (the fee motion in that case was made in 2022).

**Appropriateness of Case Staffing and Exercise of Billing Judgment**

36. It is clear to me from having litigated this case and from looking at the docket and the briefs filed in this case that the SBA here put forth a vigorous defense, requiring Plaintiff's counsel to respond with in-depth, heavily-researched responses in disputing the SBA's improper withholding of responsive records.

37. I have reviewed the hours spent by Plaintiff's counsel on various aspects of this litigation, including drafting pleadings and negotiating with opposing counsel. I believe those hours to be reasonable, necessary and appropriate given the degree to which the SBA has fought against ASBL in this case. We exercised billing judgment before arriving at the amount we are requesting, deleting or no-charging some time entries.

38. Plaintiff's counsel exercised considerable judgment, targeting the litigation on the core issue of the SBA's improper withholding of responsive records and inadequacy of search. While the work involved here was considerable, it was also focused, with Plaintiff's counsel investing time in matters of significance and responding to Defendants' arguments where required. That approach was both efficient and successful, as evidenced by the SBA's 17,000-page rolling production in response to two new searches conducted in 2022.

39. In my opinion, we appropriately staffed this case, dividing work between myself, junior partner Aaron Field and associate Irene Lee. Together, we formed a litigation team that had the relevant experience and capacity to handle this case, and we took care not to do unnecessary work. In contested FOIA litigation, such staffing decisions are frequently difficult to achieve over a protracted period of time given the nature of the agency's position, but appropriate case management procedures were followed by Plaintiff's counsel in this case.

40. The use of multiple attorneys in FOIA litigation is commonplace, so as to reduce the costs of the litigation. Here, Plaintiff's counsel appropriately used junior attorneys to do legal research, review documents (Ms. Lee, and not the more senior lawyers, was tasked with reviewing the thousands of pages of documents produced by the SBA in order to identify and assess withholdings and redactions, among other things), and draft some pleadings, thereby

1  helping cut down on the costs incurred by the more senior attorneys.  I do not believe there was

2  any inappropriate staffing in this litigation.

3      41.    The time spent in this case was reasonable, given the extensive motions practice,

4  extensive time spent negotiating with the SBA for the disclosure of additional responsive

5  records, and time spent reviewing thousands of pages of records (most of which were produced

6  in the latter half of the litigation) for improper withholdings.

7      42.    ASBL currently requests $2,502.69 in costs, most of which consist of fees for

8  filing, service of process, and teleconferences.  I believe this amount to be reasonable.  We

9  made substantial efforts to informally resolve this matter and, during the past three years, had

10  dozens of teleconferences with representatives of the SBA to resolve the issue and to obtain

11  responsive records from the agency.  These efforts included requests to conduct subsequent

12  searches to ensure that a proper search was conducted, requests to narrow the FOIA request,

13  and requests to conduct searches using alternate search terms.  These efforts ultimately resulted

14  in the disclosure of over 17,000 pages of documents.

15                          **Efforts to Settle Attorney's Fee Dispute**

16      43.    ASBL sent its first settlement demand for attorney's fees incurred in this action

17  on February 23, 2022.  The SBA refused to engage with ASBL to resolve attorney's fees prior

18  to resolution of the merits of the underlying FOIA dispute.  On March 6, 2023, we made a

19  further settlement demand which was updated to include time spent in 2022 and 2023 after the

20  initial settlement demand.  We invited the SBA's counsel to meet and confer with us on the

21  question of fees.

22      44.    On March 17, 2023, counsel for ASBL (Irene Lee and I) met and conferred

23  telephonically with SBA's counsel, James Bickford, to discuss the issue of attorney's fees and

24  costs and to comply with ASBL's meet and confer obligations under Local Rule 54-5(a).  The

25  parties ultimately could not resolve the issue of attorney's fees during this call.  Mr. Bickford

26  and I agreed that ASBL had complied with its meet and confer obligations and, given the vast

27  distance between the parties on the issue of fees, understood that the parties would be required

28  to brief the issue and present it to the court for resolution.

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

45.     Plaintiff currently seeks a total of $465,205.19 in attorney's fees and costs, not counting "fees on fees."  This consists of 279.43 hours of my time at $850 per hour ($237,515.50), 230.6 hours of Mr. Field's time at $425 per hour ($98,005), 323.1 hours of Ms. Lee's time at $350 per hour ($113,085), 76.2 hours of paralegal and legal assistant time at $185 per hour ($14,097), and $2,502.69 in costs.  I believe that is a reasonable amount, and indeed considerably less than is usually spent in litigating FOIA cases.

46.     I have also reviewed the hours Plaintiff's counsel has spent to date on preparing our fee petition and securing the necessary evidentiary support for the sums requested.  Although that work is not yet complete, the work invested thus far is reasonable and necessary given the sums at stake.  Counting time recorded in the month of March through March 27, 2023, our fees in connection with this fees motion already incurred are $48,580 including 31.4 hours of my time at $850 per hour=$26,690; 10 hours of Aaron Field's time at $425 per hour=$4,250; 50.4 hours of Irene Lee's time at $350 per hour=$17,640; and 0 hours of paralegal and legal assistant time at $185 per hour=$0.  We currently seek "fees on fees" of $60,000, but counting the remaining time involved in filing our opening papers, the time involved in preparing a Reply Brief, and the time involved in preparing for and attending the hearing on this attorney's fees motion, I believe there is a high probability that the fees incurred in connection with this attorney's fees motion will exceed $60,000, and may be in the range of $60,000 to $75,000.  We anticipate filing a Supplemental Declaration with our Reply Brief updating the Court on our fees through the Reply Brief and an updated estimate of the fees incurred in connection with our attorney's fees motion.  Attached hereto as **Exhibit P** are monthly time summaries, based on daily time entries from our law firm's Timeslips program, for all attorneys and legal assistants who worked on this matter.  Attorneys and staff at our firm contemporaneously record their time, and enter it into the Timeslips program.  If the Court wishes to inspect our daily time records, ASBL will provide such records upon request.

47.     In short, the total amount requested by plaintiff on this motion – including fees on the merits, costs and "fees on fees" – is $525,205.19.  Given the three-plus year battle Plaintiff had to fight in this case against the SBA to prevail, and will have to fight to recover attorney's

fees, this amount, in my opinion, is reasonable and necessary and should be awarded.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America in San Francisco, California on March 27, 2023 that the foregoing is true and correct.

_____
KARL OLSON

DECLARATION OF KARL OLSON IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS, CASE NO. 3:20-CV-04619-MMC

# EXHIBIT A



CANNATA
O'TOOLE
FICKES
& OLSON

Karl Olson
kolson@cofolaw.com

April 9, 2020

**By E-Mail**
Delorice Price Ford
Chief, Freedom of Information/Privacy Acts Office
U.S. Small Business Administration
409 Third St., 8th Floor
Washington, D.C. 20416

Re:     Freedom of Information Act Requests

Dear Ms. Ford:

I am writing on behalf of my client, the American Small Business, to request, pursuant to the Freedom of Information Act, the following data and records:

- All documents indicating, containing, or relating to any committee, advisory panels or groups that currently work or have worked with the Small Business Administration (SBA) between January 1, 2014 and present

- All documents indicating, containing, or relating to the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present

- All records of communications (written, oral, or electronic) containing, relating to, or based on any advisory panels or groups that currently work or have worked with the SBA between January 1, 2016 and the present

- All records of communications (written, oral, or electronic) containing, relating to, or based on the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present

We request that fees associated with this request be waived, or otherwise reduced, because the information will be used for educational purposes. Fees should also be waived because disclosure of the requested information is in the public interest. The information

contributes significantly to the public understanding of the operations and activities of the SBA, and primarily promotes my client's noncommercial interests, in accordance with 5 U.S.C. § 552(a)(4)(A)(iii).

Please do not hesitate to contact me if there are any questions or concerns.

Very truly yours,

CANNATA, O'TOOLE, FICKES & OLSON LLP

KARL OLSON

KO:hs



**EXHIBIT B**

**From:** admin@foiaonline.gov <admin@foiaonline.gov>
**Sent:** Thursday, April 09, 2020 12:24 PM
**To:** Karl Olson <kolson@cofolaw.com>
**Subject:** FOIA Request SBA-2020-000566 Submitted

This message is to confirm your request submission to the FOIAonline application: <u>View Request</u>. Request information is as follows:

- Tracking Number: SBA-2020-000566
- Requester Name: Karl Olson
- Date Submitted: 04/09/2020
- Request Status: Submitted
- Description: I am writing on behalf of my client, the American Small Business, to request, pursuant to the Freedom of Information Act, the following data and records:
  - All documents indicating, containing, or relating to any committee, advisory panels or groups that currently work or have worked with the Small Business Administration (SBA) between January 1, 2014 and present
  - All documents indicating, containing, or relating to the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present
  - All records of communications (written, oral, or electronic) containing, relating to, or based on any advisory panels or groups that currently work or have worked with the SBA between January 1, 2016 and the present
  - All records of communications (written, oral, or electronic) containing, relating to, or based on the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present

This message is to confirm your request submission to the FOIAonline application: <u>View Request</u>. Request information is as follows:

- Tracking Number: SBA-2020-001132
- Requester Name: Mr. Karl Olson
- Date Submitted: 04/09/2020
- Request Status: Submitted
- Description: I am writing on behalf of my client, the American Small Business, to request, pursuant to the Freedom of Information Act, the following data and records:
  - All documents indicating, containing, or relating to any committee, advisory panels or groups that currently work or have worked with the Small Business Administration (SBA) between January 1, 2014 and present
  - All documents indicating, containing, or relating to the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present
  - All records of communications (written, oral, or electronic) containing, relating to, or based on any advisory panels or groups that currently work or have worked with the SBA between January 1, 2016 and the present
  - All records of communications (written, oral, or electronic) containing, relating to, or based on the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present

**From:** admin@foiaonline.gov <admin@foiaonline.gov>
**Sent:** Tuesday, May 05, 2020 1:19 PM
**To:** Karl Olson <kolson@cofolaw.com>
**Subject:** FOIA Request SBA-2020-001133 Submitted

This message is to confirm your request submission to the FOIAonline application: <u>View Request</u>. Request information is as follows:

- Tracking Number: SBA-2020-001133
- Requester Name: Mr. Karl Olson
- Date Submitted: 04/09/2020
- Request Status: Submitted
- Description: I am writing on behalf of my client, the American Small Business, to request, pursuant to the Freedom of Information Act, the following data and records:
  - All documents indicating, containing, or relating to any committee, advisory panels or groups that currently work or have worked with the Small Business Administration (SBA) between January 1, 2014 and present
  - All documents indicating, containing, or relating to the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present
  - All records of communications (written, oral, or electronic) containing, relating to, or based on any advisory panels or groups that currently work or have worked with the SBA between January 1, 2016 and the present
  - All records of communications (written, oral, or electronic) containing, relating to, or based on the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present

This message is to confirm your request submission to the FOIAonline application: <u>View Request</u>. Request information is as follows:

- Tracking Number: SBA-2020-001134
- Requester Name: Mr. Karl Olson
- Date Submitted: 04/09/2020
- Request Status: Submitted
- Description: I am writing on behalf of my client, the American Small Business, to request, pursuant to the Freedom of Information Act, the following data and records:
  - All documents indicating, containing, or relating to any committee, advisory panels or groups that currently work or have worked with the Small Business Administration (SBA) between January 1, 2014 and present
  - All documents indicating, containing, or relating to the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present
  - All records of communications (written, oral, or electronic) containing, relating to, or based on any advisory panels or groups that currently work or have worked with the SBA between January 1, 2016 and the present
  - All records of communications (written, oral, or electronic) containing, relating to, or based on the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present

# EXHIBIT C

**From:** Karl Olson
**Sent:** Thursday, April 16, 2020 2:41 PM
**To:** Fashola, Oreoluwa O. <Oreoluwa.Fashola@sba.gov>
**Cc:** Kristel Gelera <kgelera@cofolaw.com>; Karl Olson <kolson@cofolaw.com>
**Subject:** RE: Please Narrow/Clarify FOIA SBA-2020-000566

Dear Mr. Fashola,

It was good to talk to you and thanks for getting back to me.

The items you identify below are our top priority, but to clarify, we are not withdrawing the other requests.

And on item 2 below (names and bios of SBA committees, advisory panels, etc.) we do want that to go back

to 2014. That information should be easily retrievable.

If you have any questions, don't hesitate to call me.

Regards, Karl Olson

_____



Karl Olson
Attorney at Law

100 Pine Street, Suite 350
San Francisco, California 94111
Tel: 415.409.8900  Fax: 415.409.8904
**Please consider the environment before printing this e-mail**
_____
For further information about our firm and directions to our San Francisco and Walnut Creek offices, please visit our Firm
Website at www.cofolaw.com
_____
This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise
protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this
transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify
us immediately by telephone at (415) 409-8900, and destroy this document.

---

**From:** Fashola, Oreoluwa O. <Oreoluwa.Fashola@sba.gov>
**Sent:** Thursday, April 16, 2020 1:54 PM
**To:** Karl Olson <kolson@cofolaw.com>
**Cc:** FOIA <FOIA@sba.gov>
**Subject:** RE: Please Narrow/Clarify FOIA SBA-2020-000566

Mr. Olson,

Per our phone conversation earlier we are reformulation your request to read as follows:

-    Records relating to any  committee, advisory group or panel the SBA has established to administer
     the $350 billion CARES Act response to the coronavirus pandemic, especially the members of that
     committee and any regulations which they have drafted and correspondence among the members of
     that committee.
-    A list of names and bios of members who serve on any of the active SBA advisory committees
-    Data showing how the appropriated funds from the CARES Act were distributed through PPP
     program.
-    Any communication between the White House, SBA, and Congress regarding requests for additional
     funding for the CARES Act and PPP Program.

In addition you may find additional information regarding the PPP program at the following link,
https://content.sba.gov/sites/default/files/2020-04/PPP%20Report%20SBA%204.14.20%20%20-
%20%20Read-Only.pdf.


Oreoluwa (Ore) Fashola

Chief, Freedom of Information & Privacy Act (FOI/PA)
Office of Hearings and Appeals (OHA)
U.S. Small Business Administration (SBA)
O – (202) 401-7793
F – (202) 841-1541
[oreoluwa.fashola@sba.gov](mailto:oreoluwa.fashola@sba.gov)



  

*This electronic message contains information generated by the SBA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.*

---

**From:** Karl Olson <[kolson@cofolaw.com](mailto:kolson@cofolaw.com)>
**Sent:** Wednesday, April 15, 2020 5:15 PM
**To:** Fashola, Oreoluwa O. <[Oreoluwa.Fashola@sba.gov](mailto:Oreoluwa.Fashola@sba.gov)>
**Subject:** RE: Please Narrow/Clarify FOIA SBA-2020-000566

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to [spam@sba.gov](mailto:spam@sba.gov).

Thank you Ms. Fashola. Since we are on shelter-at-home restrictions, please call my cell phone, (415) 602-0841. I look forward to talking at 2 your time tomorrow.

Regards, Karl Olson



Karl Olson
Attorney at Law

100 Pine Street, Suite 350
San Francisco, California 94111
Tel: 415.409.8900 Fax: 415.409.8904
**Please consider the environment before printing this e-mail**

For further information about our firm and directions to our San Francisco and Walnut Creek offices, please visit our Firm Website at [www.cofolaw.com](http://www.cofolaw.com)

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

---

**From:** Fashola, Oreoluwa O. <[Oreoluwa.Fashola@sba.gov](mailto:Oreoluwa.Fashola@sba.gov)>

**Sent:** Wednesday, April 15, 2020 12:57 PM
**To:** Karl Olson <kolson@cofolaw.com>
**Cc:** Kristel Gelera <kgelera@cofolaw.com>
**Subject:** RE: Please Narrow/Clarify FOIA SBA-2020-000566

2 works great for me I'll give a call then, thank you.

Oreoluwa (Ore) Fashola
Chief, Freedom of Information & Privacy Act (FOI/PA)
Office of Hearings and Appeals (OHA)
U.S. Small Business Administration (SBA)
O – (202) 401-7793
F – (202) 841-1541
oreoluwa.fashola@sba.gov





*This electronic message contains information generated by the SBA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.*

**From:** Karl Olson <kolson@cofolaw.com>
**Sent:** Wednesday, April 15, 2020 1:53 PM
**To:** Fashola, Oreoluwa O. <Oreoluwa.Fashola@sba.gov>
**Cc:** Kristel Gelera <kgelera@cofolaw.com>
**Subject:** RE: Please Narrow/Clarify FOIA SBA-2020-000566

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Thanks for getting back to me Ms. Fashola.  I could do any time between 1 and 4 p.m. Eastern time tomorrow.  May I suggest 2 p.m. Eastern? Please let me know if that works.

Regards, Karl Olson

_____
 Karl Olson
 Attorney at Law

 CANNATA
 O'TOOLE
 FICKES
 & OLSON

100 Pine Street, Suite 350
San Francisco, California 94111

Tel: 415.409.8900  Fax: 415.409.8904

**Please consider the environment before printing this e-mail**

For further information about our firm and directions to our San Francisco and Walnut Creek offices, please visit our Firm Website at www.cofolaw.com

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

**From:** Fashola, Oreoluwa O. <Oreoluwa.Fashola@sba.gov>
**Sent:** Wednesday, April 15, 2020 8:54 AM
**To:** Karl Olson <kolson@cofolaw.com>
**Cc:** Aaron R. Field <afield@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera <kgelera@cofolaw.com>
**Subject:** RE: Please Narrow/Clarify FOIA SBA-2020-000566

What time will you be available tomorrow?

Oreoluwa (Ore) Fashola
Chief, Freedom of Information & Privacy Act (FOI/PA)
Office of Hearings and Appeals (OHA)
U.S. Small Business Administration (SBA)
O – (202) 401-7793
F – (202) 841-1541
oreoluwa.fashola@sba.gov



  

*This electronic message contains information generated by the SBA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.*

**From:** Karl Olson <kolson@cofolaw.com>
**Sent:** Tuesday, April 14, 2020 7:18 PM
**To:** Fashola, Oreoluwa O. <Oreoluwa.Fashola@sba.gov>
**Cc:** Aaron R. Field <afield@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera <kgelera@cofolaw.com>
**Subject:** RE: Please Narrow/Clarify FOIA SBA-2020-000566

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Dear Ms. Fashola,

My apologies for getting your name wrong in the email below.  In any event, I would like to discuss the substance of the correspondence when  you  have a chance, please see the email below.

Regards, Karl Olson

_____

Karl Olson
Attorney at Law

CANNATA
O'TOOLE
FICKES
& OLSON

100 Pine Street, Suite 350
San Francisco, California 94111
Tel: 415.409.8900 Fax: 415.409.8904
**Please consider the environment before printing this e-mail**
_____
For further information about our firm and directions to our San Francisco and Walnut Creek offices, please visit our Firm
Website at www.cofolaw.com
_____
This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise
protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this
transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify
us immediately by telephone at (415) 409-8900, and destroy this document.

**From:** Karl Olson
**Sent:** Tuesday, April 14, 2020 3:41 PM
**To:** Fashola, Oreoluwa O. <Oreoluwa.Fashola@sba.gov>
**Cc:** Aaron R. Field <afield@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera
<kgelera@cofolaw.com>
**Subject:** RE: Please Narrow/Clarify FOIA SBA-2020-000566

Dear Ms. Jackson,

You have asked us to narrow or clarify our request,  but that is hard for us to do because you know how many
committees, advisory groups and panels the SBA has, and we don't.  Can you tell  me how many committees,
advisory groups and pens the SBA has, and give me a list, and then I can focus on which ones we  are most
interested in?

Specifically, we would be interested in records relating to any  committee, advisory group or panel the SBA
has established to administer the $350 billion CARES Act response to the coronavirus pandemic, especially
the members of that committee and any regulations which they have drafted and correspondence among the
members of that committee.  But that is not the only thing we are interested in?

Are you available for  a telephone call tomorrow afternoon (Wednesday) or Thursday at which we can discuss
this request?  If so, please let me know what time is good and what number I should call.

Best regards, Karl Olson

_____

Karl Olson
Attorney at Law



100 Pine Street, Suite 350
San Francisco, California 94111
Tel: 415.409.8900  Fax: 415.409.8904
**Please consider the environment before printing this e-mail**

For further information about our firm and directions to our San Francisco and Walnut Creek offices, please visit our Firm Website at www.cofolaw.com

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

---

**From:** Fashola, Oreoluwa O. <Oreoluwa.Fashola@sba.gov>
**Sent:** Tuesday, April 14, 2020 12:56 PM
**To:** Karl Olson <kolson@cofolaw.com>
**Cc:** FOIA <FOIA@sba.gov>
**Subject:** Please Narrow/Clarify FOIA SBA-2020-000566

Mr. Olson,

This email is in response to your Freedom of Information Act (FOIA) request dated April 9, 2020, and received in our office on the same date.  Your request concerns:

*"All documents indicating, containing, or relating to any committee, advisory panels or groups that currently work or have worked with the Small Business Administration (SBA) between January 1, 2014 and present*

*- All documents indicating, containing, or relating to the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present*

*- All records of communications (written, oral, or electronic) containing, relating to, or based on any advisory panels or groups that currently work or have worked with the SBA between January 1, 2016 and the present*

*- All records of communications (written, oral, or electronic) containing, relating to, or based on the names of each individual on each committee, advisory panel, or group that currently works or has worked with the SBA between January 1, 2014 and present."*

In accordance with the U.S. Small Business Administration's (SBA) FOIA regulations (102.3 CFR 3(b)), a FOIA requester must describe the records in sufficient detail to enable an employee familiar with the subject area of the request to locate the responsive records with a reasonable amount of effort. Your request does not meet this requirement.  Because of the broad and general nature of your request and the way in which our records systems are configured, we are unable conduct a reasonable search for information responsive to your request..

Please be as specific as possible concerning the FOIA requests you are seeking.  If you know, please include the date, geographic area, and subject matter of, or the name of the committee, advisory panel,

or group, so that we may identify the records you are seeking.

We will not proceed further with your request until we receive additional clarification from you.  In accordance with our regulations (102.3 CFR 3(b)), if we do not hear from you within 20 workdays of the date of this letter, we will assume you are no longer interested in this matter and will close the file on your request.

If you have any questions concerning this matter, please contact our office.  Thank you for your interest in the SBA.


Oreoluwa (Ore) Fashola
Chief, Freedom of Information & Privacy Act (FOI/PA)
Office of Hearings and Appeals (OHA)
U.S. Small Business Administration (SBA)
O – (202) 401-7793
F – (202) 841-1541
oreoluwa.fashola@sba.gov





*This electronic message contains information generated by the SBA solely for the intended recipients. Any unauthorized interception of  this message or the use or disclosure of  the information it contains may violate the law and subject the violator to civil or criminal penalties. If  you believe you have received this message in error, please notify the sender and delete the email immediately.*

**EXHIBIT D**

**Subject:** RE: ASBL v. SBA
**Date:** Wednesday, January 27, 2021 at 11:14:22 AM Pacific Standard Time
**From:** Bickford, James (CIV)
**To:** Karl Olson
**CC:** Aaron R. Field, Irene Lee, Kristel Gelera
**Attachments:** image001.jpg, NARROWING of FOIA requests 1 to 4 re advisory groups dec 11 5 pm.docx

Karl,

SBA has published an updated dataset on loans made through the Paycheck Protection Program. That dataset can be found here: https://sba.app.box.com/s/5myd1nxutoq8wxecx2562baruz774si6.

Last Friday's production was the agency's final response to ASBL's request for "Any communication between the White House, SBA, and Congress regarding requests for additional funding for the CARES Act and PPP Program." If ASBL wishes to challenge the adequacy of the agency's search or the propriety of the agency's withholdings, it is of course entitled to do so.

It seems that there are two issues we should address in Friday's report. First, what is the status of ASBL's pending motion for summary judgment? SBA believes that the motion is moot, and should be denied on that basis. Second, what is the status of SBA's response to ASBL's FOIA request? SBA has completed its response as to all four items added to the FOIA request on April 16, 2020. SBA interprets the original FOIA request of April 9 to seek all agency records relating to SBA committees or advisory panels, or the members of such committees or panels since January 2014. SBA believes that this request is unduly burdensome, and fails to reasonably describe the records sought (as FOIA requires).

Nonetheless, SBA has agreed to process emails involving the Regional Regulatory Fairness Board or certain individuals, upon payment of a processing fee. ASBL has agreed, under protest, to pay that fee. To date, SBA has not received payment and therefore has not begun processing.

Shortly before our last status report was due, you provided the attached document and suggested that ASBL would be willing to narrow its original April 9 request along these lines. You suggested that a more formal letter would follow, but I don't believe that such a letter ever arrived. Items 6 through 8 in the attached document all relate to the Advisory Committee on Veterans Affairs. As to Items 2 and 3, I take it that Lloyd Chapman is the head of the American Small Business League. Are Mr. Chapman or the League members of an SBA committee or advisory panel? Has Lloyd Austin (I assume you mean the current Secretary of Defense) or Raytheon served on an SBA committee or advisory panel? If so, perhaps it would be possible to specify the relevant committee or panel.

Please let me know 1) whether ASBL agrees that its summary judgment motion is now moot, 2) whether ASBL has made payment of the processing fee (and if not, whether it still intends to do so), and 3) whether any of the individuals or entities that you name in the attachment have served on SBA committees or advisory panels.

Sincerely,

James Bickford
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
1100 L Street, NW

Washington, DC 20530
(202) 305-7632
James.Bickford@usdoj.gov

This email may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivery of the email to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this email or its contents is strictly prohibited. If you have received this email in error, please notify the sender immediately and destroy all copies of it.

---

**From:** Karl Olson <kolson@cofolaw.com>
**Sent:** Saturday, January 23, 2021 1:03 AM
**To:** Bickford, James (CIV) <James.Bickford@usdoj.gov>
**Cc:** Aaron R. Field <afield@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera <kgelera@cofolaw.com>
**Subject:** RE: ASBL v. SBA

James,

I assume that this is a partial production since I can see no possibility that Congress could have allocated $600 billion for the PPP with only a few pages of communications on the issue?  Please confirm that this is a partial production and let us know when we will receive the remainder of the documents and any Vaughn index.  I also don't see any documents from or to the White House,  has there been any search done for documents from or tothe White House?  And what sort of search has been conducted in response to our requests?

Also, we believe the extensive redactions are unwarranted and are not justified by any FOIA exemptions such as the ones cited.

As you know, we're required to file a Joint CMC on January 29, please let me know when you're available to meet and confer  next week.

Enjoy the weekend.

Regards, Karl Olson

_____

Karl Olson
Attorney at Law



100 Pine Street, Suite 350
San Francisco, California 94111
Tel: 415.409.8900 Fax: 415.409.8904
**Please consider the environment before printing this e-mail**

IMPORTANT NOTICE:  Our offices are temporarily closed in compliance with public health directives and/or recommendations for the San Francisco Bay Area.  All of our attorneys and paralegals are working remotely and closely  monitoring messages and emails.  Please contact me or our office manager, Jessica Toscano (jtoscano@cofolaw.com), if you have questions or concerns.

For further information about our firm and directions to our San Francisco and Walnut Creek offices, please visit our Firm Website at www.cofolaw.com

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

**From:** Bickford, James (CIV) [mailto:James.Bickford@usdoj.gov]
**Sent:** Friday, January 22, 2021 6:43 PM
**To:** Karl Olson <kolson@cofolaw.com>
**Subject:** ASBL v. SBA

Karl,

I am transmitting a FOIA production and the associated letter from the Small Business Administration.

With my best,

James

James Bickford
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530
(202) 305-7632
James.Bickford@usdoj.gov

This email may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivery of the email to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this email or its contents is strictly prohibited. If you have received this email in error, please notify the sender immediately and destroy all copies of it.

FOCUSING OF FOIA REQUESTS 1-4 BY AMERICAN SMALL BUSINESS LEAGUE TO SBA

    The following represents an attempt by the American Small Business League ("ASBL") to address the claims of burden asserted by the Small Business Administration ("SBA") with respect to requests 1-4 set forth in SBA's November 20, 2020 letter.  ASBL does not concede that requests 1 through 4 are burdensome, but provides the following focus to aid SBA in narrowing its search.  The first five items below pertain  to all SBA advisory committees.   Items 6-8 below pertain  only to the  Advisory Committee on  Veterans Affairs.

1. We are willing to start the period on January 1, 2016.
2. All documents referring to American Small Business League.
3. All documents referring to Lloyd Chapman.
4. All documents referring to Lloyd Austin.
5. All documents referring to Raytheon.
6. Any and all communications to and from members of the Advisory Committee on Veterans Affairs from January 1, 2019 to present referring to or regarding the National Defense Authorization Act.
7. Any and all documents from the Advisory Committee on Veterans Affairs referring or relating to the United States Small Business Administration's 8(a) Business Development Program from January 1, 2019 to present, including any records related to a speaker at the Advisory Committee's public hearing on March 5, 2020 describing 8(a) as "the worst abused program that SBA offers," any records related to claims that only approximately 20 percent of 8(a) offers given by the United States Department of Defense are used, and any records related to the extent to which 8(a) offers are used.
8. Any and all documents related to meetings of the Advisory Committee on Veterans Affairs conducted from January 1, 2019 to present.


**EXHIBIT E**



Karl Olson
kolson@cofolaw.com

April 9, 2020

<u>**By E-Mail**</u>
Delorice Price Ford
Chief, Freedom of Information/Privacy Acts Office
U.S. Small Business Administration
409 Third St., 8th Floor
Washington, D.C. 20416

Re:    Freedom of Information Act Request

Dear Ms. Ford:

I am writing on behalf of my client, the American Small Business League, to request, pursuant to the Freedom of Information Act, the following data and records:

- All documents indicating the names and salaries of each current employee of the Small Business Administration's (SBA) Press Office

- All documents indicating, concerning, or referring to all outbound calls made by every employee of the SBA's Press Office between June 1, 2019 and March 31, 2020

- All records of communications (written, oral, and electronic) indicating, concerning, or referring to outbound calls made by every employee of the SBA's Press Office between June 1, 2019 and March 31, 2020

- All documents indicating, concerning, or referring to any and all inbound and outbound calls for Terry Sutherland between June 1, 2019 and March 31, 2020

- All records of communications (written, oral, and electronic) indicating, concerning, or referring to any and all inbound and outbound calls for Terry Sutherland between June 1, 2019 and March 31, 2020

We request that fees associated with this request be waived, or otherwise reduced, because the information will be used for educational purposes. Fees should also be waived

because disclosure of the requested information is in the public interest.  The information contributes significantly to the public understanding of the operations and activities of the SBA, and primarily promotes my client's noncommercial interests, in accordance with 5 U.S.C. § 552(a)(4)(A)(iii).

Please do not hesitate to contact me if there are any questions or concerns.

Very truly yours,

CANNATA, O'TOOLE, FICKES & OLSON LLP

KARL OLSON

KO:hs



**EXHIBIT F**

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential, or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

**From:** admin@foiaonline.gov <admin@foiaonline.gov>
**Sent:** Monday, June 01, 2020 7:17 AM
**To:** Karl Olson <kolson@cofolaw.com>
**Subject:** FOIA Request SBA-2020-001532 Submitted

This message is to confirm your request submission to the FOIAonline application: [View Request](#).
Request information is as follows:

- Tracking Number: SBA-2020-001532
- Requester Name: Mr. Karl Olson
- Date Submitted: 06/01/2020
- Request Status: Submitted
- Description: ASBL would like all of the emails in SBA's possession regarding the Regional Regulatory Fairness Board, and all emails in SBA's possession relating to, mentioning, received by or authored by Jeffrey Koenig and Jerome Toliver (who are on Region 9 of the Regional Regulatory Fairness Board), and Dr. Alison K. Brown.



**EXHIBIT G**



Irene Lee
ilee@cofolaw.com

June 19, 2020

**<u>By Email</u>**
Oreoluwa Fashola
Chief, Freedom of Information & Privacy Act Office
U.S. Small Business Administration
209 Third Street N.W., 8th Floor
Washington, D.C. 20416

David A. Fishman
Senior Legal Counsel for FOIA and Privacy Act
U.S. Small Business Administration
209 Third Street N.W., 8th Floor
Washington, D.C. 20416

    Re:  Freedom of Information Act Request


Dear Messrs. Fashola and Fishman:

  I am writing, on behalf of my client the American Small Business League, to request documents based on records that were released pursuant to Freedom of Information Act request number 113. The additional records requested are as follows:

- Any and all emails and correspondence relating to Bertica Cabrera-Morris, member of the National Small Business Development Center (SBDC) Advisory Board and owner of BCM Consulting

- Any and all emails and correspondence relating to Lea Marquez Peterson, member of the National SBDC Advisory Board and owner of the Marquez Peterson Group

- Any and all emails and correspondence relating to Bruce Thompson, member of the National SBDC Advisory Board and President of Regional Centers Holding Group

- Any and all emails and correspondence relating to Elizabeth ("Liz") Sara, Chair of the National Women's Business Council

**San Francisco Office:** 100 Pine Street, Suite 350 San Francisco, California 94111 Phone: 415.409.8900
**Walnut Creek Office:** 1255 Treat Boulevard, Suite 300 Walnut Creek, California 94597 Phone: 925.932.7171
www. cofolaw.com

- Any and all emails and correspondence relating to Pamela Prince-Eason, President and CEO of the Women's Business Enterprise National Council

- Any and all emails and correspondence relating to Rebecca Hamilton, member of the National Women's Business Council

Fees associated with this additional request should be waived as disclosure is in the public interest and the purpose of the request is to further a noncommercial interest. As per the SBA's guidance, the records requested concern the operation of the government, specifically the SBA and its advisory boards. Disclosure of the information is likely to contribute to a greater understanding of the SBA's operations and the advisory boards' roles and contributions as they relate to the Paycheck Protection Program. Our client seeks disclosure of this information solely to inform the public of the development and implementation process of the Paycheck Protection Program through its press releases and advocacy. This information would significantly contribute to public understanding of the Paycheck Protection Program by informing the public of key decisions and considerations made before and during the implementation of the program. Lastly, disclosure is not in the primary interest of our client as our client seeks this information for advocacy purposes.

Please do not hesitate to contact me should there be any questions or concerns.

Very truly yours,

CANNATA, O'TOOLE, FICKES & OLSON LLP

IRENE LEE

IL:hs

cc:   Karl Olson
      Kristel Gelera



**EXHIBIT H**

| | |
|---|---|
| **From:** | Garcia, Lindsay (RPC) |
| **To:** | Hershey, Michael S |
| **Cc:** | Goff, Emily (RPC) |
| **Subject:** | Data on PPP Loan Need |
| **Date:** | Friday, April 17, 2020 1:05:38 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

---

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Good afternoon!

RPC is working with Leader McConnell's office on a short paper to send to all Republican Senate offices and also to publish publicly to help illustrate the need for additional funding for PPP.

It would be a follow-up to the paper we did earlier this week that highlighted how quickly the money was going to run out.

We were wondering if you all had data on how many businesses are in line to get a PPP loan but are unable to get one because the money has run out. Or some data/numbers to help illustrate the need for additional funding.

For example, we heard one bank yesterday that had nearly 300 pending applications with an average total of $26,000 that they won't be able to fund because the money has run dry.

Do you have similar nationwide statistics?

Or even more examples from different banks in different states?

Any information you could pass along would be very helpful!

Also happy to chat by phone if that's easier: 

Thank you,
Lindsay


Lindsay Garcia
Policy Director
██████████
--
U.S. Senate Republican Policy Committee
Chairman Roy Blunt



| From: | Frederick.Vaughan@treasury.gov |
|---|---|
| To: | Hershey, Michael S |
| Cc: | Eric.M.Ueland@who.eop.gov; Jason.A.Yaworske@omb.eop.gov; Daniel.Kowalski@treasury.gov; Lauren.Nunnally@treasury.gov |
| Subject: | FW: Discussion draft of technical changes to Title I of CARES (EHF20326) |
| Date: | Wednesday, April 15, 2020 12:05:16 PM |
| Attachments: | EHF20326.docx |
| | EHF20326.pdf |

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Mike – Sharing to ensure y'all received as well. Best, Fritz

**From:** West, Meredith (SBC) <Meredith_West@sbc.senate.gov>
**Sent:** Wednesday, April 15, 2020 10:07 AM
**To:** Vaughan, Frederick <Frederick.Vaughan@treasury.gov>; Nunnally, Lauren <Lauren.Nunnally@treasury.gov>; Howell, Joseph <Brady.Howell@treasury.gov>
**Cc:** Lee, Jane (McConnell) <Jane_Lee@mcconnell.senate.gov>; Bender, Renee (SBC) <Renee_Bender@sbc.senate.gov>; Orr, Caleb (SBC) <Caleb_Orr@sbc.senate.gov>
**Subject:** Discussion draft of technical changes to Title I of CARES (EHF20326)

**\*\* Caution:** External email. Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **\*\***

Fritz, Lauren and Brady,

██████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████ .

Thanks,
Meredith

Discussion draft of technical changes to Title I of CARES (EHF20326)

Updated draft with the bracket handled, Meredith. I've included the descriptions Caleb sent below with my additions.



With EIDL loans, we will continue to approve loans and disburse funds until we run out. That will not last long - 2 weeks, and will cover only a fraction of those that applied.

███████████████████████████████████████████████ With EIDL grants, we never asked for that to begin with, just spending what was provided.

Lastly, as for state numbers (your other email), some state bank associations appear to have provided their own numbers to some congressional delegations. We have not been circulating numbers yet, but I did just send week 1 numbers to SBC leaders this afternoon - Rubio, Cardin, Shaheen. They asked for that on a conf call this week.

I will send you KY.

**From:** Lee, Jane (McConnell) <Jane_Lee@mcconnell.senate.gov>
**Sent:** Saturday, April 11, 2020 6:20 PM
**To:** Hershey, Michael S
**Subject:** Re: EIDL

███████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

Hey, separate question. I see that Maine has state info on P3. Is state by state out? We have several other offices asking. Should I direct to you?
I'd like KY info please for both P3 and EIDL. The latter is so I can help sell it to my boss.
Thank you!

Sent from my iPhone

> On Apr 11, 2020, at 4:16 PM, Hershey, Michael S <Michael.Hershey@sba.gov> wrote:
>
> Hey, Jane. We have been working with OMB yesterday and today on EIDL, for your information.
>
> There two categories - EIDL Advances (grants) and EIDL Loans.

>

> Bottom Line:

> CARES Act gave us $10B for EIDL Advances. We have 4.3 million applicants asking for $13.4B.

>

> With EIDL Loans, we are relying on existing loan authority of $7B. We have 4.6 million applicants for loan amounts over $400B.

>

> You'll recall that Sen. Cardin authored the Advances (grants). Those are "up to" 10k grants, not paid back. He put in the bill that we had to distribute "within 3 days". ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

>

> The good news is that the EIDL Advances started being distributed this past week - within 7 business days of the CARES Act passing. It was a big lift for us, but the checks are now going out. And I would note that we did it within the 10 day timeframe that we requested from Sen. Cardin.

>

> On loans, as I stated above, there is a serious shortfall of dollars to meet demand. We have been careful with sharing that, so as not to increase anxiety, and until we can obtain additional funds.

>

>

>

> -----Original Message-----

> From: Lee, Jane (McConnell) <Jane_Lee@mcconnell.senate.gov>

> Sent: Saturday, April 11, 2020 3:22 PM

> To: Hershey, Michael S <Michael.Hershey@sba.gov>

> Subject: EIDL

>

> Hey Mike,

> If we enacted additional funding for the EIDL program, would that allow SBA room to distribute these loans? Help me understand the mechanics here.

> Know there are requirements that Congress enacted that are putting you in this tough situation on the execution side. You guys are doing amazing work. Let me help you. - Jane███████████████

>

Hi Nicole,
To my knowledge, yes. The $349 billion in PPP funds will most likely be fully allocated by the end of this week. Members of Congress have been aware of how rapidly the funds were being allocated since the first few days of the program's activities and are deliberating the passage of another bill for additional funding.

Michael Ashcraft
Senior Area Manager and PIO
Kentucky District Office
600 Dr. Martin Luther King Jr. Place, Rm 188
Louisville KY 40202
**U.S. Small Business Administration**
████████████ New Direct Line)
michael.ashcraft@sba.gov



Home Page | Twitter | Instagram | Facebook | YouTube | LinkedIn | Email Alerts

**From:** Yates, Nicole <Nicole.Yates@mail.house.gov>
**Sent:** Thursday, April 16, 2020 12:14 AM
**To:** Ashcraft, Michael A. <Michael.Ashcraft@sba.gov>
**Subject:** Re: SBA out of money (probably)

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Hi Michael-
Is this true?

Nicole Yates
District Director
Congressman John Yarmuth (KY-03)
600 Martin Luther King Jr. Place, Suite 216
Louisville, KY 40202
S████████ direct - ████████ fax

On Apr 15, 2020, at 8:08 PM, Fleischaker, Rebecca
<Rebecca.Fleischaker@louisvilleky.gov> wrote:

Are you able to confirm?

-----Original Message-----
From: Burnette, Eric <Eric.Burnette@louisvilleky.gov>
Sent: Wednesday, April 15, 2020 5:19 PM
To: Wiederwohl, Mary Ellen <MaryEllen.Wiederwohl@louisvilleky.gov>; Fleischaker, Rebecca <Rebecca.Fleischaker@louisvilleky.gov>; Jarboe, Christy <Christy.Jarboe@louisvilleky.gov>; Smith, Erica M <Erica.Smith@louisvilleky.gov>; Bowling, Caitlin <Caitlin.Bowling@louisvilleky.gov>; Moore, Benjamin <Benjamin.Moore@louisvilleky.gov>
Cc: Ryan, Melissa D. <Melissa.Ryan@louisvilleky.gov>
Subject: SBA out of money (probably)

Reports that the PPP might have officially run out of money today:

https://www.cnbc.com/2020/04/15/small-business-rescue-loans-top-296-billion-rapidly-nearing-the-programs-funding-limit.html

Eric Burnette
Senior Policy Advisor
Louisville Forward
███████████

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

| | |
|---|---|
| **From:** | Turner, Austin F. EOP/OMB |
| **To:** | Perriello, Tami L.; Hershey, Michael S |
| **Cc:** | Miller, Kimberly A. EOP/OMB |
| **Subject:** | OMB Letter on PPP |
| **Date:** | Sunday, April 12, 2020 12:13:52 PM |

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Tami,

Per our call, wanted to make sure you all had seen the official OMB request on PPP.

The document was posted here: https://www.whitehouse.gov/omb/legislative/letters/

Direct link: https://www.whitehouse.gov/wp-content/uploads/2020/04/PPP-Letter-Pence_202004071705.pdf

Austin Turner
Branch Chief, Commerce Branch
Office of Management and Budget
Office – █████████████
Mobile – (████████████



**EXHIBIT I**

KARL OLSON (SBN 104760)
AARON R. FIELD (SBN 310648)
IRENE LEE (SBN 331485)
CANNATA O'TOOLE FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Telephone:     (415) 409-8900
Facsimile:     (415) 409-8904
Email:         kolson@cofolaw.com
               afield@cofolaw.com
               ilee@cofolaw.com

Attorneys for Plaintiff
AMERICAN SMALL BUSINESS LEAGUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>        Defendant. | CASE NO. 3:20-CV-04619-MMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  March 26, 2021<br>Time:  10:30 am<br>Place:  Courtroom 12, 19th Floor<br>Judge:  Hon. Maxine M. Chesney |

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

**JOINT CASE MANAGEMENT STATEMENT**

Plaintiff American Small Business League ("ASBL") and defendant the U.S. Small Business Administration ("SBA") (collectively, "the parties") submit this Joint Case Management Statement pursuant to ECF No. 43.

**ASBL's Separate Statement**

    **1.**    **Facts**

This case involves April 16, 2020 Freedom of Information Act ("FOIA") requests for loan-level data on how the SBA distributed funds appropriated under the CARES Act through the Paycheck Protection Program ("PPP") and correspondence between the SBA, Congress, and/or the White House regarding requests for additional funding under the PPP; and April 9, 2020 FOIA requests for records and communications related to SBA advisory committees, including records showing their advice to the SBA before, and during, the COVID-19 pandemic and the SBA's administration of the PPP. The SBA did not lawfully respond to these requests, so ASBL filed this lawsuit on July 10, 2020.

***April 16 Requests.*** ASBL moved for partial summary judgment on September 4, 2020, seeking the release of all records responsive to its April 16 request for "[d]ata showing show the appropriated funds from the CARES Act were distributed through the Paycheck Protection Program (PPP)," as follows:

> ASBL seeks an order granting summary judgment for it and against defendant under Rule 56 and mandating immediate disclosure of one sub category of information at issue for which disclosure is obviously required and urgently needed: the same information about each and every loan approved by the SBA as part of the $650 billion Paycheck Protection Program ("PPP") that the SBA publishes on its website about other loans made pursuant 15 U.S.C. section 636(a) (including whether and the extent to which each borrower's PPP loan was forgiven, which is analogous to the "GrossChargeOffAmount" data the SBA publishes about7(a) loans).

ECF No. 20 at 1.

The SBA opposed the motion as premature and filed a motion to stay on September 18, 2020 in light of litigation over similar records in the U.S. District Court for the District of Columbia. The SBA did not address the merits of ASBL's motion or present any evidence. ASBL

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

opposed the SBA's motion to stay on October 2, 2020.  This Court subsequently vacated the hearing on ASBL's motion for partial summary judgment previously scheduled for October 23, 2020.  On October 26, 2020, this Court granted the SBA's motion to stay pending a decision in the District of Columbia, and ordered the SBA to respond to all of ASBL's requests in this case by November 20, 2020.

On November 5, 2020, the United States District Court for the District of Columbia granted the plaintiffs' motions for summary judgment and denied the SBA's cross-motion for summary judgment in *WP Co. LLP v. U.S. Small Business Administration* ("*Washington Post*"), Case No. 20-cv-01240-JEB (D.D.C. May 12, 2020). ECF No. 36-1. The court in *Washington Post* ordered the SBA "to release the names, addresses, and precise loan amounts of all individuals and entities that obtained PPP and EIDL COVID-related loans by November 19, 2020." ECF No. 36-1 at 40. The SBA did not appeal, and that order is now final.

On November 20, 2020, the SBA sent ASBL's counsel a letter that purported to respond to ASBL's FOIA requests (the letter did not satisfy the requirements of *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n* ("*CREW*"), 711 F.3d 180, 188 (D.C. Cir. 2013)), and the Court lifted the stay, directed the parties to file both a Joint Status Report proposing a schedule for further proceedings (ECF No. 39) and this Joint Case Management Statement, and scheduled a Case Management Conference for February 5, 2021.

On December 1, 2020, the SBA released some loan-level data regarding PPP loans. The SBA released additional loan-level information on January 25 or 26, 2021, including additional categories of loan-level information requested by ASBL in this litigation and identified as improperly withheld to the SBA's counsel by ASBL's counsel. However, the SBA is continuing to withhold a wealth of "loan status" data under FOIA Exemption 4 and other loan forgiveness information.

ASBL continues to contest these withholdings as contrary to FOIA and the order rejecting similar withholdings in *WP Company LLP*. *See* ECF No. 36-1; *see also* ECF No. 20. The withheld data is necessary for the public to assess and engage with policymakers to improve the SBA's administration of COVID-19 relief programs, including the PPP. *See also* ECF No. 42-1,

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

2

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

1  Ex. A (SBA OIG Report 21-07) at 15-16, 24-25 (discussing the SBA's problematic

2  implementation of a loan forgiveness procedure and intent to review PPP loans and deny

3  forgiveness to borrowers it determines, post hoc, were ineligible to receive them).

4       On January 22, 2021, the SBA disclosed records in response to ASBL's April 16 request

5  for "[a]ny communication between the White House, SBA, and Congress regarding requests for

6  additional funding for the CARES Act and PPP Program."  To ASBL's surprise, however, the

7  SBA produced a total of only *nine* pages of responsive records regarding the *$660 billion* PPP

8  program, three of which were heavily redacted.  *See* ECF No. 42-1, Ex. B.  The SBA said it was

9  redacting records under FOIA Exemptions 5 and 6, claiming that the deliberative process doctrine

10  applied.[1]  It offered no information about what search it conducted, whether and the extent to

11  which it was withholding responsive records in their entirety, and how a request for

12  communications involving a $660 billion program could possibly have yielded only nine heavily-

13  redacted pages.

14       ASBL contests the SBA's response to this request as well.  The response is the result of a

15  search that was apparently far from adequate, and the extensive redactions in the nine pages of

16  records produced are not supported by FOIA Exemptions 5 and 6.

17       At the last case management conference, this Court suggested that ASBL and the SBA

18  meet and confer about the nature and adequacy of the SBA's search in response to ASBL's

19  request for communications about additional CARES Act and PPP funding.  ASBL attempted to

20

21  [1] An agency seeking to invoke the deliberative process doctrine bears the burden to show that the
documents are "predecisional" and "deliberative."  *U.S. Fish & Wildlife Serv. v. Sierra Club*, __

22  U.S. __, No. 19-547, 2021 WL 816352, at *4 (March 4, 2021) (explaining that the doctrine
applies only where documents are "predecisional and deliberative," and elaborating that

23  "[d]ocuments are 'predecisional' if they were generated before the agency's final decision on the
matter, and they are 'deliberative' if they were prepared to help the agency formulate its

24  position"); *see also Kowack v. U.S. Forest Serv.*, 766 F.3d 1130, 1135 (9th Cir. 2014) (holding,
*inter alia*, that agency documents stating factual reasons for why an agency employee's claim of

25  workplace violence and harassment was unsubstantiated did not reveal the agency's deliberative
process, and were not exempt from disclosure under Exemption 5).  The SBA has thus far failed

26  to establish that either prerequisite for invoking the "deliberative process" doctrine is satisfied,
having simply stated in January 22, 2021 correspondence to ASBL that "[t]he redacted

27  information consists of communications between certain individuals at SBA and Congress
regarding ongoing efforts to enact new legislation on corona-virus relief for small businesses.

28  This exchange of information and views is deliberative and became part of the agency's internal
decision-making process."

3

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

1   meet and confer with the SBA in a good faith effort to resolve these issues without the Court's

2   intervention.  However, the SBA advised ASBL that it was not willing to provide any information

3   about its search at this time, absent ASBL's agreement that all of the information the SBA

4   provided would be protected by the mediation privilege in Federal Rule of Evidence 408.  ASBL

5   asked the SBA to provide authority that supported its request that ASBL consent to applying Rule

6   408 to communications about its search, but the SBA offered none.  The SBA has still provided

7   no information about its search to ASBL or to this Court.

8       *April 9 Requests*.  The SBA declined to respond to most of ASBL's April 9 requests for

9   advisory committee-related records in its November 20, 2020 letter, contending that the requests

10  were "unduly burdensome" based on the number of "potentially" responsive records.  However,

11  the SBA did respond as to a subset of records sought in the requests, records related to the SBA's

12  Regulatory Fairness Board, and agreed to process and produce those records upon receipt of a

13  processing fee.

14      As to non-Regulatory Fairness Board records responsive to the April 9 requests, while

15  ASBL continues to dispute whether the SBA was justified in ignoring any part of these requests

16  on the grounds that they were "unduly burdensome," on February 12, 2021, ASBL agreed,

17  through counsel, to a narrowing proposal by the SBA, in an effort to put the dispute over the

18  scope of these requests to rest.  However, to date, the SBA has provided ASBL with no additional

19  information about these requests, let alone a determination reflecting a completed search in

20  response to the requests as narrowed that states all of the exemptions that the SBA believes

21  apply.[2]

22

23  [2] This sort of determination should have been provided to ASBL long before it filed this lawsuit,
    and it is more than reasonable to expect the SBA to provide this sort of determination very
24  promptly now, in the interest in resolving this lawsuit at least reasonably promptly.  As the D.C.
    Circuit explained in *Citizens for Responsibility & Ethics in Washington ("CREW") v. Fed.*
25  *Election Comm'n*, 711 F.3d 180, 184, 188 (D.C. Cir. 2013), a decision written by now-Justice
    Kavanaugh, FOIA generally requires agencies to both "gather and review the documents" and
26  "determine and communicate the scope of the documents it intends to produce and withhold, and
    the reasons for withholding any documents" such that the requester can make an informed
27  decision about how to proceed, including about whether to administratively appeal, within twenty
    business days.  *See also id.* at 184 (holding that an agency's response "must at least inform the
28  requester of the scope of the documents it will produce and the exemptions it will claim with
    respect to any withheld documents").

1    As to Regional Regulatory Fairness Board records responsive to the April 9 requests,

2    ASBL has paid the processing fee requested by the SBA (under protest), and the SBA has begun

3    to disclose records.  The SBA disclosed 1,960 pages on February 12, 2021 and 1,121 pages on

4    March 10, 2021.  As before, most of the records have been heavily redacted based on SBA's

5    claim that FOIA Exemption 5 and the "deliberative process" doctrine apply.  *See supra* at 4 n.2.

6    ASBL objects to many of these redactions as well because they are neither deliberative nor

7    predecisional.

8    The SBA claims that its delays are justified by the timing of ASBL fee payment for

9    Regional Regulatory Fairness Board records and its potential demand that ASBL pay some

10   additional, unstated amount for other advisory committee records.  But ASBL paid fees earlier

11   only to move past the issue and under protest, and ASBL has always maintained that it was and is

12   not required to pay the thousands of dollars demanded by the SBA under FOIA.[3]  The SBA's

13   improper assessment of fees cannot, and does not, justify the SBA's delays in disclosing records

14   thus far or its requested indefinite delay in the resolution of this lawsuit.  Moreover, the SBA has

15   only slowly disclosed Regional Regulatory Fairness Board records since receiving ASBL's

16   payment and has apparently failed to even complete a search for other advisory committee

17   records, despite ASBL's February 12, 2021 narrowing agreement.

18   **2.    <u>Motions and Scheduling</u>**

19   The Court should set a deadline for the SBA to disclose all records that are responsive to

20   all of the FOIA requests at issue in this case, narrowed as agreed on by the parties, and a briefing

21   schedule on cross-motions for summary judgment, as follows:

22

---

23   [3] There are several reasons why this fee assessment against ASBL was not lawful.  The SBA is

24   not permitted to charge ASBL fees because it failed to make a timely determination on ASBL's
     FOIA requests or comply with FOIA's timelines.  *See Bensman v. Nat'l Park Service*, 806 F.

25   Supp. 2d 31, 37-40, 42-43 (D.D.C. 2011) (Boasberg, J.) (applying 5 U.S.C. § 552(a)(4)(A)(viii)).
     ASBL qualifies for a fee waiver.  5 U.S.C. § 552(a)(4)(A)(iii).  ASBL cannot be charged "search"

26   or "review" fees because it qualifies as a representative of the news media for purposes of FOIA.
     5 U.S.C. § 552(a)(4)(A)(ii)(II); *Nat'l Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1385-

27   87 (D.C. Cir. 1989).  Finally, at a minimum, the SBA may not charge ASBL "review" fees, the
     lion's share of the fees assessed here, since ASBL clearly did not request any of the records at

28   issue in this case for "commercial use." 5 U.S.C. § 552(a)(4)(A)(ii)(III).

5

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

- **May 21, 2021:** SBA to disclose all records responsive to all FOIA requests in the case, narrowed as agreed on by the parties.
- **June 4, 2021:** SBA to file a *Vaughn* index that includes all records responsive to all FOIA requests in the case, narrowed as agreed on by the parties; a declaration describing its search; and a motion for summary judgment.
- **June 25, 2021:** ASBL to file a cross-motion for summary judgment and an opposition to the SBA's motion for summary judgment.
- **July 9, 2021:** SBA to file a reply in support of its motion for summary judgment and an opposition to ASBL's cross-motion for summary judgment.
- **July 23, 2021:** ASBL to file reply in support of its motion for summary judgment.

A schedule that contains a firm disclosure deadline and firm deadlines for summary judgment briefing is needed to ensure that ASBL receives the records it is entitled to under FOIA promptly and to resolve this case in a timely manner.  The SBA has stated, through counsel, that it is unwilling to process ASBL's requests at a rate of more than 1,000[4] pages of records per month absent a court order, and it has yet to even tell ASBL how many pages it has left to process.  *See* Field Decl. ¶¶ 2, 4.  As Congress recognized when it enacted FOIA, " '[i]nformation is often useful only if it is timely.  Thus, excessive delay by the agency in its response is often tantamount to denial.' "  *Our Children's Earth Found. v. Nat. Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015).  ASBL and the public need the requested records now, while the SBA is still managing COVID-19 relief programs, for them to be maximally useful.  It has now been nearly a year since ASBL made the FOIA requests at issue, and more than twenty business days, the SBA's general response deadline under FOIA, since ASBL's narrowing agreement.  And ASBL's proposed schedule is reasonable, since it would give the SBA months of additional time to process its requests and disclose responsive records.

As to the SBA's disclosure that it has filed a second motion for summary judgment in *WP*

---

[4] This processing rate is apparently arbitrary.  When ASBL's counsel asked the SBA's counsel to identify a policy, regulation, or law that required this processing rate before the last case management conference, the SBA's counsel could identify none.  Field Decl. ¶ 2.

*Company v. U.S. Small Bus. Admin.*, Case No. 20-cv-01240 (D.D.C.), regarding additional PPP information at issue here, the SBA has not asked for a second stay based on that case, and no second stay is warranted. Additionally, the summary judgment briefing does not cover all of the information ASBL is seeking about the PPP here. In any event, ASBL's proposed briefing schedule would require summary judgment briefing here about a month after supplemental summary judgment briefing in *WP Company* is done.[5]

The SBA's request for yet another delay in setting a disclosure deadline and briefing schedule effectively asks this Court to allow the SBA to withhold all of the records at issue indefinitely, and to indefinitely delay a ruling. This Court should decline. ASBL's proposed schedule should be adopted, and the SBA's request for a further indefinite delay should be denied.

**SBA's Separate Statement**

*Background.* This case concerns two separate FOIA requests submitted by ASBL. The first request, submitted on April 9, 2020, sought all agency records relating to SBA committees or advisory panels, or the approximately 210 members of such committees or panels, beginning in 2014. SBA considered this request to be unduly burdensome, and short of the statutory requirement that a FOIA requester "reasonably describe[]" the records that it seeks. 5 U.S.C. § 552(a)(3)(A). SBA nonetheless agreed to process (on a priority basis and without any narrowing of the request) a subset of potentially responsive records related to the Regional Regulatory Fairness Board and certain individuals, if ASBL would agree to pay the cost of processing. SBA communicated this decision by letter dated June 12, 2020. ASBL made payment on February 2, 2021—more than seven months later—while reserving its right to challenge the processing fee. In the approximately six weeks since then, SBA has made two productions totalling approximately 3,000 pages of responsive records.

---

[5] *See WP Company v. U.S. Small Bus. Admin.*, Case No. 20-cv-01240 (D.D.C. Feb. 11, 2021) (Minute Order granting plaintiffs' motion for briefing schedule and ordering that: "(1) Defendant shall file its supplemental motion for summary judgment by March 12, 2021; (2) Plaintiffs shall file their opposition and cross-motion by April 2, 2021; (3) Defendant shall file its opposition and reply by April 16, 2021; and (4) Plaintiffs shall file their reply by April 30, 2021.").

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

The parties have now reached an agreement to narrow the April 9 request to the records discussed above, certain records involving members of the SBA Advisory Committee on Veterans Affairs, as well as records involving any SBA committee and the American Small Business League itself, its founder Lloyd Chapman, Raytheon, or Secretary of Defense Lloyd Austin.  SBA will shortly determine the fee associated with the processing of the remainder of this request.

ASBL submitted its second FOIA request on April 16, 2020.  SBA has completed its response to that request, and ASBL has indicated that it intends to challenge the adequacy of the agency's search and the propriety of its withholdings, at least in part.  SBA has offered to meet and confer with ASBL about the terms used to conduct its searches, on the condition that ASBL not report to the Court on the substance of that conference before the agency has an opportunity to file its search declaration.  ASBL has thus far declined that offer.  SBA is prepared to defend the adequacy of its search at summary judgment

***Proposal for further proceedings.***  SBA proposes that it continue to make monthly productions of non-exempt records responsive to ASBL's request for records related to the Regional Regulatory Fairness Board—and to the remainder of ASBL's narrowed April 9 request, after it receives payment from ASBL—until production is complete.  SBA can commit to processing 1,000 pages of potentially responsive records per month and will work to exceed that rate, as it has done in the last two months.  But given the extraordinary demands on its resources due to the ongoing pandemic and associated relief efforts, and the volume of FOIA requests related to those efforts, SBA cannot commit to a processing rate of greater than 1,000 pages per month.  SBA receives approximately 1,500 FOIA requests in an average year.  In this fiscal year, it has received more than 6,500, and it is working diligently to balance the demands made on its time by these various requests.

SBA asks the Court's leave to file a further status report no later than June 18, 2021, updating the Court on the status of its response to ASBL's FOIA request of April 9, 2020, as narrowed, and proposing a schedule for further proceedings in this case.

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

***Response to ASBL's proposed processing rate.***  ASBL delayed the processing of its request by refusing to pay the associated fee for more than seven months, but now proposes that SBA should be required to complete its production in the next two months.  Due to the limitations of its document review software, SBA does not currently have a reliable estimate of the total volume of records remaining to be processed, but the agency believes that the number exceeds 10,000 pages—and possibly by a considerable sum.  It would not be reasonable to require the agency to complete the processing of this large (though indeterminate) volume of records in two months' time.

The Freedom of Information Act "does not assign any particular time frame to release of the records sought."  *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012).  Although ASBL criticizes the agency's proposed processing rate as "apparently arbitrary" and unmoored from the statute, *see supra* note 3, it is not.  Rather, SBA's proposal is driven by its "good faith effort and due diligence . . . to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible," taking into due consideration both the agency's present resources and the increased demands upon them.  *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976).  When the agency receives fewer FOIA requests, its average processing time is faster; when the agency receives four times the normal volume of requests in a given year, its average processing time is necessarily slowed.

ASBL notes that FOIA requires an agency to make a "determination" on each request within twenty—or, in unusual circumstances, thirty—business days.  5 U.S.C. § 552(a)(6).  But the consequence for an agency's failure "to make and communicate its 'determination' whether to comply with a FOIA request within [those] statutory timelines" is simply that "the requester 'shall be deemed to have exhausted his administrative remedies,'" and may file suit in district court.  *CREW v. FEC*, 711 F.3d 180, 184 (D.C. Cir. 2013) (quoting 5 U.S.C. § 552(a)(6)(C)(i)).  That is precisely what has happened here: SBA failed to make a timely determination, and ASBL was therefore permitted to file suit without first exhausting its administrative remedies.  But the statute does not contemplate that the agency will complete its production of records within any particular timeframe.  SBA is doing its utmost to make any non-exempt, responsive records

9

1    "promptly available" to ASBL.  5 U.S.C. § 552(a)(3)(A).

2           Significantly, the records remaining to be processed in this case have nothing to do with

3    the Paycheck Protection Program or the present pandemic.  Instead they concern the Regional

4    Regulatory Fairness Board, the Advisory Committee on Veterans Affairs, and other SBA

5    committees.  SBA is processing them as quickly as it is able, after a considerable delay caused by

6    ASBL.  While the remaining records do not relate to any urgent topic, it is likely that they do

7    contain some amount of exempt information; and a rushed production schedule would therefore

8    risk inadvertent disclosure of exempt information.  This FOIA request seeks a significant volume

9    of records, and voluminous requests take some time to process.

10          ***Response to ASBL's proposed briefing schedule.***  ASBL proposes that, after processing

11   an exceedingly large volume of records in two months' time, SBA should produce a *Vaughn*

12   index justifying its withholdings from those thousands of pages of records, and file its summary

13   judgment motion in support of those withholdings, in the span of <u>two weeks</u>.  SBA respectfully

14   suggests that this is not a reasonable proposal.

15           SBA asks that the parties be permitted to meet and confer after the close of production,

16   and to propose jointly (or separately, if necessary) a schedule for summary judgment briefing at

17   that time.  SBA also notes that the withholdings from the agency's January 25, 2021 release of

18   Paycheck Protection Program data are currently being challenged in the *Washington Post* case

19   pending in the District of Columbia district court.  SBA filed its motion for summary judgment

20   on March 12, and the *Washington Post* will file its cross-motion on April 2.

21

22                                       Respectfully submitted,

23   DATED: March 19, 2021               CANNATA O'TOOLE FICKES & OLSON LLP

24

25                                       By:    /s/ Aaron R. Field
                                                AARON R. FIELD

26

27                                       Karl Olson
                                         Aaron R. Field

28                                       Irene Lee

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

10



Attorneys for Plaintiff
AMERICAN SMALL BUSINESS LEAGUE

DATED: March 19, 2021          BRIAN M. BOYNTON
                              Acting Assistant Attorney General

                              MARCIA BERMAN
                              Assistant Director, Federal Programs Branch

                              By:    /s/ James Bickford
                                     JAMES BICKFORD

                              Attorneys for Defendant
                              UNITED STATES SMALL BUSINESS
                              ADMINISTRATION

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

11

CANNATA, O' TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

1

2        **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

3        I, AARON R. FIELD, attest that concurrence in the filing of this document has been

4   obtained from the other signatories.

5
     DATED: March 19, 2021            CANNATA O'TOOLE FICKES & OLSON LLP
6

7
                                     By:    /s/ Aaron R. Field
8                                           AARON R. FIELD

9                                    Karl Olson
                                     Aaron R. Field
10                                   Irene Lee

11
                                     Attorneys for Plaintiff
12                                   AMERICAN SMALL BUSINESS LEAGUE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**EXHIBIT J**



Karl Olson
kolson@cofolaw.com

February 11, 2022

**<u>By Email Only</u>**
David A. Fishman
Karen Hunter
Office of General Counsel
U.S. Small Business Administration
david.fishman@sba.gov
karen.hunter@sba.gov

Indraneel Sur
Civil Division, Federal Programs Branch
United States Department of Justice
indraneel.sur@usdoj.gov

Re: *American Small Business League v. United States Small Business Administration*, Case No. 3:20-cv-04619-MMC (N.D. Cal)

Dear Counsel:

In advance of our call on Monday, February 14, 2022 to discuss the search for communications between the White House, United States Small Business Administration ("SBA"), and Congress regarding requests for additional funding for the Coronavirus Aid, Relief, and Economic Security ("CARES") Act and the Paycheck Protection Program ("PPP"), we are providing the following suggested search terms to be used in a subsequent search for responsive records. These terms include the official names of legislation that provide for more funding for the PPP under the CARES Act, as well as their corresponding legal citation and House Resolutions numbers.

- "cares" AND "act"
- "paycheck" OR "protection" OR "program"
- "116-136" OR "116-139" OR "208-199"
- "7(a)" OR "Small Business Act" AND "loan"
- "Health" AND "Care" AND "Enhancement" AND "Act"

- ("coronavirus" OR "covid" OR "relief" OR "stimulus" OR "package") AND ("congress" OR "house" OR "senate" OR "white house" OR "executive" OR "president")
- "heroes" AND "act"
- "health" OR "economic" OR "recovery" OR "omnibus" OR "emergency" OR "solutions" OR "act"
- "H.R. 748" OR "H.R. 6800" OR "H.R. 266"
- "shake shack" OR "lakers" OR "ruth's" OR "potbelly"

The suggested date range for all searches is January 1, 2020 to January 1, 2022.

We look forward to discussing these search terms during our call.

Very truly yours,

CANNATA, O'TOOLE, FICKES & OLSON LLP

KARL OLSON

KO:hs

# EXHIBIT K



March 3, 2022

Karl Olson
kolson@cofolaw.com

**By Email Only**

David A. Fishman
Karen Hunter
Office of General Counsel
U.S. Small Business Administration
david.fishman@sba.gov
karen.hunter@sba.gov

Indraneel Sur
Civil Division, Federal Programs Branch
United States Department of Justice
indraneel.sur@usdoj.gov

Re:  *American Small Business League v. United States Small Business Administration*, Case No. 3:20-cv-04619-MMC (N.D. Cal)

Dear Indraneel, David, and Karen,

Before our next call, please re-run the following search terms for the ten custodians at the SBA most likely to have engaged in high-level, substantive communications with Congress and/or the White House regarding additional CARES Act or COVID-19 relief funding, using a date range of March 1, 2020 through May 31, 2021:

("116-136") OR ("116-139") OR ("208-199") AND(("@who.eop.gov") OR ("mail.house.gov") OR ("senate.gov"))

(("Health") AND ("Care") AND ("Enhancement") AND ("Act")) AND(("@who.eop.gov") OR ("mail.house.gov") OR ("senate.gov"))

(("shake shack") OR ("lakers") OR ("ruth's") OR ("potbelly")) AND(("@who.eop.gov") OR ("mail.house.gov") OR ("senate.gov"))

Thank you,

CANNATA, O'TOOLE, FICKES & OLSON LLP

KARL OLSON

KO:hs


**EXHIBIT L**



lowey.house.gov
**WASHINGTON**
2365 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-6506
FAX: (202) 225-0546

**WESTCHESTER**
222 MAMARONECK AVENUE
SUITE 312
WHITE PLAINS, NY 10605
(914) 428-1707
FAX: (914) 328-1505

**ROCKLAND**
67 NORTH MAIN STREET
SUITE 101
NEW CITY, NY 10956
(845) 639-3485
FAX: (845) 634-4079

# Nita M. Lowey
# Congress of the United States
## 17th District, New York

May 07, 2020

The Honorable Jovita Carranza
Small Business Administration
Administrator
409 3rd Street SW
Washington, D.C. 20416

Dear Administrator Carranza:

I write to express deep concern regarding small business relief across the Economic Injury Disaster Loans (EIDL), EIDL Grants, and the Paycheck Protection Program (PPP), which have—under your implementation and in more ways than one—neglected the very recipients for which this relief was established. I am following up on the request for an oversight briefing call with the House Appropriations Committee.

My congressional district is home to one of the biggest coronavirus clusters in the state and country. Our small businesses and nonprofits are on the brink of furloughing staff and closing their doors for good; without these small businesses, local economies would further stall out, and without expedient support for our nonprofits, the vital services they provide to our communities would come to a halt at a time when we need them most.

New York workers, their families, and the small businesses and qualifying nonprofits that employ them rely upon your effective implementation of small business relief as enacted by Congress, which includes swift, clear and ongoing communication with Congress, borrowers, and lenders. It is imperative the Small Business Administration (SBA) convey its COVID-19 related needs to Congress in a timely and transparent manner, including resources needed to improve processing times for EIDL, EIDL Grants, and the PPP.

*EIDL and EIDL Grants*

Less than one month after New York's disaster declaration was granted on March 19th, the SBA stopped accepting EIDL applications on April 15th, later stating on its website that the additional

$50 billion appropriated for the program under the *Paycheck Protection Program and Health Care Enhancement Act* will only go toward existing applications in the queue with no update as to when new applications may be submitted. Further, several constituents have written and called my office to share that while they had been approved for the EIDL Grants, more than three days had lapsed without any kind of update from the SBA on when these critical funds would be disbursed. Additional clarity regarding implementation of the EIDL and EIDL Grants is needed for the following:

1. The *Paycheck Protection Program and Health Care Enhancement Act* included $50 billion in loan subsidy to fund approximately $350 billion in SBA Economic Injury Disaster Loans. Accounting for differing loan sizes, how many applications in the queue does the SBA expect this relief to support?

2. If this amount is insufficient to support qualifying applications already in the queue, what additional amount in loan subsidy is needed from Congress to address existing applications?

3. What is the anticipated volume of new EIDL applications SBA expects upon resumption of accepting applications, and what is the anticipated loan volume?

4. Aside from an application number to verify completion that serves as an assurance the applicant is in the EIDL queue, what other updates does the SBA provide regarding the status of an application and where it stands in the queue?

5. What impedes the disbursal of EIDL Grants within three business days and what steps has the SBA taken to address this issue?

*Paycheck Protection Program*

Guidance to both borrowers and lenders for the PPP has failed to be clear, leaving borrowers unsure how their eligibility for the program or loan forgiveness will be impacted. The Paycheck Protection Program Loans Frequently Asked Questions[1] document, which has been updated multiple times, has caused more confusion rather than answer questions.

For example, Question 17 in the FAQ states that current PPP borrowers need not take further action if they were in compliance with SBA guidance as of April 2nd, but Question 31 in the same FAQ states that borrowers should return their PPP loan in full to stay in good faith if they have reasonable access to liquidity provided this option wouldn't be significantly detrimental to their business. While the FAQ specifically addresses how this guidance may apply to publicly traded companies, it fails to address non-public small businesses and qualifying nonprofits to assure that this does not apply to them in concrete terms. I have personally heard from genuinely small businesses and nonprofits operating on razor -thin margins who are fearful that vague guidance sets them up to fall out of compliance despite their best efforts, and subsequently, put

[1] U.S. Small Business Administration. Frequently Asked Questions for Lenders and Borrowers for the Paycheck Protection Program as of May 5, 2020. Retrieved from https://www.sba.gov/sites/default/files/2020-05/Paycheck-Protection-Program-Frequently-Asked-Questions_05%2003%2020.pdf

them in the position of owing hundreds of thousands of dollars for a loan they counted on being forgiven.

I've raised this and several other issues, such as confusion as to how employees are counted, on calls with multiple SBA-approved lenders of varying asset sizes. Their consistent feedback has been that SBA guidance comes too late, without clarity, and sometimes changes. As the federal agencies responsible for issuing guidance and regulations that will be used to determine compliance with loan forgiveness terms, I am especially concerned that borrowers have not been equipped with adequate information for them to fully understand how to stay on track for loan forgiveness. Additional clarity regarding implementation of the PPP is needed for the following:

1. What future resources will the SBA and the Treasury make available to PPP borrowers to support their compliance with the PPP terms of forgiveness throughout the life of the loan?

2. How will these resources be differentiated for the diversity of PPP borrowers?

3. When will these resources be made available?

4. What accountability will SBA-approved lenders have for supporting borrowers seeking loan forgiveness?

Congress provided an additional $310 billion for PPP loans in the *Paycheck Protection Program and Health Care Enhancement Act,* which builds upon the $349 billion provided in the *Coronavirus Aid, Relief, and Economic Security (CARES) Act.* SBA and Treasury's implementation of the PPP loans should align with the clear message Congress sent by establishing a $60 billion set aside within the $310 billion for lenders with assets under $50 billion. On April 29th shortly after 1:30 PM EST—five days after enactment of the *Paycheck Protection Program and Health Care Enhancement Act* when the $60 billion set-aside had already been met and exceeded—Administrator Carranza tweeted an alert to eligible lenders with asset sizes under $1 billion that they would have exclusive access to the SBA PPP portal from 4:00 PM – 11:59 PM EST that same day.[2] A comparable alert with less than 24 hours' notice from Secretary Mnuchin was posted to Treasury's website[3]. One tweet and one statement just mere hours before a one-time processing opportunity for small lenders with no guarantee of future opportunities are an unacceptable failure on your part to support the small businesses and nonprofits for which this set-aside was designed.

1. Are future dedicated processing windows for small lenders expected? If so, how many can lenders expect, and when is the next one?

[2] Jovita Carranza, S.B.A. (2020, April 29). To assist small community lenders and ensure their small business customers have access to the #PaycheckProtectionProgram, today from 4 PM EDT – 11:59 PM EDT, @SBAgov systems will only accept loans from lending institutions with asset sizes less than $1 billion. [Tweet] https://twitter.com/SBAJovita/status/1255550936577183744?s=20
[3] U.S. Department of Treasury. *Joint Statement by Secretary Steve T. Mnuchin and Administrator Jovita Carranza on Establishing Dedicated Hours for Small Lender Submissions of PPP Applications.* [Press Release]. (2020, April 29). Retrieved from https://home.treasury.gov/news/press-releases/sm992

2. Please provide assurance that any future dedicated processing windows for small lenders will be announced with at least 48 hours' notice.

During this unprecedented pandemic, we need to ensure better and fairer distribution of relief for small businesses and qualifying nonprofits seriously impacted by COVID-19. Our local small business owners and nonprofit leaders are working tirelessly to keep their doors open and their staff on payroll.

It is imperative that the House Appropriations Committee has a frank discussion in an oversight briefing call with SBA Administrator Carranza. I trust you share my sense of urgency, and I thank you for your cooperation in this matter.

Sincerely,

Nita M. Lowey
Chairwoman
House Appropriations Committee

Cc: The Honorable Steven Mnuchin, Secretary of the U.S. Department of Treasury

April 27, 2020

The Honorable Steven Mnuchin
Secretary
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

The Honorable Jovita Carranza
Administrator
U.S. Small Business Administration
409 3rd Street, SW
Washington, DC 20416

Secretary Mnuchin and Administrator Carranza:

We write to request information on what your agencies are doing to ensure that funds made available to small business owners through the Small Business Administration's (SBA) Paycheck Protection Program (PPP) are reaching small business owners who need the assistance most in light of the economic turmoil caused by the pandemic—and on what actions your agencies are taking to prevent these funds from unjustly enriching applicants whose businesses are not in need of the same relief.

Small businesses and their workers are under incredible stress right now, and we must continue to do everything in our power to help them stay in business and keep their workers employed. By providing up to $10 million in loans to eligible small business borrowers—with the loan size tied to monthly payroll and loan forgiveness granted when the proceeds are used primarily to retain or rehire workers—the Paycheck Protection Program was intended to infuse cash directly into the hands of small business owners to help them and their employees weather the current economic crisis.

As small business owners await distribution of the additional funding provided for the program in the Paycheck Protection Program and Health Care Enhancement Act, <u>it is critical that the funding provided by Congress be used to provide loans to the businesses whose owners and employees' livelihoods are truly at risk as a result of the pandemic</u>. Unfortunately, reports indicate that the distribution of the initial round of funding was not limited to struggling small businesses who truly needed the money to remain in operation.

Instead, some of this funding was reportedly granted to further the enrichment of owners whose businesses have not been subjected to the financial strain facing most small businesses at this

time.[1] During the initial weeks that the program was in place, loan recipients included several hedge funds whose headcount falls well under the 500 employee limit set by the Small Business Administration—but whose annual revenues and incomes render them the opposite of "small."[2] For these applicants and others who did not meet the criteria of financial need, the funding provided by PPP is simply a windfall—yet their participation in this program crowds out truly deserving applicants whose lack of sophistication and relationships with lenders may have delayed their ability to submit PPP applications.

The Paycheck Protection Program was designed to reach small business owners who truly need the funding. For this reason, as part of the loan process, each small business owner seeking funding must "certify in good faith" that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."[3] Under the terms of the lender guidance, "[l]enders are permitted to rely on borrower certifications," including the certification that the borrower actually needs the money to support ongoing operations.[4]

Although this type of self-certification facilitates the rapid distribution of funding in the face of an extraordinary economic challenge, there must be measures in place to reclaim funding provided to applicants whose certifications turn out to be inaccurate, if not deliberately fraudulent.

For these reasons, we urge you to develop strong supervisory mechanisms to identify instances of unjust enrichment. This is not just a matter of rooting out fraud and abuse—the funding for this program, which we support, is necessarily finite. Every loan that provides a windfall for an applicant who does not truly need it results in one fewer loan made to a struggling small business owner whose employees could be truly helped by this funding.

The guidance your agencies issued on April 23, 2020 creates a new safe harbor for ineligible businesses to return loan proceeds to avoid further scrutiny and confirms the fact that large public companies with access to capital markets are "unlikely" to meet the eligibility requirements of the program.[5] Similarly, the guidance your agencies issued on April 24, 2020 makes it clear that hedge funds and private equity firms are "ineligible to receive a PPP loan."[6] Unfortunately, this new guidance also underscores the agencies' continued reliance on the "good faith" of Applicants—who are simply reminded to "carefully review" the certification—and does not indicate any forthcoming changes in program administration or supervision that might

---

[1] https://www.washingtonpost.com/business/on-small-business/hedge-funds-want-taxpayers-to-think-theyre-small/2020/04/16/f2671492-7fd9-11ea-84c2-0792d8591911_story.html

[2] https://www.bloomberg.com/news/articles/2020-04-14/hedge-fund-managers-are-claiming-bailouts-as-small-businesses. On April 24, 2020, eight days after the initial appropriation of funding was exhausted, the agencies issued guidance stating that "[h]edge funds and private equity firms are primarily engaged in investment or speculation, and such businesses are therefore ineligible to receive a PPP loan." https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf

[3] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Application-3-30-2020-v3.pdf

[4] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf

[5] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf

[6] https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf

2

SBA_008083

address the underlying problem or serve as a check on applications submitted by small businesses that clearly do not satisfy the eligibility criteria.

Given the seriousness of this matter, we ask that you provide answers to the following questions:

1. In addition to considering an Applicant's status as a large public company, hedge fund, or private equity firm, what measures are your agencies taking to identify indicators of unjust enrichment that suggest an Applicant does not meet the criteria for economic need?

2. Will you commit to transparency measures that provide the public with information to assess the propriety of funding distributed under the Paycheck Protection Program?

3. If your agencies identify evidence that Applicants have secured funding in connection with economic conditions that render the loan truly unnecessary, resulting in unjust enrichment of the Applicant, will you commit to taking immediate action in response?[7]

We thank you for your attention to this important matter.


Sincerely,

Amy Klobuchar
United States Senator

Tammy Baldwin
United States Senator

Richard Blumenthal
United States Senator

Catherine Cortez Masto
United States Senator

Richard J. Durbin
United States Senator

Tammy Duckworth
United States Senator

Dianne Feinstein
United States Senator

---

[7] With regard to your agencies' consideration of whether a given loan request necessary, we recognize and support the decision to waive the "credit elsewhere test" and believe the relevant inquiry should focus on the applicant's current and anticipated future financial condition rather than the availability of credit. *See* https://www.sba.gov/sites/default/files/2020-04/PPP--IFRN%20FINAL_0.pdf (stating that the "credit elsewhere test" does not apply).

3

SBA_008084

Kirsten Gillibrand
United States Senator

Kamala D. Harris
United States Senator

Mazie K. Hirono
United States Senator

Angus S. King, Jr.
United States Senator

Patrick Leahy
United States Senator

Edward J. Markey
United States Senator

Jeffrey A. Merkley
United States Senator

Christopher S. Murphy
United States Senator

Jack Reed
United States Senator

Bernard Sanders
United States Senator

Tina Smith
United States Senator

Tom Udall
United States Senator

Chris Van Hollen
United States Senator

Elizabeth Warren
United States Senator

Ron Wyden
United States Senator

SBA_008085

JAMES E. CLYBURN
CHAIRMAN

MAXINE WATERS
CAROLYN B. MALONEY
NYDIA M. VELÁZQUEZ
BILL FOSTER
JAMIE RASKIN
ANDY KIM

STEVE SCALISE
RANKING MEMBER

JIM JORDAN
BLAINE LUETKEMEYER
JACKIE WALORSKI
MARK E. GREEN, M.D.

ONE HUNDRED SIXTEENTH CONGRESS

# Congress of the United States
## House of Representatives

### SELECT SUBCOMMITTEE ON THE CORONAVIRUS CRISIS
2157 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6143

PHONE (202) 225-4400

https://coronavirus.house.gov

June 15, 2020

The Honorable Steven Mnuchin
Secretary
Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220

The Honorable Jovita Carranza
Administrator
Small Business Administration
409 3rd Street, S.W.
Washington, D.C. 20416

Dear Secretary Mnuchin and Administrator Carranza:

The Select Subcommittee on the Coronavirus Crisis is investigating whether implementation of the Paycheck Protection Program (PPP) has favored large, well-funded companies over struggling small businesses in underserved communities—contrary to Congress' clear intent. We are writing to seek documents and information and to urge the Treasury Department (Treasury) and Small Business Administration (SBA) to take immediate steps to ensure that remaining PPP funds are allocated to businesses truly in need, and to increase transparency so taxpayers can see whether federal funds are being diverted due to waste, fraud, and abuse.

When Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act with strong bipartisan support, we intended to provide urgent relief to small businesses that otherwise could be forced to lay off employees or shut down. The CARES Act specifically encouraged SBA to issue guidance "to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets," including businesses owned by veterans, members of the military, socially and economically disadvantaged individuals, and women.[1] Unfortunately, SBA and Treasury failed to issue clear guidance, potentially undermining this core principle of the program.

Media reports indicate that some large lenders apparently created a two-tier system for processing PPP loan applications. The banks' wealthiest clients had access to a personalized application process that ensured their applications were processed first. Other applicants had to

---

[1] Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, §§ 1102, 1106 (2020).

use poor-performing electronic portals, faced significant processing delays, and sometimes needed to find another lender to consider their application.[2]  For example, one report found that JPMorgan Chase "provided loans to virtually all of its commercial banking customers" that sought PPP loans "while the lender's smallest customers were almost entirely shut out."[3]

Unfortunately, SBA and Treasury did not provide any public guidance to lenders until nearly two weeks after lenders started processing loan applications and just a day before the initial round of funding dried up.  Despite Congress' clear intent, this guidance made no mention of prioritizing loans to underserved communities.[4]

On May 8, 2020, SBA's Inspector General reported that SBA's guidance "did not fully align with" the CARES Act, noting, "We did not find any evidence that SBA issued guidance to lenders to prioritize the markets indicated in the Act."  The Inspector General also concluded SBA failed to provide an optional demographic questionnaire with the PPP loan application, undermining SBA's ability to determine whether lenders appropriately prioritized loans to underserved communities.  The Inspector General concluded:

> Because SBA did not provide guidance to lenders about prioritizing borrowers in underserved and rural markets, these borrowers, including rural, minority and women-owned businesses may not have received the loans as intended.  In addition, because SBA did not require demographic data to identify PPP borrowers in underserved markets, it is unlikely that SBA will be able to determine the loan volume to the intended prioritized markets.[5]

---

[2] *See, e.g., Banks Gave Richest Clients 'Concierge Treatment' for Pandemic Aid*, New York Times (Apr. 22, 2020) (online at www.nytimes.com/2020/04/22/business/sba-loans-ppp-coronavirus.html); *Many Small Businesses are Being Shut Out of a New Loan Program by Major Banks*, Vox (Apr. 7, 2020) (online at www.vox.com/2020/4/7/21209584/paycheck-protection-program-banks-access); *In Race for Small-Business Loans, Winning Hinged on Where Firms Bank*, Wall Street Journal (Apr. 20, 2020) (online at www.wsj.com/articles/in-race-for-small-business-loans-winning-hinged-on-where-firms-bank-11587410421).

[3] *JPMorgan's Small Business Loans Instead Went to Its Biggest Customers*, Bloomberg (Apr. 22, 2020) (online at www.bloomberg.com/news/articles/2020-04-22/jpmorgan-commercial-clients-beat-out-smaller-ones-for-sba-loans).

[4] Small Business Administration, *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20813 (Apr. 15, 2020) (interim final rule); *see also The Paycheck Protection Program Ran Out of Funding.  What's Next For Small Business Owners?*, Forbes (Apr. 16, 2020) (online at www.forbes.com/sites/advisor/2020/04/16/the-paycheck-protection-program-ran-out-of-funding-whats-next-for-small-business-owners/#15c8ae8d7440).

[5] Small Business Administration, Office of Inspector General, *Flash Report Small Business Administration's Implementation of the Paycheck Protection Program Requirements* (May 8, 2020) (online at www.sba.gov/document/report-20-14-flash-report-small-business-administrations-implementation-paycheck-protection-program-requirements).

SBA_001673

After facing public scrutiny, some larger companies that received PPP loans have returned the money.[6]  For example, on May 8, 2020, the Select Subcommittee sent letters to companies that had received at least $10 million in PPP loans, despite having more than 600 employees, a market capitalization of more than $25 million, and publicly traded stock.[7]  In response, one company, which recently paid $6.5 million to resolve allegations of defrauding the federal government, returned its $10 million PPP loan.[8]

Congress acted to address these issues in the Paycheck Protection Program and Health Care Enhancement Act, which was enacted on April 24, 2020.  Of the $310 billion in additional PPP funds appropriated by that law, $60 billion was reserved for various community lenders, which have a proven track record of serving small businesses lacking longstanding relationships with large financial institutions.[9]  As of June 6, 2020, SBA had approved more than $511 billion in PPP loans, leaving more than $130 billion available for future lending.[10]

Congress' decision to reserve some PPP funds for community lenders does not relieve the Administration of its responsibility to ensure that all PPP lenders prioritize underserved communities.  Given the significant remaining funds and the fact that many small businesses are still struggling to stay afloat, we request that you immediately issue guidance to lenders directing them to prioritize entities in underserved markets, including businesses owned by veterans, members of the military, socially and economically disadvantaged individuals, and women.

We also urge you to provide more transparency about the administration of this program so American taxpayers can understand whether federal funds are helping vulnerable businesses and saving jobs, or are being diverted due to waste, fraud, and abuse.  Among other steps, the Administration should release the names of all PPP borrowers—as the SBA routinely does for similar loan programs.  Contrary to Secretary Mnuchin's recent testimony, there is nothing "proprietary" or "confidential" about a business receiving millions of dollars appropriated by Congress, and taxpayers deserve to know how their money is being spent.[11]

---

[6] *Relief Aid Stalls With Small Businesses Returning Loans Unused*, Bloomberg Law (May 29, 2020) (online at https://news.bloomberglaw.com/coronavirus/relief-aid-stalls-with-small-businesses-returning-loans-unused).

[7] Select Subcommittee on the Coronavirus Crisis, *In First Official Action, House Coronavirus Panel Demands That Large Public Corporations Return Taxpayer Funds Intended For Small Businesses* (May 8, 2020) (online at https://coronavirus.house.gov/news/press-releases/first-official-action-house-coronavirus-panel-demands-large-public-corporations).

[8] Select Subcommittee on the Coronavirus Crisis, *Company Returns $10 Million In Taxpayer Funds Intended For Small Businesses In Response To Select Subcommittee Inquiry* (May 11, 2020) (online at https://coronavirus.house.gov/news/press-releases/company-returns-10-million-taxpayer-funds-intended-small-businesses-response).

[9] Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, § 101 (2020).

[10] U.S. Small Business Administration, *Paycheck Protection Program (PPP) Report* (June 6, 2020) (online at www.sba.gov/sites/default/files/2020-06/PPP_Report_Public_200606%20FINAL_-508.pdf).

[11] *Mnuchin Loosens Restrictions on Small-Business Loans to Ease Forgiveness, But Borrowers to Remain Secret*, Washington Post (June 10, 2020) (online at www.washingtonpost.com/us-policy/2020/06/10/mnuchin-small-business-paycheck-protection-program/).

SBA_001674

To assist the Select Subcommittee with this investigation, please produce by June 29, 2020, the following documents and information from March 1, 2020, to the present:

1. All formal or informal guidance regarding PPP requirements, including but not limited to guidance regarding SBA's "first come, first served" policy, the prioritization or exclusion of any applicants, and the issuance of loans to entities in underserved and rural markets.

2. All communications with JPMorgan Chase, Bank of America, PNC, Truist, Wells Fargo, U.S. Bank, Citibank, and Santander regarding requirements, guidelines, policies, and procedures for marketing, originating, and servicing PPP loans.

3. All communications regarding PPP with industry associations, including but not limited to communications with the American Bankers Associations, the Bank Policy Institute, the Consumer Bankers Association, the Credit Union National Association, the National Association of Government Guaranteed Lenders, and the U.S. Chamber of Commerce.

4. All communications regarding the prioritization of loans to small businesses in underserved and rural markets, as well as the decision not to include an optional demographic questionnaire in the PPP application process, including internal SBA and Treasury communications, communications between SBA and Treasury, and communications with other federal agencies, the White House, or third parties.

5. A list of all PPP applications received and loans issued, including:

   a. the applicant's name, street address, NAICS Code, NAICS description, and business type;
   b. the lender's name and street address;
   c. the amount of funds requested;
   d. the date the application was received;
   e. whether the application was approved;
   f. the amount and date of the approved loan;
   g. the employee size of the applicant;
   h. the SBA District Office of the applicant;
   i. the congressional district of the applicant;
   j. the loan status;
   k. the number of jobs supported;
   l. whether the small business is owned or controlled by a veteran, woman, or a socially and economically disadvantaged individual as set forth in the CARES Act; and
   m. the amount and date of any funds returned by the borrower.

In addition, we request a staff briefing from the Treasury Department and SBA on these issues by June 29, 2020.

SBA_001675

Modeled after the Truman Committee during World War II, the Select Subcommittee on the Coronavirus Crisis was established by the U.S. House of Representatives on April 23, 2020, pursuant to House Resolution 935, "to conduct a full and complete investigation" of the "efficiency, effectiveness, equity, and transparency of the use of taxpayer funds and relief programs to address the coronavirus crisis," the nation's "preparedness for and response to the coronavirus crisis," and "any other issues related to the coronavirus crisis."

An attachment to this letter provides additional instructions for responding to the Select Subcommittee's request. If you have any questions regarding this request, please contact Select Subcommittee staff at (202) 225-4400.

Sincerely,

Rep. James E. Clyburn
Chairman

Rep. Maxine Waters

Rep. Carolyn B. Maloney

Rep. Nydia M. Velázquez

Rep. Bill Foster

Rep. Jamie Raskin

Rep. Andy Kim

Enclosure

cc: The Honorable Steve Scalise, Ranking Member

SBA_001676

**<u>Responding to Oversight Committee Document Requests</u>**

1.  In complying with this request, produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2.  Requested documents, and all documents reasonably related to the requested documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Committee.

3.  In the event that any entity, organization, or individual denoted in this request is or has been known by any name other than that herein denoted, the request shall be read also to include that alternative identification.

4.  The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions.

5.  Documents produced in electronic format should be organized, identified, and indexed electronically.

6.  Electronic document productions should be prepared according to the following standards:

    a.  The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

    b.  Document numbers in the load file should match document Bates numbers and TIF file names.

    c.  If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    d.  All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

        BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD,

INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

7.  Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

8.  Documents produced in response to this request shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the request was served.

9.  When you produce documents, you should identify the paragraph(s) or request(s) in the Committee's letter to which the documents respond.

10. The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

11. The pendency of or potential for litigation shall not be a basis to withhold any information.

12. In accordance with 5 U.S.C.§ 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

13. Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

14. If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production.

15. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) every privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the privilege(s) asserted.

16. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control.

17. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, produce all documents that would be responsive as if the date or other descriptive detail were correct.

2

SBA_001678

18. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

19. All documents shall be Bates-stamped sequentially and produced sequentially.

20. Two sets of each production shall be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets shall be delivered to the Majority Staff in Room 2157 of the Rayburn House Office Building and the Minority Staff in Room 2105 of the Rayburn House Office Building.

21. Upon completion of the production, submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases, electronic

SBA_001679

message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

4. The term "including" shall be construed broadly to mean "including, but not limited to."

5. The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments, branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6. The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7. The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8. The term "employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9. The term "individual" means all natural persons and all persons or entities acting on their behalf.

SBA_001680

# Congress of the United States
## U.S. House of Representatives
### Committee on Small Business
#### 2361 Rayburn House Office Building
##### Washington, DC 20515-0515

November 19, 2020

The Honorable Jovita Carranza
Administrator
U.S. Small Business Administration
409 3rd Street SW
Washington, D.C. 20416

The Honorable Steven T. Mnuchin
Secretary
Department of the Treasury
1500 Pennsylvania Ave. NW
Washington, DC 20220

Dear Administrator Carranza and Secretary Mnuchin:

Thank you for your continued commitment to small businesses during this public health crisis. We understand the magnitude of responsibilities that the Small Business Administration (SBA) has been tasked with during these difficult times.

I am writing to follow-up on the letters sent by this Committee dated August 3, 2020 and November 19, 2020 regarding the production of Paycheck Protection Program (PPP) and Economic Injury Disaster Loan (EIDL) program data. The August 3, 2020 letter asked for "regular, timely, and complete data about pending and approved [PPP] applications." The November 19, 2020 letter asked for access to "unredacted EIDL loan and advance data—in addition to updated data." It also requested that "SBA provide all fields in [its] internal system, similar to what was provided with the unredacted [PPP] data on July 3, 2020 and August 21, 2020." I have attached these letters for your reference.

SBA has not fully responded to the August 3, 2020 letter, but did provide updated PPP data on August 21, 2020. To my knowledge, no Congressional Committee has been provided unredacted EIDL data. Instead, Congress has been relying on publicly available data—which had not been updated since June 30, 2020. As you know, SBA produced updated data on PPP and EIDL to the public yesterday, only after a Freedom of Information Act (FOIA) lawsuit filed by the Center for Public Integrity, the *Washington Post*, and ten other news organizations.

Congress—especially this Committee, which is the Committee of jurisdiction—should not be playing catch-up with the general public in receiving timely access to data. Nor should Congress have to wait almost six months for updated information about the disbursement of taxpayer funds. This is especially problematic because of the continuing need by the Committee to

consider whether additional funds or other programmatic changes are appropriate to best meet the economic needs of America's small businesses during the ongoing COVID-19 pandemic.

You both committed to this Committee on July 17, 2020 to work to "get the data right." Without the timely and complete disclosure of this information, this Committee cannot provide proper oversight of these programs. The data provided to the public yesterday is insufficient to meet the Committee's oversight requirements as it is not fully unredacted and only provides information regarding approved loans and advances.

The Committee again requests _full, complete, and unredacted_ information regarding _pending and approved_ PPP and EIDL loans and advances. We ask that you provide this information as soon as possible.

I look forward to hearing back from you in an expeditious fashion, given the necessity of these requests.

Sincerely,

Nydia M. Velázquez, Chairwoman

Enclosures

# Congress of the United States
## U.S. House of Representatives
### Committee on Small Business
2361 Rayburn House Office Building
Washington, DC 20515-0515

August 3, 2020

The Honorable Jovita Carranza
Administrator
U.S. Small Business Administration
409 3rd Street SW
Washington, D.C. 20416

The Honorable Steven T. Mnuchin
Secretary
Department of the Treasury
1500 Pennsylvania Ave. NW
Washington, D.C. 20220

Dear Administrator Carranza and Secretary Mnuchin:

Thank you for your continued commitment to small businesses during these unprecedented times. We understand the magnitude of responsibilities that the Small Business Administration (SBA) has been tasked with and appreciate the efforts you have taken to launch the new economic relief programs in such a short period of time.

As you know, the Paycheck Protection Program (PPP) was created to assist small businesses with meeting payroll costs and other expenses. The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), P.L., 116-136, passed on March 27, 2020 and provided $350 billion in funding to the SBA for the PPP. This initial funding ran out after 14 days. On April 24, Congress passed the Paycheck Protection Program and Health Care Enhancement Act (PPPHCE Act), P.L. 116-139, which provided an additional $310 billion in funding for the PPP.

We are writing to express concern with the Paycheck Protection Program (PPP) data that was released to Congress and the Government Accountability Office (GAO) on July 3, 2020. My staff has thoroughly reviewed the data and has noticed irregularities that require further explanation.

Our analysis led to concerns that SBA has not provided Congress with complete information regarding the PPP loans. Specifically, we do not believe that all of the information used to support public-facing statements describing the PPP program on June 30 was provided by SBA or Treasury to Congress.[1] The committee cannot substantiate from the data provided to us the

---

[1] See U.S. SMALL BUSINESS ADMINISTRATION, PAYCHECK PROTECTION PROGRAM (PPP) REPORT: APPROVALS THROUGH 06/30/2020, https://www.sba.gov/sites/default/files/2020-07/PPP%20Results%20-%20Sunday%20FINAL-508.pdf.

claims that the SBA made in the June 30 PPP report on the number of jobs supported by PPP; low-and moderate-income (LMI) information; PPP loans for religious, grantmaking, civil, professional, and similar organizations; and lender type diversity. Additionally, we do not believe that the entirety of the information entered into E-Tran by lenders was provided to Congress.

In addition, our analysis of the data shows that SBA and Treasury failed to provide correct Congressional Districts for the addresses provided. Specifically, SBA's analysis of Congressional Districts was not based off current Congressional maps for the 116th Congress. Nor was SBA's analysis based on ZIP codes for the 116th Congress. We are troubled that the SBA and SBA Regional Offices provided inaccurate information to Members of Congress, including myself.

Finally, we are concerned by the lack of transparency in the PPP data provided to Congress. The data was provided to us without definitions for each variable, leaving my staff to discern what these codes meant. This is not standard for data production by the Federal government. Even though SBA provided my office with various codes on July 7, SBA still has not provided complete information about loan status and projects that are provided in the data.

As you committed to Members of this Committee on July 17, we expect you to work to "get the data right." As Congress moves forward to evaluate the success and challenges of the program and determine whether additional funding is needed to meet the immediate needs of small businesses, we need regular, timely, and complete data from SBA about pending and approved applications. Without the timely and complete disclosure of this information, Congress cannot fully evaluate the program nor determine how much additional funding or other programmatic changes are needed.

**We request that SBA respond to the questions below by August 14, 2020.**

1. How did SBA calculate the following items that were disclosed in the 6/30 PPP report released with the public data:
   a. "The PPP supports 51.1 million jobs."
   b. "PPP loans were made across economically diverse areas of the economy. Low-and moderate-income areas received PPP loans approximately proportionate to their percentage of the population."
   c. How SBA classified religious organizations, civic and social organizations, and other non-profits.
   d. "Among the lenders participating in PPP, 82.4% have less than $1 billion in assets."
   e. How SBA classified lender types, including banks, credit unions, small business lending companies, fintechs, savings & loans, farm credit lenders, certified development companies, non-bank CDFI funds, microlenders, other non-banks, and BIDCOs.

2. Where in the July 3 data release to Congress, is the information supporting the claims made by the SBA in the 6/30 PPP report? Please provide a variable name in your response.
3. How did SBA assign Congressional Districts to each PPP loan?
   a. Was this assigned by ZIP code or street address?
   b. Was this assignment keyed to the 116th Congress, or another Congress?
4. How did SBA assign a rural/urban status to each PPP loan?
   a. Was rural/urban status assigned by ZIP code or by street address?
5. What do the status codes mean for each loan?
   a. What is the difference between the "active undistributed," "disbursed current," in "liquidation disbursed," "fully cancelled," "paid in full," "voluntary termination," and "ineligible codes"?
   b. Why were the definitions of these status codes not provided to Congress in the July 3 data release?
6. How can the Committee be able to determine if the PPP loans were returned to SBA in the data provided? Which variable and what code would indicate this? Please provide a variable name in your response.
7. Why did SBA exclude an application date with its data?
   a. Is this possible to provide to Congress?
8. What is the significance of the project variables? Do these align with the applicant data?
9. Did SBA seek to check or confirm incorrect data provided by lenders? Including:
   a. Employers with over 10,000 employees?
   b. Incorrect or incomplete street addresses?
10. How did SBA classify organizations as the following business types, given that this information was not asked for by any PPP application:
    a. Cooperative;
    b. Employee Stock Ownership Plan (ESOP);
    c. Joint Venture;
    d. Limited Liability Partnership;
    e. Non-Profit Childcare Center;
    f. Professional Association;
    g. Rollover as Business Start-Ups (ROBS);
    h. Tenant in Common; or
    i. Trust
11. What SBA office(s) produced this data to Congress?
12. How did they ensure the integrity of this data?
13. Did SBA consult with the Internal Revenue Service's Statistics of Income (SOI) program before releasing this data to Congress?
    a. If yes, does this data comply with SOI standards?
14. Did SBA consult with the Census Bureau before releasing this data to Congress?
    a. If yes, does this data comply with Census Bureau standards?
       i. Why was this data released in the .csv file format rather than SAS or STATA formats?
15. Did SBA share any of its raw loan data with the Treasury Department?
    a. If yes, did Treasury provide any additional data to SBA?
    b. Was this data included in the data provided to Congress on July 3?
16. When is SBA planning to supplement the original data provided to Congress?

Thank you again for your work to assist small businesses amid this unprecedented public health and economic crisis. We look forward to hearing back from you and working together to ensure the effective administration of the PPP program in service to our constituents.

Sincerely,

Nydia M. Velázquez,  Chairwoman

# Congress of the United States
## U.S. House of Representatives
### Committee on Small Business
2361 Rayburn House Office Building
Washington, DC 20515-0515

November 19, 2020

The Honorable Jovita Carranza, Administrator
U.S. Small Business Administration
409 3rd Street SW
Washington, D.C. 20416

Dear Administrator Carranza:

Thank you for your continued commitment to small businesses during these unprecedented times. As you know, the Economic Injury Disaster Loan (EIDL) program and the EIDL Advance grant program were utilized during COVID-19 pandemic to provide $192 Billion in loans and $20 Billion in grants since March 27, 2020.

Even though SBA has provided public access to EIDL loan and advance data, via its website, this data is redacted and has not been updated since July 20, 2020. We are writing to request access to unredacted EIDL loan and advance data—in addition to updated data. We ask that SBA provide all fields in their internal system, similar to what was provided with the unredacted Paycheck Protection Program (PPP) data on July 3, 2020 and August 21, 2020.

As you stated to Members of this Committee in your testimony on July 17, 2020, SBA is working to fulfill its governance responsibilities in managing CARES Act programs and funds—including EIDL loans and grants. For Congress to accurately measure SBA's effectiveness in fulfilling its responsibilities, we must have the same data SBA is using in its internal assessments.

We look forward to hearing back from you and working together to ensure the effective administration of the EIDL loan and grant programs in service to our constituents.

Sincerely,

Nydia M. Velázquez, Chairwoman

September 10, 2020

Hannibal "Mike" Ware
Inspector General
Office of the Inspector General
U.S. Small Business Administration
409 3rd Street SW
Washington, DC 20416

Richard Delmar
Acting Inspector General
Office of the Inspector General
U.S. Department of the Treasury
1500 Pennsylvania Avenue NW
Washington, DC 20220

Dear Mr. Ware and Mr. Delmar,

We appreciate your continued partnership with lawmakers as Congress continues to help American workers and businesses weather the economic hardships brought upon by the novel Coronavirus (COVID-19) pandemic and the necessary public health actions taken to slow down the spread of the disease.

Through the passage of the Coronavirus Aid, Relief and Economic Security (CARES) Act, the Paycheck Protection Program (PPP) and Healthcare Enhancement Act, and, most recently, the Paycheck Protection Program Flexibility Act, Congress brought immediate aid to struggling small businesses. These laws allowed the Small Business Administration (SBA) to use funds from the Disaster Assistance Program to issue Economic Injury Disaster Loans (EIDL) and created the Economic Injury Disaster Loan Advance (EIDL Advance) program and the PPP. As of August 8th, 2020, these programs have provided $178 billion, $20 billion, and $525 billion, respectively, to thousands of small businesses in North Jersey and to millions more nationwide.

This relief has helped small businesses fund payroll, pay rent, and meet other obligations to stay in operation, and must continue with the intended purpose of helping struggling businesses weather the economic recession brought upon by the pandemic. The SBA's Office of Inspector General (OIG) assists in oversight of these programs, providing independent analysis, working to identify and recommend ways to limit waste, fraud, and abuse, and enhance program efficiency and effectiveness. The SBA Inspector General Report Number 20-16, published on July 28th, 2020, stated that there are "strong indicators of widespread potential fraud" within the EIDL program. There have also been separate reports of fraud within the PPP. These fraudulent actors represent only a small percentage of small businesses that received the federal aid, but it is unacceptable for anyone to use this crisis as an opportunity to enrich themselves, defraud the taxpayer, and deny these funds from hard-working Americans.

Section 1107 of the CARES Act included $25 million for the SBA OIG, and the House of Representatives fulfilled the SBA OIG budget request in the FY2021 Financial Services and General Government appropriations bill. Still, in FY2019, the SBA OIG had only 111 full-time equivalent employees, relatively unchanged over the past nineteen years. It is unrealistic to expect this limited workforce to be able to thoroughly investigate more than a small fraction of the possible fraud and negligence in the programs under their purview. Therefore, we request

that you provide, in writing as soon as possible, an accounting of what tools and resources the SBA OIG may still require to achieve their mission and that Congress may provide, including using both appropriations and statutory authority.

For Congressional oversight to be robust, it is vital that the OIG remains effective, and we are ready to work with you to ensure that resources are available. We urge you to utilize all tools available to assist our local communities, ensure that these programs are helping the small businesses as intended, and protect the American taxpayer.

Sincerely,


_____
**Josh Gottheimer**
MEMBER OF CONGRESS

_____
**Suzanne Bonamici**
MEMBER OF CONGRESS


_____
**Julia Brownley**
MEMBER OF CONGRESS

_____
**Cheri Bustos**
MEMBER OF CONGRESS


_____
**Ed Case**
MEMBER OF CONGRESS

_____
**Salud O. Carbajal**
MEMBER OF CONGRESS


_____
**J. Luis Correa**
MEMBER OF CONGRESS

_____
**TJ Cox**
MEMBER OF CONGRESS


_____
**Sharice L. Davids**
MEMBER OF CONGRESS

_____
**Brian Fitzpatrick**
MEMBER OF CONGRESS


_____
**Marcy Kaptur**
MEMBER OF CONGRESS

_____
**Rick Larsen**
MEMBER OF CONGRESS

SBA_005914

**Barbara Lee**
MEMBER OF CONGRESS

**Stephen F. Lynch**
MEMBER OF CONGRESS

**Tom Malinowski**
MEMBER OF CONGRESS

**James P. McGovern**
MEMBER OF CONGRESS

**Kweisi Mfume**
MEMBER OF CONGRESS

**Chris Pappas**
MEMBER OF CONGRESS

**Max Rose**
MEMBER OF CONGRESS

**Abigail D. Spanberger**
MEMBER OF CONGRESS

**Jackie Speier**
MEMBER OF CONGRESS

**Jennifer Wexton**
MEMBER OF CONGRESS



**EXHIBIT M**

Coronavirus   Election   Local   Food   Sporting Green   Biz+Tech   Culture   Datebook   US & World   Opin

# Congress

**By Karl Olson**

Dec. 3, 2020



Sen. Angus King, a Maine independent,sets up a sign alongside a bipartisan group of Democrat and Republican members of Congress as they announce a compromise proposal for a COVID-19 relief bill on Dec. 1.

Photo: Tasos Katopodis / Getty Images

Small businesses and workers ravaged by the pandemic economy desperately need a lifeline. It's a national disgrace that Congress and the president have deadlocked for months over whether to extend one.

When the economy was first thrown into a tailspin by the coronavirus and related shutdowns in March, Congress acted quickly, doling out trillions of stimulus dollars,

Coronavirus    Election    Local    Food    Sporting Green    Biz+Tech    Culture    Datebook    US & World    Opin

Meanwhile, Congress has dithered and deadlocked for months amid election-year politics.

There's plenty of blame to go around. President Trump has been preoccupied first by campaigning and then, after the election, by playing golf and sulking about imaginary voter fraud. Senate Republicans, who exploded the deficit with a corporate tax cut, now claim to have gotten religion about budget deficits and have been too stingy with coronavirus relief.

House Speaker Nancy Pelosi doesn't escape blame — with perhaps $1.6 trillion or $1.8 trillion on the table before the election, she seemed to draw a line in the sand at $2 trillion and let the perfect be the enemy of the good. Meanwhile, COVID-19 continued and people lined up at food banks.

On Tuesday a small bipartisan group of senators introduced a $908 billion compromise package, without any indication that either Democratic leaders (who have pushed for $2.2 trillion) or Republican Senate leaders (who've wanted to hold the line at $500 billion) would sign on. The bipartisan plan included $300 a week in expanded unemployment benefits, and $160 billion for state and local governments.

Also on the table is a possible $300 billion renewal of the Paycheck Protection Program, which distributed $525 billion earlier this year, and other Small Business Administration programs. But if the PPP is renewed, it should be limited to truly small businesses. The spring PPP program gave out loans of up to $10 million, and 74 California businesses got the maximum $10 million. Data released late Tuesday showed that while $147 billion went out in loans of $150,000 or less, which helped small businesses, $377 billion went out in larger loans to businesses which may not have needed them. The top 5% of PPP loans accounted for more than half of all loan value.

## Related

  



Coronavirus    Election    Local    Food    Sporting Green    Biz+Tech    Culture    Datebook    US & World    Opin

Congress has also deadlocked over aid to state and local governments. Democrats displayed pictures of nurses and first responders on the front lines of the pandemic to rally support for relief. Republicans evoked images of poorly run cities like San Francisco, which with 35,000 employees can't keep the streets clean, and states like California plagued by fraud in the Employment Development Department and an inability to execute expensive programs like stem cell research and the bullet train.

Cities and states do need relief given the hits to their budget from the pandemic, but if they're going to spend it the way California and San Francisco spend it — with fraud plaguing the state Employment Development Department and top city officials being indicted for bribery — what good does that do?

The bottom line is that Congress should act sooner, not later. The lame-duck Congress should do a deal, and the lame-duck president should sign it. That way cash will help small businesses on the verge of bankruptcy and workers on the verge of eviction.

*Karl Olson is a San Francisco lawyer who represents the American Small Business League in efforts related to COVID-19 relief.*

## Sign up for the Opinion Central newsletter

Hard-hitting views from The Chronicle's Editorial Board.

| Enter your email | SIGN UP |
|---|---|

By subscribing, you agree to our Terms of use and acknowledge that your information will be used as described in our Privacy Policy.

Coronavirus    Election    Local    Food    Sporting Green    Biz+Tech    Culture    Datebook    US & World    Opin

Our Company                                  Interest Based Ads

Newspaper Delivery Safety Procedures         Terms of Use

Privacy Notice /Notice At Collection         Careers

Your California Privacy Rights               Advertising

**NEWSROOM**

Ethics Policy                                How We Cover Politics

Correction Policy                            Endorsement Process

Visual Ethics Guidelines                     News Tips

Anonymous Sources Policy

**CONTACT**

Customer Service                             Newsroom Contacts

FAQ

**CCPA**

Do Not Sell My Personal Information

**SERVICES**

Subscriber Services                          Archives

e-Edition                                    Membership

Reprints & Permissions                       Store

Corporate Subscriptions                      Subscription Offers

App                                          sfgate.com

HEARST *newspapers*
©2020 Hearst



**EXHIBIT N**

# Olson: Feds giving small businesses short end of the stick



Local businesses have struggled over the course of the pandemic.
Photo by Kaique Rocha from Pexels.

Everyone — from the biggest government agencies that
often smother small businesses with red tape to the biggest
businesses which often suffocate small businesses with
monopoly power — likes to say that they support small
businesses. Indeed, one of the country's biggest defense
contractors testified at a deposition that small businesses are
"the backbone of the American economy."

But while big government and big business love to talk the
talk, do they walk the walk when it comes to supporting
small business? Sadly, the answer is usually no.

A good place to start is with the U.S. Small Business
Administration (SBA), an agency whose sole purpose is to
help small businesses and to ensure that the government

complies with the Small Business Act, a 1953 law designed to ensure small businesses get no less than 23% of government contracting dollars.

The SBA every year puts out a press release proclaiming that it meets its goals in complying with small business contracting and sub-contracting mandates. But when asked what criteria it uses to determine whether a business is really "small," it has doggedly refused to answer that question. Even when sued by the country's leading small business advocate, the American Small Business League (ASBL), in a Freedom of Information Act case, SBA dug in its heels and said it wouldn't divulge its criteria for determining whether a business getting government contracting dollars was considered "small" for purposes of its annual scorecard.

SBA's latest fight against the small businesses it is supposed to help is nothing new for the agency.

SBA was the federal agency tasked with managing the hundreds of billions of dollars the government rushed out the door in the Paycheck Protection Program (PPP) passed after the COVID-19 pandemic broke in the spring of 2020. While small mom-and-pop restaurants and other small businesses were the poster children for the PPP, it quickly emerged that many large businesses — from restaurant chains to large law firms to the Los Angeles Lakers — were getting PPP money.

For example, San Jose-based AKON, Inc., which supplies products to leading defense contractors Lockheed Martin, Northrop Grumman, BAE Systems, Raytheon, DRS Systems, Naval Research Laboratory, Jet Propulsion Lab, Indian Air Force, and the Turkish Navy, received two PPP loans totaling $679,539. SBA's mishandling of the PPP money was so bad that even its own inspector general castigated the agency for how it handled the PPP, saying the SBA's publicly-reported and loan-level PPP data was "inaccurate and incomplete," and the SBA failed to issue sufficient guidance to PPP lenders to prioritize underserved markets during the initial round of funding.

Indeed, SBA's image-first, substance-second bureaucracy has consistently landed it in hot water with courts.

More than a decade ago, it refused to provide a list to the American Small Business League (ASBL) of the small businesses it included in its annual "scorecard," causing a Northern California judge, Marilyn Hall Patel, to "find curious" the SBA's argument that it didn't have the very records it needed to fulfill its mission. Then it initially refused to disclose the names and loan amounts of the businesses who received PPP loans, finally throwing in the towel after a District of Columbia judge ruled against it in a 2020 FOIA case. Its press office — under the leadership of a former Pentagon lobbyist who has since departed the agency — tried to charge ASBL exorbitant "search and review" fees of over $10,000, prompting a federal lawsuit which was resolved in ASBL's favor.

ASBL president Lloyd Chapman said, "They should change the name of the Small Business Administration to the Big Business Administration because that's who's really getting the billions in federal contracts they claim is going to small businesses."

Does political party affiliation, or the party in power, play a role in all this? Apparently not.

The hundreds of billions of dollars the government rushed out in PPP money in 2020 were approved by a Democratic House, a Republican Senate and Republican President Donald Trump. But the SBA's behavior hasn't changed during unified Democratic control of Washington. President Joe Biden appointed a new SBA administrator whom, one might have hoped, would have sided with small business underdogs, but from its behavior during the Biden administration, SBA has been the same old bureaucratic foot-dragging agency devoting words, but not action, to helping small businesses. It doesn't have to be, and shouldn't be, that way.

*Karl Olson is a San Francisco lawyer who specializes in obtaining access to government agency records through the California Public Records Act and the federal Freedom of Information Act. He represents the American Small Business League and, in* unrelated litigation, San José Spotlight*.*



**EXHIBIT O**

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    AMERICAN SMALL BUSINESS                    Case No.  21-cv-02877-DMR
     LEAGUE,
8
                    Plaintiff,                  **ORDER ON MOTION FOR**
9                                               **ATTORNEYS' FEES**
            v.
10                                              Re: Dkt. No. 39
     UNITED STATES SMALL BUSINESS
11   ADMINISTRATION,

12                  Defendant.

13          On April 28, 2021, Plaintiff American Small Business League ("ASBL") filed the

14   operative complaint, which alleges that Defendant United States Small Business Administration

15   ("SBA") improperly assessed fees in violation of the federal Freedom of Information Act

16   ("FOIA").  [Docket. No. 3 ("Compl.").]  The parties cross-moved for summary judgment.

17   [Docket Nos. 15, 19].  On June 7, 2022, the court granted both parties' motions in part.  [Docket

18   No. 30 ("MSJ Order").]  ASBL now brings this motion for attorneys' fees and costs.  [Docket No.

19   39 ("Mot.").]  SBA filed an opposition [Docket No. 49 ("Opp'n")], and ASBL replied [Docket

20   No. 52 ("Reply")].  This matter is suitable for determination without oral argument.  Civ. L.R. 7-

21   1(b).  For the reasons stated below, the court grants the motion in part.

22   **I.      BACKGROUND**

23          On April 9, 2020, ASBL submitted its first FOIA request to SBA related to the agency's

24   press office communications with external parties between June 1, 2019 and March 31, 2020.

25   Compl. ¶ 8.  On June 1, 2020, ASBL made a second FOIA request for SBA emails relating to the

26   Regional Regulatory Fairness Board and certain individuals.  *Id.*  ¶ 17.  Finally, on June 19, 2020,

27   ASBL made a third request for several categories of SBA records related to individuals involved

28   in advocacy and advising on small businesses and small business policy.  *Id.* ¶ 25.  For all three

United States District Court
Northern District of California

1    requests, ASBL sought to waive or reduce fees related to search, review, and duplication of

2    responsive documents.  *Id.* ¶ 34.  SBA largely denied ASBL's fee waiver and reduction requests

3    and charged fees to complete the FOIA production.  *Id.* ¶¶ 34-35.

4         ASBL filed a complaint on October 13, 2020, alleging FOIA violations by SBA as well as

5    by a separate federal agency, the Office of Management and Budget ("OMB").  On April 21,

6    2021, the court severed the complaint after finding that the FOIA requests against SBA and OMB

7    were unrelated.  [Docket No. 1.]  On April 28, 2021, ASBL filed the operative complaint.  After

8    the court issued its order on the cross motions for summary judgment, the parties attempted but

9    failed to resolve the issue of attorneys' fees.  [*See* Docket No. 40 (Olson Decl., Aug. 25, 2022) ¶

10   30.]  As a result, ASBL filed this motion.

## II.    LEGAL STANDARD

12        Under FOIA, courts "may assess against the United States reasonable attorney fees and

13   other litigation costs reasonably incurred in any case under this section in which the complainant

14   has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  "[A] complainant has substantially

15   prevailed if the complainant has obtained relief through either—(I) a judicial order, or an

16   enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in

17   position by the agency, if the complainant's claim is not insubstantial."  *Id.* § 552(a)(4)(E)(ii).

18        If a plaintiff is eligible to recover fees, the court has "discretion to determine whether the

19   plaintiff is entitled to fees."  *Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009).

20   Courts have taken the following criteria into account when making this determination: "(1) the

21   benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant;

22   (3) the nature of the complainant's interest in the records sought; and (4) whether the

23   government's withholding of the records sought had a reasonable basis in law."  *Church of*

24   *Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 492 (9th Cir. 1983).

25        A party who is both eligible and entitled to an award "must submit [a] fee bill to the court

26   for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee

27   claimed."  *Long v. U.S. I.R.S.*, 932 F.2d 1309, 1313-14 (9th Cir. 1991).  The court determines

28   reasonable attorneys' fees according to the lodestar analysis, which multiplies the number of hours

United States District Court
Northern District of California

United States District Court
Northern District of California

1   reasonably expended on the matter by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S.

2   424, 433 (1983); *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987).  Fee awards

3   calculated under the lodestar method generally are presumed to be reasonable.  *Gonzalez v. City of*

4   *Maywood*, 729 F.3d 1196, 1208-09 (9th Cir. 2013).  At the same time, the court may adjust this

5   figure "if circumstances warrant" in order "to account for other factors which are not subsumed

6   within it."  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  Once a

7   party is deemed both eligible and entitled to fees, however, "the award must be given and the only

8   room for discretion concerns the reasonableness of the amount requested."  *Long*, 932 F.2d at

9   1314.

10      The requesting party also has the burden to demonstrate that the rates requested are "in line

11   with the prevailing market rate of the relevant community."  *Carson v. Billings Police Dep't*, 470

12   F.3d 889, 891 (9th Cir. 2006) (internal quotation marks and citation omitted).  Typically,

13   "affidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the

14   community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing

15   market rate."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting

16   *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).  "The

17   party opposing the fee application has a burden of rebuttal that requires submission of evidence to

18   the district court challenging the accuracy and reasonableness of the facts asserted by the

19   prevailing party in its submitted affidavits."  *Id.*

20      A district court awarding fees and costs "should provide a detailed account of how it

21   arrive[d] at appropriate figures for the number of hours reasonably expended and a reasonable

22   hourly rate."  *Long*, 932 F.2d at 1314 (internal quotation marks and citations omitted).  However,

23   the court "is not required to set forth an hour-by-hour analysis of the fee request" or "make

24   findings as to each of defendants' specific objections to plaintiffs' billing judgment."  *Gates v.*

25   *Deukmejian*, 987 F.2d 1392, 1399-400 (9th Cir. 1992).

26   **III.   DISCUSSION**

27      **A.      Whether ASBL is Eligible for a Fee Award**

28      The first step is to determine whether ASBL is eligible for a fee award by having

1  substantially prevailed in the case.  SBA does not challenge ASBL's eligibility.  Although the

2  court did not rule in ASBL's favor on all issues, it found that ASBL was entitled to a fee reduction

3  because it sought non-commercial materials as a representative of the news media as defined by

4  FOIA.  MSJ Order at 19-26.  ASBL is thus eligible for an award of attorneys' fees and costs under

5  the first prong of 5 U.S.C. § 552(a)(4)(E)(ii).

6         **B.**       **Whether Plaintiffs Are Entitled to a Fee Award**

7         Entitlement to fees under FOIA involves a four-factor inquiry: "(1) the benefit to the

8  public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature

9  of the complainant's interest in the records sought; and (4) whether the government's withholding

10  of the records sought had a reasonable basis in law."  *Church of Scientology*, 700 F.2d at 489.

11  These factors are not exhaustive and should be considered in conjunction with existing law on

12  attorneys' fee awards.  *Id.* at 492.

13         The parties dispute whether this four-factor analysis applies only to cases involving an

14  agency's withholding of documents or whether it also applies to disputes such as this one

15  regarding fee waivers and reductions.  *See* Opp'n at 9-10; Reply at 3.  Plaintiff contends the four-

16  factor test applies here.  Reply at 3.  Defendant disagrees but does not suggest an alternative

17  analysis.  Opp'n at 9.[1]

18         The Ninth Circuit has not directly addressed this issue.  Relying on a District of

19  Massachusetts case, ASBL argues that at least some courts have applied the test to fee waivers.

20  *See Ettlinger v. F.B.I.*, 596 F. Supp. 867, 880 (D. Mass. 1984).  In response, SBA correctly notes

21  that *Ettlinger* dealt with both a fee waiver and the withholding of documents; however, *Ettlinger*

22  explicitly applied the four-factor inquiry to the government's denial of a fee waiver.  *See* 596 F.

23  Supp. at 880-81 (finding that the FBI's fee waiver denial was based on a misapplication of

24  congressional intent and relevant case law).  In fact, the court's discussion of the fourth factor

25  primarily focused on the fee waiver issue.  *See id.*  SBA further argues that the Ninth Circuit's

26

27  ───────────────

28  [1] Defendant also appears to be arguing that Plaintiff is not statutorily entitled to attorneys' fees because this case involves fee waivers, not the withholding of documents.  Defendant does not provide any statutory analysis or authority to support its argument.

United States District Court
Northern District of California

recent application of the four-criteria test in *Schoenberg v. Fed. Bureau of Investigation* explicitly tied the test to the withholding of documents. *See* Opp'n at 10; *Schoenberg*, 2 F.4th 1270, 1276 (9th Cir. 2021). Although *Schoenberg* applied the test to the withholding of documents, it did not bar its applicability to fee waiver and fee reduction cases.

Several other courts have applied the four-factor test to fee waiver and fee reduction cases. *See, e.g.*, *Wilson v. U.S. Dept. of Just.*, No. CIV. A. 87-2415-LFO, 1989 WL 298673, at *1 (D.D.C. Sept. 12, 1989) (applying the four-factor test to the plaintiff's request for an interim fee, as compensation for time spent addressing the fee waiver question in the case while the document production process was underway); *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 209 (D.D.C. 2008) (using the four-factor test in the context of a fee waiver and concluding that the requester was motivated by a commercial and personal motive to achieve its victory, and any public benefit was overwhelmed by the obvious reasonableness of the government's legal arguments); *Pietrangelo, II v. U.S. Dep't of the Army*, No. 2:06-CV-170, 2007 WL 1874190, at *13 (D. Vt. June 27, 2007), *aff'd sub nom. Pietrangelo v. U.S. Army*, 568 F.3d 341 (2d Cir. 2009), and *aff'd sub nom. Pietrangelo v. U.S. Army*, 334 F. App'x 358 (2d Cir. 2009) (analyzing whether the pro se prevailing party was entitled to litigation costs under FOIA's four-factor test). In sum, the Ninth Circuit has not barred the use of the four-factor test in fee waiver and reduction cases, and this court finds no logical reason to forego the test here.

Accordingly, the court now turns to each of the four factors.

### 1.     Benefit to the Public

ASBL argues that this factor weighs in its favor because the purpose of its FOIA requests was to ensure that federal dollars reach small businesses. Mot. at 10. SBA does not dispute this. Opp'n at 10.

In weighing the public benefit factor, courts consider "the degree of dissemination and the likely public impact that might result from disclosure." *Church of Scientology*, 700 F.2d at 493. While "[a] public benefit may result even though the specific document sought is for plaintiff's sole use[,]" an award of attorneys' fees is disfavored when it merely subsidizes private concerns. *Church of Scientology,* 700 F.2d at 493 (citing *Blue v. Bureau of Prisons,* 570 F.2d 529,

1  533–34 (5th Cir. 1978)).

2       It is undisputed that ASBL is an organization founded to promote and advocate for the

3  interests and legal rights of small businesses, including women-, veteran-, and minority-owned

4  small businesses, which are entitled to specified shares of federal contracting dollars under the

5  Small Business Act.  *See* Mot. at 3; [Docket No. 41 (Chapman Decl., Aug. 25, 2022) ¶ 3.]  ASBL

6  contends that its three FOIA requests—aimed at determining whether the SBA complied with the

7  Small Business Act's purpose—were in line with the organization's mission.  The court held in its

8  MSJ Order that "the record as a whole indicates that the purpose of ASBL's [FOIA] requests at

9  least in part was to gather information about [the Paycheck Protection Program] that was

10  prominent in the media in 2020 and is of interest to the public."  MSJ Order at 24.

11       On this record, the public benefit factor weighs in favor of ASBL's entitlement to

12  attorneys' fees and costs.

13            **2.**       **Commercial Benefit and Nature of ASBL's Interests**

14       The second and third factors are "the commercial benefit to the complainant" and "the

15  nature of the complainant's interest in the records sought."  *Church of Scientology*, 700 F.2d at

16  492.  Courts regularly consider these factors together.  *See id.* at 494.

17       ASBL argues that these factors weigh in its favor because of the organization's stated

18  purpose and the court's previous ruling on the non-commercial use of ASBL's FOIA requests.

19  Mot. at 12.  SBA does not dispute that these factors favor ASBL.  Opp'n at 10.

20       In general, if a "commercial benefit will inure to the plaintiff from the information or

21  plaintiff intends to protect a private interest . . . an award of attorney's fees is not

22  recoverable."  *Church of Scientology*, 700 F.2d at 494.  On the other hand, where the plaintiff "is

23  indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy

24  of expanding access to government information."  *Id.*

25       As noted by ASBL, the court previously concluded that all three FOIA requests were for

26  "non-commercial use."  MSJ Order at 22.  Although the court made this finding in the context of a

27  fee reduction, the holding supports ASBL on this point.  The court noted that none of ASBL's

28  justifications for seeking information suggested that "the disclosures would further its own

1  commercial, trade, or profit interest."  MSJ Order at 21.  Rather, the court found that the purpose

2  of ASBL's requests at least in part was to gather and presumably expand access to government

3  information.  *Id.* at 24.

4      The second and third factors weigh in favor of awarding attorneys' fees to ASBL.  *See,*

5  *e.g.*, *Am. Small Bus. League*, 2009 WL 1011632, at *4 (finding that the second and third factors

6  weighed in the plaintiff's favor because the disclosures would help verify the defendant's claims

7  about the number of federal contracts awarded to small businesses, and in doing so would benefit

8  the public).

9              **3.        Reasonable Basis in Law**

10      The parties dispute whether SBA's imposition of "search and review" fees had a

11  "reasonable basis in law."  *See* Opp'n at 10; Reply at 4.  They also disagree with respect to the

12  weight attributable to this factor.  *See id.*

13      Under the fourth factor, courts are asked to consider whether the government's actions had

14  "a colorable basis in law" or instead appeared to be "merely to avoid embarrassment or to frustrate

15  the requester."  *Church of Scientology*, 700 F.2d at 492 n.6.  "This factor 'is not dispositive' and

16  can be outweighed where the other relevant factors favor an award."  *Public.Resource.org*, 2015

17  WL 9987018, at *4 (quoting *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 870 (N.D. Cal.

18  2012)).  The burden is on the government to demonstrate that its actions were reasonable.  *Id.*

19  (citation omitted).

20      ASBL argues that Terrence Sutherland, SBA's Deputy Associate Administrator of the

21  Office of Communications and Public Liaison, acted with "animus" when he imposed fees, and

22  that his involvement in the process leads to an inference that SBA denied the fee reduction

23  requests to "delay disclosure and frustrate the requester."  *See* Mot. at 14-15; Reply at 6; Chapman

24  Decl. ¶ 8.  SBA responds that these claims are unfounded and highlights that SBA timely assessed

25  fees, was transparent in its explanations to Plaintiff, and treated Plaintiff no differently than any

26  other FOIA requester.  Opp'n at 13.

27      The record does not support a finding that SBA acted "merely to avoid embarrassment or

28  to frustrate the requester."  *Church of Scientology*, 700 F.2d at 492 n.6.  The cases cited by ASBL

7

are readily distinguishable.  For example, in *Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency* ("*EcoRights*") the record documented the defendant's "repeated inability or unwillingness to timely comply with its obligations under FOIA, its agreements with EcoRights, and th[e] Court's orders." *EcoRights*, 365 F. Supp. 3d 993, 1001 (N.D. Cal. 2018).  The court ultimately held that it could not find that "the repeated missed deadlines, incomplete productions, and failures to obey Court orders had a colorable basis in law." *Id.*  Similarly, in *Sierra Club*, the court highlighted the defendant's delay in producing documents in addition to its failure to provide the plaintiff an estimated completion date.  *The Sierra Club v. United States Env't Prot. Agency*, 75 F. Supp. 3d 1125, 1146-47 (N.D. Cal. 2014).  The court found that these circumstances prevented the defendant from showing a reasonable basis in law.  *Id.*

Here, SBA timely responded to ASBL's requests, each time providing an explanation for denying a fee waiver.  [*See* Docket No. 51 (Benderson Decl., Sept. 22, 2022) ¶¶ 7, 9, 12, 22.] SBA produced documents responsive to ASBL's requests, albeit tailored to items related to the Paycheck Protection Program enacted in 2020 to provide coronavirus relief to small businesses. *Id.* ¶¶ 17, 31.  Importantly, the court upheld SBA's decision to deny ASBL's requested fee waiver in accordance with FOIA's public interest fee provision.  MSJ Order at 19 ("[T]he undisputed evidence in the administrative record shows that ASBL did not sufficiently justify why disclosure of the information sought by Request Nos. 565, 1532, and 1953 served the public interest by significantly contributing to public understanding of SBA's operations or activities.").

On the specific issue on which ASBL prevailed—whether ASBL was entitled to a fee reduction because it sought records for non-commercial use and is a representative of the news media—SBA contends that it relied on two D.C. Circuit decisions that it "reasonably believed to be materially different" from the factual circumstances presented by ASBL.  Opp'n at 11-12. Both parties note—and the court agrees—that there was relatively little case law on the issue, and even less case law regarding whether organizations like ASBL can be considered representatives of the news media.  *See* Mot. at 21; Opp'n at 11.  This is a far cry from the circumstances in *Ettlinger*, for example, where the court found there was "clear congressional intent" and "extant case law" that the defendant improperly applied or disregarded.  596 F. Supp. at 880.

1    Accordingly, the court finds that SBA has met its burden of showing a reasonable basis in law for

2    its actions.

3        While the fourth factor weighs in SBA's favor, it is not dispositive and can be outweighed

4    where the other relevant factors favor an award.  *See Rosenfeld*, 904 F. Supp. 2d at 870.  SBA

5    argues that *Schoenberg* stands for the proposition that the fourth factor can, in fact, tip the balance

6    in favor of denying fees "even when the other three factors favor fees."  Opp'n at 10.  This

7    overstates the case's holding.  In *Schoenberg*, the Ninth Circuit applied a highly deferential

8    standard in reviewing the lower court's analysis of "reasonable basis in law" and its balancing of

9    the four factors.  *Schoenberg*, 2 F.4th at 1276.  The court held that neither decision warranted

10   reversal.  *Id.* at 1277-78.  Contrary to SBA's contention, the Ninth Circuit stated that it gave this

11   deference to the trial court "precisely because the four factors are not equally weighted—they each

12   involve a sliding scale, allowing one or more factors to outweigh the others."  *Id.* at 1278.  While

13   *Schoenberg*'s language permits the fourth factor to outweigh the others, it does not mandate such a

14   result.  In this case, the court finds that the final factor does not tip the balance against entitlement.

15       For the reasons set forth above, ASBL is entitled to an award of attorneys' fees.

16   **C.    Reasonableness of Amount of Attorneys' Fees and Costs**

17       ASBL seeks an award of $157,939.92, comprising $85,898.75 in attorneys' fees on the

18   merits, $2,051.17 in costs, and $69,990 in "fees on fees."[2]  Reply at 15.

19           **1.    Hourly Rates**

20       Generally, when determining a reasonable hourly rate, "the relevant community is the

21   forum in which the district court sits."  *Camacho*, 523 F.3d at 979.  "It is the responsibility of the

22   attorney seeking fees to submit evidence to support the requested hourly rate."  *Roberts v. City of*

23   *Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019).  Such evidence must establish that the requested

24   rates are "in line with those prevailing in the community for similar services by lawyers of

25   reasonably comparable skill, experience and reputation."  *Id.* at 1024-25 (quoting *Camacho*, 523

26

27   _____

     [2] ASBL's opening brief requested a total lodestar of $144,752.68, subject to further
28   supplementation for time spent on the fees motion and reply.  Mot. at 24.  The court grounds its
     calculations on the figures ASBL presented in its reply brief as those numbers are updated.

United States District Court
Northern District of California

United States District Court
Northern District of California

F.3d at 980).  However, "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees."  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

ASBL requests an $800 hourly rate for senior partner Karl Olson, a $400 rate for junior partner Aaron Field, a $325 rate for work performed by associate Irene Lee, and a $175 rate for Kristel Gelera and other paralegals and legal assistants.  Mot. at 21.  All four have varying levels of experience in FOIA litigation.

Olson has been practicing law since 1982 and began specializing in media and First Amendment law four years later.  Olson Decl. ¶¶ 3, 4.  For the last 20 years, his practice has focused on the California Public Records Act, arguing cases before the California Supreme Court, the Court of Appeal, and the trial court.  *Id.* ¶ 5.  Olson previously served as a law clerk and research attorney on the California Court of Appeal and the California Supreme Court.  *Id.*  He also worked at several law firms and co-founded his own firm in 1997.  *Id.* ¶ 3.  Olson has received several awards for his work in this field: he won the James Madison Freedom of Information Award from the Northern California Society of Professional Journalists in 2005 and was a co-winner of that award in 2018; he also won the California Newspaper Publishers Association Freedom of Information Award in 2012; and he was named a "SuperLawyer" for approximately 11 years and "Lawyer of the Year" for Northern California in the Litigation-First Amendment field by Best Lawyers in 2019.  *Id.* ¶ 4.

Field has worked at Cannata, O'Toole, Fickes & Olson LLP ("COFO") since he graduated from law school in 2015.  Olson Decl. ¶ 7.  His practice is focused on media and First Amendment law.  *Id.* ¶ 10.  He has worked with Olson on "numerous media law matters, including access matters arising under the California Public Records Act and [FOIA]."  *Id.*  From 2018 to 2020, Field served as the Attorney Co-Chair of the Freedom of Information Committee, a committee of journalists and First Amendment lawyers that advocates for free speech and transparent government.  *Id.* ¶ 11.  Field received an award for his service in 2019.  *Id.*

Lee graduated from law school in 2019 and joined COFO the same year.  Olson Decl. ¶ 13.  As an associate, she has played a "significant role in California Public Records Act and Freedom

10

of Information Act cases." *Id.*  In law school, Lee worked as a legal intern at the Electronic

Frontier Foundation, where she helped prepare FOIA requests. *Id.*

Gelera graduated with a Bachelor of Arts in Public Relations in 2011 and obtained a

Certificate in Paralegal studies in 2019.  Olson Decl. ¶ 14.  She joined COFO in 2019 and has

worked on many FOIA matters. *Id.*

ASBL supports the requested rates by proffering a declaration from San Francisco attorney

Thomas Burke, an attorney with 32 years of experience in media law and First Amendment

litigation.[3]  [*See* Docket No. 43 (Burke Decl., Aug. 24, 2022) ¶¶ 1, 5.]  Burke is a partner in the

law firm of Davis Wright Tremaine LLP ("DWT"), a national law firm recognized for its First

Amendment, media, and public records litigation practice. *Id.* ¶¶ 1, 2.  He has advised on FOIA

matters and handled FOIA lawsuits for clients throughout his legal career; he is currently litigating

over thirty different FOIA and state public records lawsuits in states throughout the country. *Id.*

¶¶ 3, 4.  Burke's current hourly rate for FOIA and public records litigation is $895. *Id.* ¶ 8.  As a

practitioner and a member of his firm's Executive Committee, Burke is familiar with rates charged

by other law firms specializing in public records access litigation. *Id.* ¶ 4.  He attests that the rates

charged by ASBL's attorneys are within the range of reasonable hourly rates awarded to counsel

of similar skill and experience in the San Francisco legal market and in court awards, "and in fact

---

[3] SBA objects to Burke's declaration on grounds that it is irrelevant and inadmissible.  Opp'n at 21, n.7.  SBA's argument is premised on the assertion that Burke does not have (and does not purport to have) any personal knowledge of this case.  *See id.*  Burke asserts that he has "reviewed the primary pleadings and orders in this case, including the two cross-motions for summary judgment and the order on them.  [He has] also reviewed the docket and the time sheets of Plaintiff's counsel."  Burke Decl. at 8:15-17.  The court is satisfied with Burke's level of familiarity with the case as providing adequate foundation for the statements in his declaration. SBA also asks the court to strike Burke's declaration because he was not disclosed as an expert witness but cites no legal support for this position.

 SBA also objects to Michael Ram's declaration—proffered by ASBL in support of the requested rates—on similar grounds.  Opp'n at 21.  As Ram's practice is devoted to consumer class actions, the court finds it has little probative value and does not rely on it in determining the reasonableness of the requested hourly rates.  *See Roberts v. City of Honolulu*, 938 F.3d 1020, 1024-25 (9th Cir. 2019) (holding that evidence in support of hourly rates must establish that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation").  Accordingly, SBA's objection is denied as moot.

United States District Court
Northern District of California

well below prevailing rates for attorneys of comparable experience at many Bay Area firms." *Id.*
Burke is especially familiar with Olson's "high quality of . . . work," which he states justifies an
$800 an hour rate. *Id.* According to Burke, that hourly rate is likely modest – "by at least $150
per hour." *Id.*

ASBL also supports the requested rates by referring to decisions in this district that have
ratified similar hourly rates for plaintiff's attorneys in FOIA cases in the Bay Area.[4] *See, e.g.*,
*Public.Resource.org*, 2015 WL 9987018, at *6 (approving hourly rates of $395, $565, and $645
for work done in 2015); *Rosenfeld*, 904 F. Supp. 2d at 1001, 1004 (approving hourly rates of $460,
$550, and $700 for work done in 2012).[5]

SBA objects to ASBL's evidence but does not proffer any affidavits or evidence of its own
regarding legal rates in the community. *See Gates*, 987 F.2d at 1397-98 (Defendant bears the
"burden of rebuttal that requires submission of evidence . . . challenging the accuracy and
reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits.").

The court finds that the hourly rates of $800 for Olson, $400 for Fields, $325 for Lee, and
$175 for Gelera are reasonable and fall within the market rates for attorneys of similar experience,
skill, and reputation who handle FOIA cases in the Bay Area. This finding is supported by
Burke's declaration, the rates approved by other courts in this district, and this court's experience

---

[4] The court declines to consider *Brown v. Google*, which involved attorneys' fees as a sanction for
discovery misconduct, not fees awarded pursuant to a FOIA claim. *See Brown v. Google LLC*,
No. 20CV03664YGRSVK, 2022 WL 2789897 (N.D. Cal. July 15, 2022). Accordingly, ASBL's
Request for Judicial Notice (Docket No. 44) is denied as moot.

 Olson also points to three Northern District of California cases that awarded Field and Olson
attorneys' fees at rates consistent with those requested here. *See* Olson Decl. ¶ 12. Olson's
description of these cases is sparse, and the limited information it provides indicates that these
cases are not on point. For example, *Hoeper v. City and County of San Francisco*—the only case
attached to Olson's declaration—dealt with attorneys' fees in the context of the False Claims Act.
*Tobinick v. Regents of the University of California* is a case from Los Angeles County. Neither
case speaks directly to the issue now before the court. *See Roberts*, 938 F.3d at 1024-25 (9th Cir.
2019) (holding that evidence in support of hourly rates must establish that the requested rates are
"in line with those prevailing in the community for similar services by lawyers of reasonably
comparable skill, experience and reputation"). Nevertheless, the outcomes in those cases
generally corroborate the hourly rates for Field and Olson.

[5] SBA argues the court should ignore *Public.Resource.org* and *Rosenfeld* because they involved
different claims and facts. Opp'n at 21. To the contrary, both cases dealt with the disclosure of
documents under FOIA.

United States District Court
Northern District of California

and understanding of the relevant market rates.

### 2.    Reasonableness of Hours Expended

Next, the court "must determine a reasonable number of hours for which the prevailing party should be compensated." *Gonzalez*, 729 F.3d at 1202.  The party seeking the fee award bears the "the burden of submitting billing records to establish that the number of hours it has requested are reasonable." *Id.*  Counsel "should exercise 'billing judgment' with respect to hours worked and "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434, 437.  "The district court is in the best position to discern what work was unnecessary." *Vargas v. Howell*, 949 F.3d 1188, 1199 (9th Cir. 2020) (quoting *Ingram*, 647 F.3d at 928)).  However, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112.  The defendant "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. Cty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995).

ASBL's counsel billed a total of 209.5 hours, excluding time spent on this fee motion. [*See* Docket No. 53-1 (invoices further adjusted on reply).]  The requested hours are supported by itemized timeslips.  Olson Decl. ¶ 21; [*see* Docket Nos. 40-2, 53-1.]  Counsel attest that they have exercised "billing judgment" and have reduced their time to account for possible apportionment by 17 hours or 8%.  Olson Decl. ¶ 23.  SBA make several objections to ASBL's hours.  Each is addressed in turn.

### a.    Claims Lost

SBA argues that ASBL's fees should be reduced in accordance with the claims lost at summary judgment.  Opp'n at 15.  ASBL contends that apportionment is not required because the case involved a "common core of fact."  Mot. at 16; Reply at 7.

*Hensley* governs this dispute:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories . . . Such a lawsuit cannot be viewed as a series of discrete claims. Instead the

> district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435.  However, *Hensley* continues:

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill . . . [T]he most critical factor is the degree of success obtained.

461 U.S. at 436.

Relying on *Hensley*, SBA contends that ASBL's fee waiver, fee reduction, and timeliness claims were "distinctly different," and based on "different facts and legal theories."  Opp'n at 17.  SBA further argues that ASBL did not obtain the "primary relief" or result it sought, i.e., waiver of fees.  Opp'n at 19.  ASBL counters that it brought "one lawsuit with one cause of action based upon the same facts – SBA's attempt to charge 'search and review' fees for handling FOIA requests – and related legal theories."  Reply at 8.

Both sides are correct to a degree.  ASBL made several arguments based on the same three FOIA requests.  It did not win all arguments.  Having reviewed the record and performed the analysis at summary judgment, this court is particularly well-positioned to determine the degree of success achieved by Plaintiff.  The court finds that the lodestar should be reduced to reflect the fact that Plaintiff was unsuccessful on its public interest fee waiver arguments, to which the court devoted a significant portion of its summary judgment order in order to address Plaintiff's theories and arguments.  *See* MSJ Order at 11-19.  *See Hensley*, 461 U.S. at 440 ("the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees.")

The court reduces the lodestar by 20% to reflect the limits on Plaintiff's success.

### b.     Entries with Redacted Descriptions

SBA argues ASBL should not be entitled to fees for entries with redacted descriptions because it has failed to satisfy its burden of establishing entitlement for these entries, especially in light of the fact that ASBL lost certain claims.  ASBL responds it is clear from the unredacted

1   language how ASBL's time is spent.

2       The Ninth Circuit has held that a party seeking attorneys' fees may submit redacted time

3   entries as long as the "redactions do not impair the ability of the court to judge whether the work

4   was an appropriate basis for fees." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281,

5   1285-86 (9th Cir. 2004).

6       ASBL's redactions are similar to those in *Democratic Party of Washington State* in that

7   "they do not impair the ability of the court to judge whether the work was an appropriate basis for

8   fees." *Id.* at 1286.  SBA points specifically to some redactions for entries by Lee, which describe

9   "legal research" but redact the subject of that research.  *See* Opp'n at 21; [Docket No. 40-2 at 9-

10  12.]  When viewed in the context of what other timekeepers were doing around the same time as

11  Lee's redacted entries, the court is able to sufficiently understand her redacted billing records.

12  Other minor redactions in ASBL's entries preserve confidentiality about the subject matter of a

13  memorandum or the topic of correspondence between counsel and his client, without impairing the

14  court's ability to assess whether the time should be paid.  [*See, e.g.*, Docket No. 40-2 at 2, 4.]

15  Plaintiffs may redact this "work product."  *See Democratic Party of Washington State*, 388 F.3d at

16  1286.  Therefore, the court concludes that ASBL's redacted time is compensable.[6]

17              **c.    Charges Originating from Improper Joinder**

18      SBA argues ASBL charged the full value of its paralegal's time for preparing the first

19  complaint (attributable to its improper joinder of OMB).  Opp'n at 22; [*see* Docket No. 40-2 at 12-

20  13.]  SBA contends that 5.4 hours attributable to Gelera should be halved.  Opp'n at 22.

21  According to ASBL, counsel has already halved all paralegal time attributable to tasks involving

22  both OMB and SBA.  Reply at 11.  On reply, ASBL offers to reduce by half the 3.5 hours billed

---

[6] SBA points to several cases in support of its argument.  None are persuasive.  Neither
*Public.Resource.org v. United States Internal Revenue Serv.*, No. 13-CV-02789-WHO, 2015 WL
9987018 (N.D. Cal. Nov. 20, 2015) nor *Am. Small Bus. League v. U.S. Small Bus. Admin.*, No. C
08-00829 MHP, 2009 WL 1011632 (N.D. Cal. Apr. 15, 2009) dealt with redacted entries.  In
*Nationwide Payment Sols., LLC v. Plunkett*, 831 F. Supp. 2d 337 (D. Me. 2011) the court dealt
with a motion for in camera review, not whether redacted fees should be stricken from a fee
award.  Finally, the facts in *Hughes v. Legion Ins. Co.*, No. CIV.A. H-03-993, 2007 WL 3231435
(S.D. Tex. Oct. 30, 2007) were different.  There, the plaintiff's fee entries were heavily redacted,
contained vague language, and were not authenticated by an affidavit.

1   by Gelera for preparing the first complaint, reducing paralegal fees by $306.25.  *Id.*

2       SBA does not point to specific billing entries on pages 12-13.  *See* Opp'n at 22; [Docket

3   No. 50 (Brakebill Decl., Sept. 22, 2022) ¶ 18].  Having conducted its own review, the court

4   identifies only one of Gelera's time entries pertaining to preparing the first complaint: the October

5   13, 2020 task totaling 3.5 hours (Transaction ID 130952).  [*See* Docket No. 40-2 at 13.]  As ASBL

6   has agreed to reduce this time by 50% (*see* Docket No. 53-1 at 20 (reducing Transaction ID

7   130952 to 1.75 hours)), the court is satisfied that charges originating from ASBL's improper

8   joinder reflect an exercise of appropriate billing judgment.  *See Hensley*, 461 U.S. at 437.

9       SBA also contends ASBL wrongly charged SBA "after its original complaint up to the

10  time of the Court's severance order for general tasks attributable to both [SBA and OMB]."

11  Opp'n at 23.  SBA requests that entries by Olson, Fields, Lee, and Gelera be halved.  *Id.*

12      Again, SBA cites Docket No. 40-2 at 2-4 but does not point to specific billing entries.  *See*

13  Opp'n at 23; Brakebill Decl. ¶ 19.  The pages cited by SBA only pertain to time billed by Olson.

14  In addition, with the exception of Transaction ID 134770, entries pertaining to OMB and SBA

15  have been halved.  [*See, e.g.*, Docket No. 2 at 2 (Transaction ID 130944).]  The court reduces the

16  time entered for Transaction ID 134770 (1 hour) by 50%, decreasing Olson's time by $400, and

17  declines to make further changes given SBA's failure to make a specific objection.  *See Rosenfeld*,

18  904 F. Supp. 2d at 1005 ("Mere generalized allegations of unjustified billing not supported by

19  specific citations to evidence in the record are insufficient to warrant a reduction in the lodestar

20  figure.").

21      **d.      Charges for Post-Severance Complaint**

22      SBA makes several challenges related to the operative complaint.  First, SBA disputes 4.5

23  hours billed by attorneys and 5.5 hours billed by paralegals in relation to the complaint, arguing

24  that it is "virtually identical" to the first complaint and included only "three new sentences

25  concerning untimeliness."  Opp'n at 23; [*see* Docket No. 40-2 at 4, 7, 10-11, 14]; Brakebill Decl. ¶

26  20(1).  SBA requests that these time entries be halved.  ASBL does not respond, thereby

27  conceding the issue.  The lodestar shall be reduced by all but 1 attorney hour at an hourly rate of

28  $400, which is sufficient to review and modestly augment a new yet nearly identical operative

United States District Court
Northern District of California

complaint.  Therefore, the court reduces 1.3 hours from Olson's total (Transaction IDs 137020,[7] 137217, and 137219), 1 hour from Field's total (Transaction ID 137532 and part of Transaction ID 137747), 1.2 hours from Lee's total (Transaction IDs 137175, 137307, and 138294), and 5.5 hours from Gelera's total (Transaction ID 137397).

Next, SBA challenges 1.1 hours billed for administrative tasks related to the filing of the operative complaint.  Opp'n at 23; Brakebill Decl. ¶ 20(2); [*see* Docket No. 40-2 at 7, 11, 14.] SBA contends these fees should be stricken because they are also charged in relation to the first complaint, and the court ruled these tasks would not be charged.  Opp'n at 23.  ASBL does not respond to this objection and therefore concedes it.

Accordingly, the court reduces 0.1 hours from Field's total (Transaction ID 137753), 0.4 hours from Lee's total (Transaction ID 137427), and 0.6 hours from Gelera's total (Transaction IDs 137342 and 137404).  *See Nadarajah v. Holder*, 569 F.3d 906, 921, 923 (9th Cir. 2009) (endorsing reduction of hours where "clerical tasks" such as "filing, transcript, and document organization time" are billed at hourly rates, rather than "subsumed in firm overhead.").

Finally, SBA opposes time spent completing an application for a fee refund related to the operative complaint.  Opp'n at 23; [*see* Docket No. 40-2 at 11, 14.]  On reply, ASBL explains that it was inadvertently charged twice for the filing of the second complaint and had to apply for a refund.  Reply at 13.  ASBL does not respond to SBA's specific objection regarding the time billed applying for a fee refund.

After performing its own review, the court finds that Gelera did not bill for her time spent finalizing and filing the refund application.  [*See* Docket No. 40-2 at 14 (Transaction ID 138918 noting "Do not bill").]  However, the court reduces 0.3 hours from Lee's total (Transaction IDs 138889 and 138962).

### e.    Overstaffing and Excessive Billing

SBA asks the court to reduce several billing entries by 50% to account for inefficiencies.

---

[7] The court notes that this time entry appears to contain a typo.  Counsel billed 0.27 hours instead of 0.20 or 0.25 hours.  [*See* Docket No. 40-2 at 4.]

Opp'n at 23.[8]  SBA specifically disputes 129.5 hours spent on summary judgment briefing, and 13.3 hours spent on hearing preparation.  *Id.*

Citing *Sierra Club* and *EcoRights*, SBA argues that reductions for excessive work on summary judgment motions is common in this district.  *Id.* at 24.  These cases are distinguishable.

In *Sierra Club*, the court reduced time spent on the motion for summary judgment because billing entries did not permit it to determine the reasonableness of time spent on varying issues, and the plaintiffs failed to provide further explanation for the entries on reply.  *Sierra Club*, 75 F. Supp. 3d at 1151 (citing examples of billing entries that simply stated "Research for MOSJ" or "Draft MOSJ").  Here, ASBL's entries provide additional detail.  In addition, ASBL has reduced at least some entries related to the summary judgment motion.  [*See, e.g.*, Docket No. 40-2 at 8-9 (Transaction ID 14071 (reduced from 10.1 to 9.1) and Transaction ID 143864 (reduced from 5.3 to 4.8)).]  Finally, the court has already imposed a 20% reduction to reflect limited success, which will be applied to all billings including for work performed on the cross-motions for summary judgment.  No further reduction on the summary judgment work is warranted.

*EcoRights* is also factually different.  There, plaintiff sought $32,500 for a first summary judgment motion it ultimately withdrew, and $120,500 for its second summary judgment motion.  *See* 365 F. Supp. 3d at 1004.  The court found that billing $120,500 for the second motion was unreasonable because the issues were legally straightforward, the motion was substantively identical to the first, and the issues were similar to those in another case brought by the plaintiff the previous year.  *Id.* at 1004.  None of these facts are present here.  On the contrary, the cross-summary judgment briefing was extensive and addressed a number of issues for which there was little precedent.

### f.      Block Billing

SBA objects to ASBL's block billing and asks the court to reduce by 20% all block-billed hours, amounting to approximately 154.8 hours.  Opp'n at 24; Brakebill Decl. ¶ 23; [*see* Docket

---

[8] SBA also challenges the fact that three attorneys worked on this case, which it contends is excessive given the attorneys' experience in FOIA litigation.  Opp'n at 23.  SBA does not cite any authority or present any evidence to support that it is excessive to have three attorneys work on a FOIA matter.  *See* Opp'n at 23.  The court rejects this generalized overstaffing objection.

United States District Court
Northern District of California

No. 40-2 at 2-6 for Olson, 6-9 for Field; and 9-12 for Lee.]  Quoting *Welch v. Metro. Life Ins. Co.*, SBA argues that because block billing makes it more difficult to determine how much time was spent on particular tasks, fees for these hours should be reduced.  Opp'n at 24 (citing *Welch*, 480 F.3d 942, 948 (9th Cir. 2007)).  ASBL responds that SBA's unidentified time entries do not warrant reduction in this case.  Reply at 13.

"Block-billing is not inappropriate *per se* when the party seeking fees meets the basic requirements of 'listing his hours and identifying the general subject matter of his time expenditures.'"  *Garcia v. Resurgent Cap. Servs., L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012) (quoting *Fischer v. SJP–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Hensley,* 461 U.S. at 433 (noting that although the fee applicant bears the burden of submitting "evidence supporting the hours worked and rates claimed," an applicant is "not required to record in great detail how each minute of his time was expended").

Again, SBA has not identified the specific billing entries it challenges.  Having performed its own review, the court finds that the billing records contain specificity as to individual tasks to ascertain whether the amount of time spent performing them was reasonable.[9]

Plaintiff's entries are sufficiently detailed to allow the court to determine the reasonableness of time expended.

### D.      Costs

SBA objects to "excessive filing fee costs" and requests that costs be reduced accordingly. Opp'n at 24.  SBA specifically highlights that it was charged three times for a $400 filing fee related to the operative complaint, and $200 for the pre-severance complaint.  *Id.*; Brakebill Decl. ¶ 24.  On reply, ASBL explains that it further reduced costs to eliminate fees for courtesy copies that were not required by this court's standing order and service fees for Attorney General Merrick Garland.  Reply at 13; [Docket No. 53 (Olson Suppl. Decl., October 6, 2022) ¶ 4.]  Counsel also

---

[9] For example, one of Olson's entries from August 30, 2021 for 4.1 hours of work (Transaction ID 141580) contains the following information: "Review revise and finalize Notice of Motion and Memorandum of Points and Authorities in support of motion for summary judgment (2.8); review and revise KO declaration and exhibits thereto (1.1); correspondence from and to A. Field, I. Lee and K. Gelera re motion and proposed order (.2)."  [Docket No. 40-2 at 5.]

1    ensured its costs only include one charge for the filing of the operative complaint.  Olson Suppl.

2    Decl. ¶ 4.  Thus, on reply, ASBL seeks total costs of $2,051.17 (reduced from $3,547.68).  [*See*

3    Docket No. 53-1 at 25.]

4        In light of ASBL's comprehensive responses to SBA's objections, the court awards ASBL

5    $2,051.17 in costs.

6        **E.    Fees on Fees**

7        Finally, ASBL seeks an additional $69,990 in fees for 129.1 hours of attorneys' time spent

8    on this motion.  Reply at 14; Olson Suppl. Decl. ¶ 3.

9         In this Circuit, plaintiffs may recover attorneys' fees for time reasonably expended on a

10   motion for attorney fees and costs.  *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1999).

11   However, "[a]n inflated request for a 'fees-on-fees' award may be reduced to an amount deemed

12   reasonable by the awarding court."  *Rosenfeld*, 904 F. Supp. 2d at 1008.

13       In support of its request, ASBL proffers Olson's additional declaration and an updated

14   version of its fee table, which includes time spent on recovering attorneys' fees in August,

15   September, and October 2022.  Olson Suppl. Decl. ¶ 3; [*see* Docket No. 53-1.]  SBA makes

16   several objections to ASBL's new evidence.  [*See* Docket No. 54 (SBA's Objection to Reply

17   Evidence).]

18       First, SBA objects to billing entries that were available at the time ASBL filed its opening

19   brief as untimely.  SBA's Objection to Reply Evidence at 1-2.  SBA contends ASBL's

20   untimeliness denied SBA an opportunity to address the merits of these substantive entries in its

21   Opposition brief.  *Id.* at 2.  SBA's objection is not well taken.  Olson's first declaration set forth in

22   detail the fees incurred in connection with the fee motion in the month of August 2022 (through

23   August 24, 2022, one day before ASBL filed its opening brief).  *See* Olson Decl. ¶ 18.  With

24   respect to entries billed after August 24, 2022, "[t]he Local Rules specifically contemplate

25   submission of evidence with a Reply and provide an opportunity for an opposing party to object.

26   Under the Civil Local Rule 7-3(c), any reply to an opposition may include affidavits or

27   declarations, as well as supplemental brief or memorandum.  If new evidence has been submitted

28   in the reply, the opposing party may file an Objection to Reply Evidence stating its objections to

the new evidence within seven days after the reply was filed." *Rodgers v. Fitzgerald*, No. 14-cv-00985-DMR, 2016 WL 4658974 (N.D. Cal. Sept. 7, 2016) (citations omitted).  The court is satisfied that ASBL appropriately submitted new evidence with its reply brief and SBA properly had an opportunity to respond.

Next, SBA substantively objects to the new entries because (1) they fail to account for lost claims on stand-alone theories; (2) they entail tasks concerning preparation of irrelevant and inadmissible evidence; (3) Plaintiff has not exercised billing judgment to remove excessive, redundant or otherwise unnecessary fees; (4) they contain redacted entries that preclude a reasonableness determination; and (5) the total hours expended and number of timekeepers involved are unreasonable for attorneys claiming to be experienced in FOIA litigation generally and FOIA fees litigation in particular.  SBA's Objection to Reply Evidence at 2.

SBA also challenges new billing entries charged for time expended after the filing of SBA's Opposition brief.  SBA's Objection to Reply Evidence at 2.  SBA contends this new evidence includes "an additional 21 detailed time entries for two attorney timekeepers totaling 30.2 hours – and 3 additional time entries for one paralegal totaling 2.8 hours." *Id.* at 2; [*see* Docket No. 53-1 at 6-10.]  SBA objects to these billing entries for the same reasons articulated above.  SBA's Objection to Reply Evidence at 2-3.[10]

SBA also makes arguments in its Opposition brief.  SBA contends that ASBL's request is excessive and unreasonable given that the fees on fees amount approximates the same amount billed by ASBL for summary judgment.  Opp'n at 24.  According to SBA, the time spent is inconsistent with counsel's familiarity with attorneys' fees litigation in FOIA cases.  *Id.* at 25.[11]  The arguments put forward by SBA are considered below to the extent that they articulate a

---

[10] SBA objects to ASBL's submission of an Internet payment history screenshot (Docket No. 53-2).  SBA's Objection to Reply Evidence at 3.  The court does not rely on the screenshot, and therefore denies the objection as moot.

[11] SBA also contends ASBL's fees on fees request must be apportioned to account for losing claims.  Opp'n at 25.  The reduction to fees on fees accounts for this apportionment.  Finally, SBA argues ASBL's fees on fees request lacks factual basis.  *Id.* at 25.  The court rejects this objection in light of Olson's declaration (Docket No. 40) and ASBL's additional evidence on reply (Docket Nos. 53, 53-1).

United States District Court
Northern District of California

specific challenge and cite to specific evidence.

The court estimates that the final award sought for fees on fees accounts for nearly 45% of the total fees sought ($69,990 out of $156,195). This suggests that an unreasonable amount of hours were expended in connection with this motion. *See Elec. Frontier Found. v. Dep't of Homeland Sec.*, No. C 12-5580 PJH, 2014 WL 6469122, at *6 (N.D. Cal. Nov. 18, 2014) (holding that hours expended in connection with attorney's fees motion created "the appearance of the attorneys' fees tail wagging the FOIA dog" where nearly half of the total $97,075.50 sought was incurred as part of the fee motion itself).

The unreasonable amount of time sought in this case is exacerbated by counsel's familiarity with attorneys' fees in FOIA matters, and the fact that the fee motion does not involve particularly complex or novel issues. *See, e.g.*, *Public.Resource*, 2015 WL 9987018, at *8 (reducing the requested fees on fees by 25%, to $18,590.63, given counsel's familiarity with attorney's fees litigation in the FOIA area, the absence of any particularly complex or novel issues at play, and the number of hours that counsel attributed to either editing its fees/costs spreadsheets or to preparing declarations consisting largely of standard, non-case-specific language). Courts in this district have found fees on fees amounts unreasonable under less glaring circumstances. *See, e.g.*, *EcoRights*, 365 F. Supp. at 1007 (finding requested fees on fees unreasonable where the court estimated the hours accounted for at least 22% of the total hours plaintiff was requesting).

The court reduces the requested fees on fees by 30% ($20,997) to $48,993.

## IV.   CONCLUSION

Based on the foregoing, the court grants in part and denies in part ASBL's motion for attorneys' fees and costs. The court awards ASBL's counsel **$65,867** in fees for time spent on the merits of the case based on the following calculations:

| Attorney | Hours | Billing Rate | Total |
|---|---|---|---|
| Karl Olson | 25.75 | $800 | $20,600 |
| Aaron R. Field | 111.9 | $400 | $44,760 |
| Irene Lee | 42.05 | $325 | $13,666.25 |
| Kristel Gelera | 18.9 | $175 | $3,307.5 |
| **Lodestar Total** | | | **$82,333.75** |
| **Lodestar Including 20% Reduction ($16,466.75)** | | | **$65,867** |

United States District Court
Northern District of California

The court awards ASBL's counsel **$48,993** in fees on fees.  The court also awards **$2,051.17** in costs.  The total award is **$116,911.17.**

      **IT IS SO ORDERED.**

Dated: January 18, 2023



_____
Donna M. Ryu
United States Magistrate Judge



**EXHIBIT P**

## Monthly Summary of Hours Billed by Timekeeper

| Month | Olson | Field | Lee | Paralegals | Summary of Major Tasks |
|-------|-------|-------|-----|------------|------------------------|
| 04/20 | 4.9 | | 2.2 | .8 | Prepare and revise FOIA requests. Correspond and attend calls with SBA re: FOIA requests. |
| 05/20 | 9.43 | 21.2 | 4.5 | 6.3 | Research legal issues presented by FOIA requests and prepare memoranda advising team and client. Prepare agency correspondence re: requests. Prepare for and attend call w/ Mr. Fishman and Ms. Hunter. Consider and discuss possible lawsuit. |
| 06/20 | 10.5 | 1.6 | 22.1 | 13.4 | Prepare further agency correspondence. Continue researching and analyzing issues related to possible lawsuit, including exhaustion and constructive denial, facts related to records sought and other applicable law. |
| 07/20 | 28.2 | 23.5 | 14.2 | 7.1 | Further research, prepare, revise, and file complaint. Research legal issues. Review and track DC case re: PPP data. Begin work on motion for summary judgment. |
| 08/20 | 8.58 | 22 | 5.9 | .8 | Receive and review answer. Continue researching and drafting summary judgment motion. Case management and scheduling. Continue tracking Washington DC case. |
| 09/20 | 41.14 | 38.2 | 35.7 | 16.7 | Finish drafting, revise, finalize, meet regarding, and file motion for summary judgment and supporting papers. Review and analysis of motion to stay. Research, draft, finalize, and file reply brief. Continue tracking Washington DC case. Review and analysis of order continuing hearing on MSJ. |
| 10/20 | 22.95 | 4.3 | 8.5 | 3.7 | Research and draft opposition to motion to stay. CMC statement. Draft oral argument outline and begin preparing for oral argument. Prepare for and attend moot court. Review status of proposed legislation re: COVID-19 relief for use at oral argument. Review and analysis of reply ISO motion to stay. Review court order re: stay. |
| 11/20 | 8.55 | 17.9 | 1.5 | 1.1 | Research and review developments and order in WP Company case. Confer w/ gov. re: same and impact on N.D. Cal. case. Finalize CMC statement. Prepare for and attend CMC. |

| 12/20 | 23.1 | 7.5 | 9.4 | 3.9 | Research and draft pushback letter to Mr. Bickford. Draft and revise CMC statement. Further meet and confer efforts w/ Mr. Bickford re: CMC statement and scope of requests. Review court's order following status report. Research and update team on COVID-19 relief in Congress. |
|---|---|---|---|---|---|
| 01/21 | 15.8 | 12.5 | 15.2 | 5 | Prepare and revise, in correspondence w/ government, CMC statement. Review and analyze records disclosed and not disclosed by SBA regarding PPP loans and PPP funding. Research, analyze, and prepare memorandum re: deliberative process claims. |
| 02/21 | 8.82 | 5 | | .7 | Correspond w/ SBA re: search terms, and request for search terms. Research assertion that search term discussion must be privileged. Prepare for and attend call w/ counsel for SBA. Prepare for and attend CMC. Prepare and revise correspondence challenging redactions to disclosed records. Review correspondence from SBA regarding records, and records disclosed by SBA. Delineate request status and current scope of requests. Finalize narrowing agreement proposal and correspond w/ SBA re same. |
| 03/21 | 11.5 | 18.4 | 34.1 | 1.4 | Further correspondence w/ SBA in effort to obtain search terms. Coordinate review of records, review and analyze records. Prepare, meet and confer extensively w/ Mr. Bickford re:, finalize, and file further CMC statement. Research and prepare argument outline for CMC and attend CMC. Review and analysis of responsive records. |
| 04/21 | .37 | | 12.8 | 1.3 | Review and analysis of responsive records. |
| 05/21 | .2 | | 19.6 | .6 | Review and analysis of responsive records. |
| 06/21 | 3.15 | | 10.8 | 1.1 | Review and analysis of responsive records. |
| 07/21 | 1.3 | .4 | .2 | .5 | Correspondence and meetings w/ team and client re: records disclosed thus far and those at issue. |
| 08/21 | 3.86 | 11.3 | | 2.2 | Facilitate payment to SBA. Prepare, revise, and meet and confer w/ Mr. Bickford re: CMC statement. Prepare for and attend CMC. |
| 09/21 | .3 | .5 | | | Review and analysis of further ruling in *WP Company LLC*. |

| 10/21 | .1 | | 34.5 | | Review and analysis of responsive records. |
|---|---|---|---|---|---|
| 12/21 | 2.7 | 3.8 | | | Research and advise re: *WP Company LLC* case status, instant case. Correspond w/ Mr. Sur re scheduling. |
| 01/22 | 3.7 | 10.5 | | 1.3 | Review pending issues, prepare memorandum re: pending issues, arrange to meet and confer and meet and confer w/ counsel re: pending issues. Review and analysis of responsive records in anticipation of meet and confer effort. Correspondence and meetings w/ client and team re: meet and confer effort. Correspondence re: extension of briefing schedule and continuance of hearing date. |
| 02/22 | 8.37 | 15.2 | 19 | 1.1 | Review court order on briefing schedules for motion for summary judgment. Conference with SBA re search terms and settlement possibilities. Prepare settlement demand letter dated February 23, 2022. Prepare proposed search terms. Review records re Regional Regulatory Fairness Boards and prepare letter disputing redactions. |
| 03/22 | 9.61 | 2.9 | 2.9 | 0.6 | Correspondence and review of stipulation to extend briefing schedule for motion for summary judgment. Conferences with SBA re search terms, settlement possibilities, status of other searches and redactions. Review Regional Regulatory Fairness Board records. |
| 04/22 | 9.84 | 2.4 | 8.6 | 0.3 | Conferences with SBA re settlement possibilities, attorney's fees, further searches. Review *Vaughn* indices for Regional Regulatory Fairness Board and other records. |
| 05/22 | 16.02 | 0.8 | 13.5 | 2.6 | Review recently-released documents. Confer with team re same. Conferences with SBA re speed of production of PPP-related records. Review administrative motion by SBA for an order setting production rate. Draft, revise-edit, finalize, and file opposition to administrative motion. |
| 06/22 | 0.2 | | 2.9 | 0.5 | Conferences with team re strategy. Reviewing the Court's order vacating October 28, 2022 CMC. Review documents produced by SBA in response to ECF 65. |
| 07/22 | 1.52 | | 7.2 | 0.9 | Review documents produced by SBA on |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | June 30, 2022.  Prepare letter contesting redactions in said production.  Conference with SBA contesting redactions in June 2022 document production. |
| 08/22 | 3.5 | | 4.5 | 0.5 | Review documents produced by SBA on July 29, 2022.  Review case law re deliberative process privilege.  Draft, revise, edit, and file joint status report re ECF 65. |
| 09/22 | 0.1 | | | | Correspondence from SBA about latest document production and correspondence to team re possible challenge of asserted exemptions. |
| 10/22 | 2.05 | 8.6 | | | Correspond with SBA and revise and edit joint status report.  Review newly-released documents.  Prepare joint status report for ASBL. |
| 11/22 | 0.75 | | | 0.5 | Review newly-released documents. |
| 12/22 | 9.8 (1.0 of which spent on "fees on fees") | 2.8 (1.1 of which spent on "fees on fees") | 30.4 (0.7 of which spent on "fees on fees") | 0.6 | Draft, review, revise and edit joint status report.  Review documents produced re PPP from October 2022 to December 2022.  Prepare letter disputing redactions for all documents produced in response to ECF 65.  Correspondence with SBA re disputed redactions and attorney's fees.  Correspondence with team re status, strategy, and possible fee motion.  Prepare initial calculation of attorney's fees demand. |
| 01/23 | 9.42 (3.5 of which spent on "fees on fees") | 1.0 (0.6 of which spent on "fees on fees") | 11.2 (8.2 of which spent on "fees on fees") | 0.4 | Correspond with SBA re, prepare, revise, edit, and file joint status report.  Review letter from SBA re status of redactions.  Correspondence with team re fee motion, status, and strategy.  Prepare time entries for attorney's fee demand. |
| 02/23 | 13.7 (10.1 of which spent on "fees on fees") | | 25.8 (25.2 of which spent on "fees on fees") | 0.3 | Correspondence with SBA re further disputes over withholdings and redactions, SBA's intent to file an administrative motion, and ASBL's intent to move for an award of attorney's fees.  Prepare memorandum of points and authorities, declarations, and fee tables in support of fee motion. |
| 03/01/23-03/27/23 | 16.8 (all of which on "fees on fees") | 8.3 (all of which on "fees on fees") | 16.3 (all of which on "fees on fees") | | Prepare settlement demand letter.  Meet and confer with SBA on motion for attorney's fees and costs.  Prepare, finalize, and file motion for attorney's fees and costs. |
| **Total:** | **310.83** | **240.6** | **373.5** | **76.2 (76.2** | **Merits:** |

| (279.43 of which on merits, 31.4 of which spent on "fees on fees") | (230.6 of which on merits, 10 of which spent on "fees on fees") | (323.1 of which on merits, 50.4 of which spent on "fees on fees") | of which on merits) | (279.43 x $850) + (230.6 x $425) + (323.1 x $350) + (76.2 x $185) = $462,702.50<br>*Or*<br>$237,515.50 + $98,005 + $113,085 + $14,097 = $462,702.50<br><br>**Costs:**<br>$2,502.69<br><br>**Fees on Fees Thus Far:**<br>$60,000 estimated (of which $48,580 have already been incurred and does not include time spent on reply or in preparation for the hearing)<br><br>(31.4 x $850) + (10 x $425) + (50.4 x $350) = $48,580<br>*Or*<br>$26,690 + $4,250 + $17,640 = $48,580<br><br>**Grand Total Requested:**<br>$462,702.50 + $2,502.69 + $60,000 = $525,205.19 |