KARL OLSON (SBN 104760)
AARON R. FIELD (SBN 310648)
IRENE LEE (SBN 331485)
CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Telephone:     (415) 409-8900
Facsimile:     (415) 409-8904
Email:         kolson@cofolaw.com
               afield@cofolaw.com
               ilee@cofolaw.com

Attorneys for Plaintiff,
AMERICAN SMALL BUSINESS LEAGUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>            Plaintiff,<br><br>    vs.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>            Defendant. | Case No. 3:20-cv-04619-MMC<br><br>**DECLARATION OF AARON R. FIELD IN SUPPORT OF PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Date: May 26, 2023<br>Time: 9:00 a.m.<br>Place: Courtroom 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

I, AARON R. FIELD, declare:

1.     I am a member in good standing of the State Bar of California. I am a partner at the law firm of Cannata O'Toole & Olson LLP, and I represent plaintiff American Small Business League ("ASBL") in this action.  I make this declaration based on my own personal knowledge, and, if called as a witness, I could testify to the facts stated herein.

2.     I submit this declaration in support of ASBL's motion for attorney's fees and costs to apprise the Court of ASBL's successful efforts to obtain data about "Paycheck Protection Program ("PPP") loans from defendant United States Small Business Administration ("SBA"), through ASBL's summary judgment motion (ECF No. 20) and advocacy, over and above the PPP loan data that the SBA disclosed in response to a November 5, 2020 order granting the plaintiffs' motion for partial summary judgment in *WP Company LLC v. U.S. Small Bus. Admin.*, Civil Action Nos. 20-1240 (JEB), 20-1614 (JEB) (D.D.C.).

3.     ASBL moved for partial summary judgment on September 4, 2020, seeking records responsive to its April 16, 2020 FOIA request for "[d]ata showing how the appropriated funds from the CARES Act were distributed through the" Paycheck Protection Program, as follows:

> ASBL seeks an order granting summary judgment for it and against defendant under Rule 56 and mandating immediate disclosure of one sub category of information at issue for which disclosure is obviously required and urgently needed: the same information about each and every loan approved by the SBA as part of the $650 billion Paycheck Protection Program ("PPP") that the SBA publishes on its website about other loans made pursuant 15 U.S.C. section 636(a) (including whether and the extent to which each borrower's PPP loan was forgiven, which is analogous to the "GrossChargeOffAmount" data the SBA publishes about 7(a) loans).

ECF No. 20 at 1.

4.     On October 26, 2020, the Court stayed proceedings in this matter pending the ruling of the Honorable James E. Boasberg of the United States District Court for the District of Columbia on the plaintiffs' motion for partial summary judgment in *WP Company LLC v. U.S. Small Bus. Admin.*, Civil Action Nos. 20-1240 (JEB), 20-1614 (JEB) (D.D.C.).

5.     On November 5, 2020, the court in *WP Company LLC* granted the plaintiffs'

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

motion for partial summary judgment, ordering the SBA to "release the names, addresses, and precise loan amounts of all individuals and entities that obtained PPP and EIDL COVID-related loans by November 19, 2020." ECF No. 36-1 at 40.

6. On November 17, 2020, on behalf of ASBL, I participated in a telephone call with James Bickford, counsel for the SBA, in this matter in anticipation of preparing a Joint Status Report as directed by this Court's October 26, 2020 order (ECF No. 35). I informed Mr. Bickford that the information the SBA had been directed to disclose by the *WP Company LLC* court's November 5, 2020 order did not appear to include all of the PPP loan information in the SBA's possession that ASBL sought in its summary judgment motion. I stated that I would review the matter further and follow up.

7. On November 18, 2020, I sent follow-up e-mail correspondence to Mr. Bickford that elaborated on and provided support for ASBL's position. The correspondence restated the information sought in ASBL's summary judgment motion. To support ASBL's contention that the SBA had more information sought in ASBL's summary judgment motion than the *WP Company LLC* order had directed the SBA to disclose, the correspondence attached two Excel "data dictionaries" obtained from the SBA's website that listed categories of data that the SBA published at that time about non-PPP section 7(a) loans and section 504 loans, with categories of records that remained outstanding highlighted. Mr. Bickford replied, on behalf of the SBA, *inter alia*:

> I'll take a look at the materials you attached and confer with my client, but my understanding (as I said on the phone yesterday) is that SBA has published its full records of PPP loans -- with the exception of the information at issue in Judge Boasberg's opinion, which was withheld under Exemptions 4 and 6. (I will double-check to make sure that my understanding is not mistaken, as it may be.) If my understanding is correct, and you wish to contend that SBA nonetheless should have produced additional information, you can obviously frame that argument however you think best.

True and correct copies of the text of e-mails I exchanged with Mr. Bickford on November 18, 2020 are attached hereto as **Exhibit A**. True and correct copies of highlighted data dictionaries that I transmitted to Mr. Bickford, as attachments to my November 18, 2020 e-mails, are attached

hereto as **Exhibit B**.

8.      ASBL informed this Court that PPP loan data it had sought access to in its motion for summary judgment was not covered by the court's November 5, 2020 order in *WP Company LLC* in the Joint Status Report filed by the parties in this matter on November 19, 2020 (ECF No. 37).

9.      On November 20, 2020, this Court lifted its stay in this matter and directed the parties to file a further status report proposing a schedule for further proceedings by December 14, 2020 (ECF No. 38).

10.     The SBA disclosed some PPP loan information, including PPP loan information covered by the *WP Company LLC* court's November 5, 2020 order, on or about December 1, 2020.

11.     On December 14, 2020, the parties filed a status report as directed by the Court (ECF No. 39), along with a supporting declaration by ASBL attorney Karl Olson (ECF No. 39-1). The status report again addressed the SBA's withholding of PPP loan data called for by ASBL's motion for summary judgment.  And, in paragraph 7 of Mr. Olson's declaration, Mr. Olson reported the following about a December 11, 2020 meet and confer call he had with Mr. Bickford:

> On December 11, 2020, counsel for the parties met and conferred again to further discuss the types of records to be disclosed to ASBL and the timing of production of documents. My notes reflect that counsel for the SBA, Mr. Bickford, stated that he was "guardedly optimistic" that the SBA would be able to provide ASBL with information about loan chargeoffs. He would not give us a date for production but said that SBA would probably get data to us by mid-January, 2021.

12.     On January 27, 2021, the SBA transmitted a PPP loan dataset to ASBL that contained additional loan-level data, including data highlighted in **Exhibit B.**   ASBL alerted the Court to the SBA's further PPP data disclosures, and to the SBA's continued withholding of a subset of "loan status" information, in the parties' January 29, 2021 Joint Case Management Statement (ECF No. 42).

13.     In a motion and supporting declaration seeking further summary judgment briefing

filed by the plaintiffs in *WP Company LLC* on February 10, 2021, the plaintiffs in *WP Company* revealed that the SBA had alerted them that it possessed additional PPP data. The motion attached January 23, 2021 correspondence to the plaintiffs' lead counsel in that case. The letter stated,

> It has come to our attention that the U.S. Small Business Administration (SBA) has additional records pertaining to loans made through the Paycheck Protection Program (PPP). We have now published the nonexempt records, which are responsive to at least some of the FOIA requests at issue in *WP Company*.

A true and correct copy of the motion and supporting declaration, which I obtained by accessing the *WP Company LLC* case's docket on PACER, is attached hereto as **Exhibit C**.

14. In a declaration filed in *WP Company LLC* on March 12, 2021, Eric S. Benderson, who stated in the declaration that he was then employed as an Associate General Counsel for Litigation at the SBA, identified new categories of information that the SBA had disclosed in January 2021, and provided additional information about the disclosure of that new information. After noting the SBA's initial December 1, 2020 disclosure of PPP data, Mr. Benderson stated, "My office subsequently learned that SBA's electronic loan processing system, E-Tran, might contain other PPP loan data fields." Mr. Benderson then stated that the SBA's counsel had informed the plaintiffs' counsel in *WP Company LLC* by e-mail on December 23, 2020 that:

> . . . as we have recently learned, the Small Business Administration's database for PPP loans contains some data fields that were not produced in response to your clients' FOIA requests." The email also said that "[w]e are investigating further, and expect that any responsive, non-exempt information contained in these additional data fields will be released by the SBA next week."

Mr. Benderson went on to set forth categories of information that the SBA had disclosed. He listed newly-disclosed PPP loan data by category in paragraph 12. In paragraph 20, he stated that the newly-disclosed data included (though was not limited to) an important subset of loan status information: "SBA released the statuses 'paid in full,' which is self-explanatory, and 'charged off,' which indicates that the agency has not been able to collect the full amount due on the loan, and has abandoned its efforts to do so. SBA also released the status of 'active undisbursed' loans." He elaborated, "SBA released the dates associated with the loan statuses that it released,

CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

and withheld the rest." In paragraph 34, he explained, "All fully forgiven PPP loans would be reflected as 'paid in full' on the Form 1502. SBA Procedural Notice No. 5000-20091, Feb. 8, 2021, Second Updated Paycheck Protection Program Lender Processing Fee Payment and 1502 Reporting Process (sba.gov)." A true and correct copy of Mr. Benderson's declaration in *WP Company LLC*, which I obtained by accessing the *WP Company LLC* case's docket on PACER, is attached hereto as **Exhibit D**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed March 27, 2023 at San Francisco, California.

_____
AARON R. FIELD

# EXHIBIT A

**Subject:**  RE: ASBL v. SBA, Case No. 3:20-cv-04619-MMC (N.D. Cal.): Information at Issue in MSJ
**Date:**  Wednesday, November 18, 2020 at 4:48:01 PM Pacific Standard Time
**From:**  Bickford, James (CIV)
**To:**  Aaron R. Field
**CC:**  Karl Olson, Irene Lee, Kristel Gelera
**Attachments:** image002.jpg

Aaron,

Thanks for your email. I'll take a look at the materials you attached and confer with my client, but my understanding (as I said on the phone yesterday) is that SBA has published its full records of PPP loans -- with the exception of the information at issue in Judge Boasberg's opinion, which was withheld under Exemptions 4 and 6. (I will double-check to make sure that my understanding is not mistaken, as it may be.) If my understanding is correct, and you wish to contend that SBA nonetheless should have produced additional information, you can obviously frame that argument however you think best.

I'll look for your draft of the ASBL status report, and return it to you with a draft of the SCPR status report. As I believe that I said on the phone, I think both reports should provide an identical update on the proceedings in DC.

With my best,

James Bickford
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530
(202) 305-7632
James.Bickford@usdoj.gov

This email may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivery of the email to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this email or its contents is strictly prohibited. If you have received this email in error, please notify the sender immediately and destroy all copies of it.

**From:** Aaron R. Field <afield@cofolaw.com>
**Sent:** Wednesday, November 18, 2020 6:56 PM
**To:** Bickford, James (CIV) <jabickfo@CIV.USDOJ.GOV>
**Cc:** Karl Olson <kolson@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera <kgelera@cofolaw.com>
**Subject:** ASBL v. SBA, Case No. 3:20-cv-04619-MMC (N.D. Cal.): Information at Issue in MSJ

James,

As we discussed on our meet and confer call yesterday afternoon, I have gone back and once again compared Judge Boasberg's order with our request for relief in our motion for summary judgment (we made clear what we are asking for on page one of our motion, in the "relief sought" section), and with the information that the SBA has disclosed for decades about other 7(a) loans.  I was correct on our call yesterday:  We are seeking in *ASBL v. SBA,* and we have already moved for summary judgment on, more information than simply the names and addresses of all PPP loan recipients and the amounts of all PPP loans.  Our request for relief in our summary judgment motion states:

> ASBL seeks an order granting summary judgment for it and against defendant underRule 56 and mandating immediate disclosure of one sub category of information at issue forwhich disclosure is obviously required and urgently needed: the same information about each and every loan approved by the SBA as part of the $650 billion Paycheck Protection Program("PPP") that the SBA publishes on its website about other loans made pursuant 15 U.S.C.section 636(a) (including whether and the extent to which each borrower's PPP loan wasforgiven, which is analogous to the "GrossChargeOffAmount" data the SBA publishes about7(a) loans).

I am attaching a copy of the SBA's 7(a) loan data dictionary, which we obtained from the SBA's website (at http://imedia.sba.gov/vd/general/foia/7a_504_FOIA%20Data%20Dictionary.xlsx), with fields highlighted that the SBA has not yet disclosed about PPP loans, and that go beyond the names and addresses of PPP loan recipients and the amounts of PPP loans.  We are also, importantly, seeking "whether and the extent to which each borrower's PPP loan was forgiven," ECF No. 20 at 1:24-25, which, as we said in our summary judgment motion, is analogous to the "GrossChargeOffAmount" information that the SBA publishes on its website about other 7(a) loans.

The claim that this is an "adequacy of search" issue, which you asserted on our call, strikes me as irrelevant.  If you think otherwise, please let us know why.  Regardless, relevancy aside, the claim is wrong.  No search had been done, and no determination had been provided, when we filed our summary judgment motion, in which we made clear we were seeking this information; the SBA instead constructively and actually withheld this information by failing to provide a determination or disclose it to us.  The SBA's very belated determination letter, which it provided after we filed our summary judgment motion and after the Court issued its earlier stay order directing a determination, obviously does not transform the SBA's failure to disclose this information into an adequacy of search issue or remove it from our FOIA request, or *a fortiori* from our summary judgment motion, in which we explicitly asked for it.

There are a few ways for us to deal with this. The easiest is by stipulation and order.  Will the SBA sign

a stipulation and proposed order in *ASBL v. SBA* agreeing that if and when Judge Boasberg's order takes effect and it discloses the information that Judge Boasberg has directed it to, the SBA will also disclose all of the other PPP loan information that ASBL is seeking in its pending summary judgment motion. If the SBA will not so stipulate, we intend to raise the issue with the Court.

We will send you a draft joint statement in ASBL v. SBA this evening, and we look forward to receiving your draft joint statement for use in KPCC v. SBA soon.

Regards,

Aaron



Aaron Field
Attorney at Law

100 Pine Street, Suite 350
San Francisco, California 94111
Telephone (Firm):       415.409.8900
Telephone (Direct):     415.674.7592
Fax:                            415.409.8904

P **Please consider the environment before printing this e-mail**

-------------------------------------------------------------------------------------------------------------

**IMPORTANT NOTICE:** Our offices are temporarily closed in compliance with public health directives and/or recommendations for the San Francisco Bay Area. All of our attorneys and paralegals are working remotely. Please contact me or our office manager, Jessica Toscano (jtoscano@cofolaw.com), if you have questions or concerns. I will be checking my office voicemail regularly during this period of remote work. **To reach me, please call my direct line at (415) 674-7592.**

-------------------------------------------------------------------------------------------------------------

For further information about our firm or directions to our San Francisco or Walnut Creek offices, please visit our firm website at www.cofolaw.com

-------------------------------------------------------------------------------------------------------------

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination, or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

**Subject:** RE: ASBL v. SBA, Case No. 3:20-cv-04619-MMC (N.D. Cal.): Information at Issue in MSJ
**Date:** Wednesday, November 18, 2020 at 5:12:33 PM Pacific Standard Time
**From:** Bickford, James (CIV)
**To:** Aaron R. Field
**CC:** Karl Olson, Irene Lee, Kristel Gelera
**Attachments:** image001.jpg, image002.png, image003.png

Thanks, Aaron. I don't imagine that SBA will agree to stipulate, but I will certainly ask about the 7(a) data fields you've identified and let you know what I hear back.

With my best,

James

---

**From:** Aaron R. Field <afield@cofolaw.com>
**Sent:** Wednesday, November 18, 2020 8:09 PM
**To:** Bickford, James (CIV) <jabickfo@CIV.USDOJ.GOV>
**Cc:** Karl Olson <kolson@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera <kgelera@cofolaw.com>
**Subject:** Re: ASBL v. SBA, Case No. 3:20-cv-04619-MMC (N.D. Cal.): Information at Issue in MSJ

The 7(a) data dictionary - the second of the two excel documents I sent - is the more relevant one that highlights information that the SBA apparently has, but has not disclosed, about PPP loans that are we are seeking other than the names and addresses of PPP loan recipients and the amounts of PPP loans. Though, as I said, the data that the SBA publishes about both kinds of loans overlaps almost entirely. That overlap is a further indication that the SBA has this data about PPP loans as well.

Also, to be clear, in addition to the highlighted information (as I said in my e-mail, and as we explained in our summary judgment motion), we are seeking records showing "whether and the extent to which each borrower's PPP loan was forgiven," ECF No. 20 at 1:24-25, which is analogous to the "GrossChargeOffAmount" information that the SBA publishes about other 7(a) loans. Because this information in particular reflects the actual expenditure of federal PPP funds, it strikes me as almost impossible that the SBA doesn't have it. That would be astonishing if true.

We are of course also seeking the names and addresses of PPP loan recipients and the amounts of PPP loans, but those are clearly covered by Judge Boasberg's order, so I did not highlight data fields that contain them in either excel spreadsheet we sent. The goal here was to state what information we are seeking beyond the information that Judge Boasberg has explicitly ordered the SBA to disclose, in response to your request that I identify that information on our meet and confer call yesterday.

Please let us know the SBA's position on a stipulation and order as to this information as soon as possible.  Thank you James.

Regards,

Aaron



Aaron Field
Attorney at Law

100 Pine Street, Suite 350
San Francisco, California 94111
Telephone (Firm):       415.409.8900
Telephone (Direct):     415.674.7592
Fax:                             415.409.8904

**P** **Please consider the environment before printing this e-mail**
-------------------------------------------------------------------------------------------------

**IMPORTANT NOTICE:**  Our offices are temporarily closed in compliance with public health directives and/or recommendations for the San Francisco Bay Area.  All of our attorneys and paralegals are working remotely.  Please contact me or our office manager, Jessica Toscano (jtoscano@cofolaw.com), if you have questions or concerns.  I will be checking my office voicemail regularly during this period of remote work.  **To reach me, please call my direct line at (415) 674-7592.**

-------------------------------------------------------------------------------------------------
For further information about our firm or directions to our San Francisco or Walnut Creek offices, please visit our firm website at www.cofolaw.com
-------------------------------------------------------------------------------------------------
This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination, or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

---

**From:** Bickford, James (CIV) <James.Bickford@usdoj.gov>
**Sent:** Wednesday, November 18, 2020 4:51 PM
**To:** Aaron R. Field <afield@cofolaw.com>
**Cc:** Karl Olson <kolson@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera <kgelera@cofolaw.com>
**Subject:** RE: ASBL v. SBA, Case No. 3:20-cv-04619-MMC (N.D. Cal.): Information at Issue in MSJ

Thanks, Aaron.  Is it your contention that SBA has failed to provide the highlighted information in the 7(a) data dictionary, or the highlighted information in the 504 data dictionary?

JB

**From:** Aaron R. Field <afield@cofolaw.com>
**Sent:** Wednesday, November 18, 2020 7:13 PM
**To:** Bickford, James (CIV) <jabickfo@CIV.USDOJ.GOV>
**Cc:** Karl Olson <kolson@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera <kgelera@cofolaw.com>
**Subject:** Re: ASBL v. SBA, Case No. 3:20-cv-04619-MMC (N.D. Cal.): Information at Issue in MSJ

James,

A minor clarification:  the last excel spreadsheet I shared only included highlights in the "504" section. The attached excel spreadsheet includes highlights in the section "7a" section, too, which is largely the same, but which we have addressed in the attached document as well to maximize the clarity here.

Regards,

Aaron

_____
Aaron Field
Attorney at Law



100 Pine Street, Suite 350
San Francisco, California 94111
Telephone (Firm):        415.409.8900
Telephone (Direct):      415.674.7592
Fax:                            415.409.8904

P Please consider the environment before printing this e-mail

----------------------------------------------------------------------------------------------------------

**IMPORTANT NOTICE:**  Our offices are temporarily closed in compliance with public health directives and/or recommendations for the San Francisco Bay Area.  All of our attorneys and paralegals are working remotely.  Please contact me or our office manager, Jessica Toscano (jtoscano@cofolaw.com), if you have questions or concerns.  I will be checking my office voicemail regularly during this period of remote work.  **To reach me, please call my direct line at (415) 674-7592.**

----------------------------------------------------------------------------------------------------------
For further information about our firm or directions to our San Francisco or Walnut Creek offices, please visit our firm website at www.cofolaw.com
----------------------------------------------------------------------------------------------------------

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination, or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

**From:** Aaron R. Field
**Sent:** Wednesday, November 18, 2020 3:55 PM
**To:** james.bickford@usdoj.gov <james.bickford@usdoj.gov>
**Cc:** Karl Olson <kolson@cofolaw.com>; Irene Lee <ILee@cofolaw.com>; Kristel Gelera <kgelera@cofolaw.com>
**Subject:** ASBL v. SBA, Case No. 3:20-cv-04619-MMC (N.D. Cal.): Information at Issue in MSJ

James,

As we discussed on our meet and confer call yesterday afternoon, I have gone back and once again compared Judge Boasberg's order with our request for relief in our motion for summary judgment (we made clear what we are asking for on page one of our motion, in the "relief sought" section), and with the information that the SBA has disclosed for decades about other 7(a) loans. I was correct on our call yesterday: We are seeking in *ASBL v. SBA,* and we have already moved for summary judgment on, more information than simply the names and addresses of all PPP loan recipients and the amounts of all PPP loans. Our request for relief in our summary judgment motion states:

> ASBL seeks an order granting summary judgment for it and against defendant underRule 56 and mandating immediate disclosure of one sub category of information at issue forwhich disclosure is obviously required and urgently needed: the same information about each and every loan approved by the SBA as part of the $650 billion Paycheck Protection Program("PPP") that the SBA publishes on its website about other loans made pursuant 15 U.S.C.section 636(a) (including whether and the extent to which each borrower's PPP loan wasforgiven, which is analogous to the "GrossChargeOffAmount" data the SBA publishes about7(a) loans).

I am attaching a copy of the SBA's 7(a) loan data dictionary, which we obtained from the SBA's website (at http://imedia.sba.gov/vd/general/foia/7a_504_FOIA%20Data%20Dictionary.xlsx), with fields highlighted that the SBA has not yet disclosed about PPP loans, and that go beyond the names and addresses of PPP loan recipients and the amounts of PPP loans. We are also, importantly, seeking "whether and the extent to which each borrower's PPP loan was forgiven," ECF No. 20 at 1:24-25, which, as we said in our summary judgment motion, is analogous to the "GrossChargeOffAmount" information that the SBA publishes on its website about other 7(a) loans.

The claim that this is an "adequacy of search" issue, which you asserted on our call, strikes me as irrelevant. If you think otherwise, please let us know why. Regardless, relevancy aside, the claim is wrong. No search had been done, and no determination had been provided, when we filed our summary judgment motion, in which we made clear we were seeking this information; the SBA instead constructively and actually withheld this information by failing to provide a determination or disclose it to us. The SBA's very belated determination letter, which it provided after we filed our

summary judgment motion and after the Court issued its earlier stay order directing a determination, obviously does not transform the SBA's failure to disclose this information into an adequacy of search issue or remove it from our FOIA request, or *a fortiori* from our summary judgment motion, in which we explicitly asked for it.

There are a few ways for us to deal with this. The easiest is by stipulation and order. Will the SBA sign a stipulation and proposed order in *ASBL v. SBA* agreeing that if and when Judge Boasberg's order takes effect and it discloses the information that Judge Boasberg has directed it to, the SBA will also disclose all of the other PPP loan information that ASBL is seeking in its pending summary judgment motion? If the SBA will not so stipulate, we intend to raise the issue with the Court.

We will send you a draft joint statement in ASBL v. SBA this evening, and we look forward to receiving your draft joint statement for use in KPCC v. SBA soon.

Regards,

Aaron

_____
Aaron Field
Attorney at Law



100 Pine Street, Suite 350
San Francisco, California 94111
Telephone (Firm):        415.409.8900
Telephone (Direct):      415.674.7592
Fax:                              415.409.8904

P **Please consider the environment before printing this e-mail**

-----------------------------------------------------------------------------------------------------

**IMPORTANT NOTICE:** Our offices are temporarily closed in compliance with public health directives and/or recommendations for the San Francisco Bay Area. All of our attorneys and paralegals are working remotely. Please contact me or our office manager, Jessica Toscano (jtoscano@cofolaw.com), if you have questions or concerns. I will be checking my office voicemail regularly during this period of remote work. **To reach me, please call my direct line at (415) 674-7592**.

-----------------------------------------------------------------------------------------------------

For further information about our firm or directions to our San Francisco or Walnut Creek offices, please visit our firm website at www.cofolaw.com

-----------------------------------------------------------------------------------------------------

This electronic mail transmission is intended only for the addressee(s) shown above. It may contain information that is confidential or otherwise protected from disclosure as an attorney-client or attorney work-product privileged communication. Any review, dissemination, or use of this transmission or its contents by persons other than the addressee(s) is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (415) 409-8900, and destroy this document.

# EXHIBIT B

| Field Name | Definition |
|---|---|
| Program | Indicator of whether loan was approved under SBA's 7(a) or 504 loan program |
| BorrName | Borrower name |
| BorrStreet | Borrower street address |
| BorrCity | Borrower city |
| BorrState | Borrower state |
| BorrZip | Borrower zip code |
| BankName | Name of the bank that the loan is currently assigned to |
| BankStreet | Bank street address |
| BankCity | Bank city |
| BankState | Bank state |
| BankZip | Bank zip code |
| GrossApproval | Total loan amount |
| SBAGuaranteedApproval | Amount of SBA's loan guaranty |
| ApprovalDate | Date the loan was approved |
| ApprovalFiscalYear | Fiscal year the loan was approved |
| FirstDisbursementDate | Date of first loan disbursement (if available) |
| DeliveryMethod | Specific delivery method loan was approved under.  See SOP 50 10 5 for definitions and rules for each delivery method.<br>7(a) Delivery Methods:<br>• CA = Community Advantage<br>• CLP = Certified Lenders Program<br>• COMM EXPRS = Community Express (inactive)<br>• DFP = Dealer Floor Plan (inactive)<br>• DIRECT = Direct Loan (inactive)<br>• EWCP = Export Working Capital Program<br>• EXP CO GTY = Co-guaranty with Export-Import Bank (inactive)<br>• EXPRES EXP = Export Express<br>• GO LOANS = Gulf Opportunity Loan (inactive)<br>• INTER TRDE = International Trade<br>• OTH 7A = Other 7(a) Loan<br>• PATRIOT EX = Patriot Express (inactive)<br>• PLP = Preferred Lender Program<br>• RLA = Rural Lender Advantage (inactive)<br>• SBA EXPRES = SBA Express<br>• SLA = Small Loan Advantage<br>• USCAIP = US Community Adjustment and Investment Program<br>• Y2K = Y2K Loan (inactive) |
| subpgmdesc | Subprogram description - specific subprogram loan was aproved under.  See SOP 50 10 5 for definitions and rules for each subprogram. |
| InitialInterestRate | Initial interest rate - total interest rate (base rate plus spread) at time loan was approved |
| TermInMonths | Length of loan term |

| NaicsCode | North American Industry Classification System (NAICS) code |
|---|---|
| NaicsDescription | North American Industry Classification System (NAICS) description |
| FranchiseCode | Franchise Code |
| FranchiseName | Franchise Name (if applicable) |
| ProjectCounty | County where project occurs |
| ProjectState | State where project occurs |
| BusinessType | Borrower Business Type - Individual, Partnership, or Corporation |
| LoanStatus | Current status of loan:<br>• COMMIT = Undisbursed<br>• PIF = Paid In Full<br>• CHGOFF = Charged Off<br>• CANCLD = Cancelled<br>• EXEMPT = The status of loans that have been disbursed but have not been cancelled, paid in full, or charged off are exempt from disclosure under FOIA Exemption 4 |
| ChargeOffDate | Date SBA charged off loan (if applicable) |
| GrossChargeOffAmount | Total loan balance charged off (includes guaranteed and non-guaranteed portion of loan) |
| RevolverStatus | Indicator of whether a loan is a term loan or revolving line of credit (0=Term, 1=Revolver) |
| JobsSupported | Total Jobs Created + Jobs Retained as reported by lender on SBA Loan Application. SBA does not review, audit, or validate these numbers - they are simply self-reported, good faith estimates by the lender. |

| Field Name | Definition |
|---|---|
| Program | Indicator of whether loan was approved under SBA's 7(a) or 504 loan program |
| BorrName | Borrower name |
| BorrStreet | Borrower street address |
| BorrCity | Borrower city |
| BorrState | Borrower state |
| BorrZip | Borrower zip code |
| CDC_Name | Name of CDC that the loan is currently assigned to |
| CDC_Street | CDC street address |
| CDC_City | CDC city |
| CDC_State | CDC state |
| CDC_Zip | CDC zip code |
| ThirdPartyLender_Name | Name of third party lender |
| ThirdPartyLender_City | Third party lender city |
| ThirdPartyLender_State | Third party lender state |
| ThirdPartyDollars | Third party loan amount |
| GrossApproval | SBA/CDC loan amount |
| ApprovalDate | Date the loan was approved |
| ApprovalFiscalYear | Fiscal year the loan was approved |
| FirstDisbursementDate | Date of first loan disbursement (if available) |
| DeliveryMethod | Specific delivery method loan was approved under.  See SOP 50 10 5 for definitions and rules for each delivery method.<br>504 Delivery Methods:<br>• 504 = Regular 504<br>• 504REFI = 504 Refinance (inactive)<br>• ALP = Accredited Lenders Program<br>• PCLP = Premier Certified Lenders |
| subpgmdesc | Subprogram description - specific subprogram loan was aproved under.  See SOP 50 10 5 for definitions and rules for each subprogram. |
| InitialInterestRate | Initial interest rate - total interest rate (base rate plus spread) at time loan was approved |
| TermInMonths | Length of loan term |
| NaicsCode | North American Industry Classification System (NAICS) code |
| NaicsDescription | North American Industry Classification System (NAICS) description |
| FranchiseCode | Franchise Code |
| FranchiseName | Franchise Name (if applicable) |
| ProjectCounty | County where project occurs |
| ProjectState | State where project occurs |
| BusinessType | Borrower Business Type - Individual, Partnership, or Corporation |

| | |
|---|---|
| LoanStatus | Current status of loan:<br>• NOT FUNDED = Undisbursed<br>• PIF = Paid In Full<br>• CHGOFF = Charged Off<br>• CANCLD = Cancelled<br>• EXEMPT = The status of loans that have been disbursed but have not been cancelled, paid in full, or charged off are exempt from disclosure under FOIA Exemption 4 |
| ChargeOffDate | Date SBA charged off loan (if applicable) |
| GrossChargeOffAmount | Total SBA/CDC loan balance charged off |
| Jobs Supported | Total Jobs Created + Jobs Retained as reported by lender on SBA Loan Application. SBA does not review, audit, or validate these numbers - they are simply self-reported, good faith estimates by the lender. |



**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**WP COMPANY LLC
d/b/a THE WASHINGTON POST, et al.**,

               Plaintiffs,

v.

**U.S. SMALL BUSINESS ADMINISTRATION**,

               Defendant.

Case No. 1:20-cv-1240-JEB

---

**PLAINTIFFS' MOTION FOR A BRIEFING SCHEDULE ON THE
WITHHOLDING OF ADDITIONAL RESPONSIVE RECORDS RECENTLY
REVEALED BY DEFENDANT THE SMALL BUSINESS ADMINISTRATION**

Plaintiffs WP Company LLC d/b/a The Washington Post, Bloomberg L.P., Dow Jones & Company, Inc., Pro Publica, Inc., The New York Times Company, American Broadcasting Companies, Inc. d/b/a ABC News, American City Business Journals, Cable News Network, Inc., NBCUniversal Media, LLC d/b/a NBC News, The Associated Press, and The Center for Investigative Reporting d/b/a Reveal, respectfully move the Court to set a briefing schedule for summary judgment motions as to whether Defendant the U.S. Small Business Administration ("SBA") must release recently discovered records that are responsive to Plaintiffs' Freedom of Information Act ("FOIA") requests and that the SBA has improperly withheld from Plaintiffs.  In support of this motion Plaintiffs state as follows:

The Court is now well-familiar with the facts underlying this case, but to briefly recap: In Spring 2020, each of the Plaintiffs submitted FOIA requests to the SBA for records that would identify and provide information about the borrowers approved for loans under the SBA's Paycheck Protection Program ("PPP") and COVID-related Economic Injury Disaster Loans ("EIDL") programs.  Am. Compl. ¶ 41 (Dkt. 5).  All of the current Plaintiffs joined together in

bringing this litigation through an Amended Complaint on May 29, 2020.  Am. Compl. ¶ 44.
The SBA filed its Answer on June 12, 2020.  Dkt. 9.

On June 29, 2020, the Court ordered the SBA to make a final response to Plaintiffs'
requests and to "produce any responsive non-exempt records" by July 13, 2020.  Minute Order
of June 29, 2020.  After a partial release of the records and cross-motions for summary judgment
on the withholdings, the Court granted summary judgment for Plaintiffs on November 5, 2020,
ordering the SBA to release the names, addresses, and loan amounts of all individuals and
entities that obtained COVID-related PPP and EIDL loans.  Dkt. 22.  The Court subsequently
denied the SBA's motion to stay disclosure pending possible appeal, Dkt. 28, and the SBA
released the borrower data on December 1, 2020.[1]

On December 23, 2020, counsel for the SBA notified Plaintiffs' counsel that the SBA had
located additional "data fields that were not produced in response to [Plaintiffs'] FOIA requests,"
and that those data fields may be both responsive to the requests and not exempt from disclosure
under FOIA.  Though the SBA's counsel advised that the SBA expected to release any such non-
exempt data the following week, it did not actually do so for more than a month – and then only
after Plaintiffs' counsel alerted the SBA's counsel that Plaintiffs intended to seek judicial relief.

On January 25, 2021, the SBA notified Plaintiffs that it had released some of the newly-
discovered data and that it was withholding certain other categories of the data pursuant to FOIA
Exemptions 4 and 6.  *See* Ex. A (SBA's Jan. 25, 2021 letter to *The Washington Post*).  Under
Exemption 4, the SBA is withholding (1) "[i]nformation that would reveal whether a PPP loan is
in default," including information that reflects "the status of certain loans, the date associated

---

[1] The Court also granted Plaintiffs' motion for attorney's fees and costs and awarded $122,347
based in part on "the substantial public benefit from the released records."  Dkt. 35 at 8, 19.

with that loan status, the outstanding balance of all PPP loans, and internal codes that identify the

SBA offices servicing and processing the PPP loans"; and (2) "DUNS" numbers for PPP

borrowers provided by Dun & Bradstreet. *Id.* at 1.[2]  Under Exemption 6, the SBA is withholding

Employer Identification Numbers for PPP borrowers – not because they are themselves exempt,

but because they are purportedly "stored in the same data field as Social Security Numbers and

cannot be reliably segregated from them in a dataset this large." *Id.*

Plaintiffs dispute that either category of information withheld under Exemption 4

properly falls within the scope of that exemption, and they further dispute that the SBA is

incapable of segregating PPP borrowers' Employer Identification Numbers from their Social

Security Numbers.  Supplemental summary judgment briefing is therefore necessary to resolve

this dispute, in which SBA will "bear[] the burden of proving" that Exemption 4 applies as

claimed, *see Bartko v. Dep't of Justice*, 898 F.3d 51, 62 (D.C. Cir. 2018), and that

"demonstrat[ing] that it cannot segregate" the Employer Identification Numbers from the Social

Security Numbers, *see Hertzberg v. Veneman*, 273 F. Supp. 3d 67, 90 (D.D.C. 2003).

Plaintiffs propose the following deadlines for a supplemental round of summary

judgment briefing on these discrete issues:

- **March 12, 2021:** SBA's supplemental motion for summary judgment;

- **April 2, 2021:** Plaintiffs' supplemental cross-motion and opposition;

- **April 16, 2021:** SBA's opposition and reply; and

- **April 30, 2021:** Plaintiffs' reply.

---

[2] According to the U.S. Department of Health & Human Services, "[a] DUNS number is a
unique nine-character number used to identify [an] organization.  The federal government uses
the DUNS number to track how federal money is allocated."  *See*
https://www.grants.gov/applicants/organization-registration/step-1-obtain-duns-number.html.

Pursuant to Local Rule 7(m), counsel for Plaintiffs conferred with counsel for the SBA regarding this motion on February 10, 2021.  The SBA consents to the relief requested in this motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter the requested briefing schedule.

Dated:  February 10, 2021       Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Kristel Tupja (#888324914)
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
tupjak@ballardspahr.com

*Counsel for Plaintiffs*

# EXHIBIT A



**U.S. SMALL BUSINESS ADMINISTRATION**
**WASHINGTON, DC 20416**

OFFICE OF GENERAL COUNSEL

January 25, 2021

Charles D. Tobin
Ballard Spahr LLP
1909 K Street, NW
Washington, DC 20006

Dear Mr. Tobin,

This letter is in regard to the Freedom of Information Act (FOIA) requests at issue in *WP Company LLC v. U.S. Small Business Administration*, No. 20-cv-1240 (D.D.C.). It has come to our attention that the U.S. Small Business Administration (SBA) has additional records pertaining to loans made through the Paycheck Protection Program (PPP). We have now published the non-exempt records, which are responsive to at least some of the FOIA requests at issue in *WP Company*. The records are publicly available at: https://www.sba.gov/about-sba/open-government/foia.

In addition to the records that we are releasing today, we are withholding certain responsive records pursuant to FOIA Exemptions 4 and 6. Information that would reveal whether a PPP loan is in default has been withheld under Exemption 4. This information includes the status of certain loans, the date associated with that loan status, the outstanding balance of all PPP loans, and internal codes that identify the SBA offices servicing and processing the PPP loans. SBA has contracted with Dun & Bradstreet to provide "DUNS" numbers for PPP borrowers; these numbers are confidential pursuant to SBA's contract with Dun & Bradstreet and are therefore also withheld under Exemption 4.

The Social Security Numbers of PPP borrowers have been withheld under Exemption 6. Although Employer Identification Numbers are not similarly exempt from disclosure, they are stored in the same data field as Social Security Numbers and cannot be reliably segregated from them in a dataset this large. We therefore are not releasing the Employer Identification Numbers of PPP borrowers.

Finally, in the interest of transparency, we wish to inform you that we have determined that certain records are not responsive to any request for PPP loan data. These records exist as artifacts in our PPP loan database, but pertain exclusively to other SBA programs. These non-responsive records include data fields related to guaranty fees, exports, number of employees, and jobs created. These fields are blank, for the most part, and to the extent that they were populated by lenders we believe that the data was entered in error.

If you are dissatisfied with the Agency's decision, you may file an administrative appeal within 90 days of the date of this letter to:

> Office of Hearings and Appeals
> Attention: Oreoluwa Fashola, FOIA Office
> 409 3rd Avenue, SW – 8th Floor
> Washington, DC 20416

If you are unable to resolve your FOIA dispute through our FOIA Public Liaison in the Office of Hearings and Appeals, the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road--OGIS
> College Park, MD 20740-6001
> ogis@nara.gov
> ogis.archives.gov
> 202-741-5770
> 877-684-6448

Sincerely,

/s/ Eric S. Benderson
Eric S. Benderson
Chief FOIA Officer
Office of General Counsel
U.S. Small Business Administration

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **WP COMPANY LLC<br>d/b/a THE WASHINGTON POST, et al.**,<br><br>        Plaintiffs,<br><br>v.<br><br>**U.S. SMALL BUSINESS ADMINISTRATION**,<br><br>        Defendant. |

Case No. 1:20-cv-1240-JEB

**[PROPOSED] ORDER**

Upon consideration of Plaintiffs' Motion for a Briefing Schedule, any responses thereto, and for good cause shown, it is hereby **ORDERED** that:

1.      Plaintiffs' Motion for a Briefing Schedule is **GRANTED**; and

2.      The following deadlines are entered:

      **March 12, 2021**: SBA's supplemental motion for summary judgment;

      **April 2, 2021**: Plaintiffs' supplemental cross-motion and opposition;

      **April 16, 2021**: SBA's opposition and reply; and

      **April 30, 2021**: Plaintiffs' reply.

**SO ORDERED**.

                          _____
                          HON. JAMES E. BOASBERG
                          United States District Judge

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

WP COMPANY LLC d/b/a THE
WASHINGTON POST, BLOOMBERG
L.P., DOW JONES & COMPANY, INC.,
PRO PUBLICA, INC., THE NEW YORK
TIMES COMPANY, AMERICAN
BROADCASTING COMPANIES, INC.
d/b/a ABC NEWS, AMERICAN CITY
BUSINESS JOURNALS, CABLE NEWS
NETWORK, INC., NBCUNIVERSAL
MEDIA, LLC d/b/a NBC NEWS, THE
ASSOCIATED PRESS, THE CENTER FOR
INVESTIGATIVE REPORTING
d/b/a REVEAL,

                         *Plaintiffs,*

        v.

U.S. SMALL BUSINESS
ADMINISTRATION,

                        *Defendant.*

Case No. 1:20-cv-01240
(*JEB*)

---

**DECLARATION OF ERIC S.  BENDERSON**
**IN SUPPORT OF SBA's**
**SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

I, Eric S. Benderson, hereby declare and state the following, pursuant to the provisions of 28 U.S.C.

§ 1746.

       1.  At all times relevant to this lawsuit, I have served as the Associate General Counsel for

Litigation in the Office of General Counsel and the Chief FOIA Officer at the U.S. Small Business

Administration ("SBA"), located at 409 3rd Street, SW, Washington, DC 20416.  The statements

contained in this Declaration are based upon my personal knowledge, information provided to me

1

in my official capacity, and conclusions and determinations reached and made in accordance therewith.

2.   As the Associate General Counsel for Litigation, I am responsible for directly managing and supervising all litigation involving the Administrator, SBA, and its officials in their official capacities relating to SBA's loan programs, government contracting programs, Freedom of Information Act ("FOIA"), and the Privacy Act, and other diverse areas of legal issues.  I also serve in the capacity of SBA's Chief FOIA Officer. As such I am responsible for the Agency's compliance with the FOIA.  The specific duties of this position are set forth in the FOIA at 5 U.S.C. § 552(j).

### PPP and Data Releases

3.   SBA financial assistance to a small business under Section 7(a) of the Small Business Act, 15 U.S.C. § 631 *et seq*., may take the form of a direct loan, an immediate participation (joint) loan with a lender, or a deferred participation (guaranteed) loan initiated by a lender but a portion of which the SBA will purchase from the lender in the event of a borrower default.  In practice, the SBA ordinarily guarantees loans made by private lenders rather than disbursing funds directly to borrowers.  That reduces lender risk and increases borrower access to capital.

4.   The instant supplemental summary judgment motion concerns SBA's withholding under FOIA of certain information regarding loans under the Paycheck Protection Program ("PPP"), enacted as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), to extend relief to small businesses nationwide experiencing economic hardship as a result of the public health measures being taken to minimize the public's exposure to the COVID-19 virus.  Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286-94 (2020) (codified at 15 U.S.C. § 636(a)). The administrative proceedings on Plaintiffs' FOIA requests for PPP and Economic Injury

Disaster Loan ("EIDL") Program loan data underlying the claims in this action are described in the first Declaration of William Manger (Doc. 15), and the second Declaration of William Manger (Doc. 20-2), which SBA previously filed in this action.

5. On June 29, 2020, this Court ordered: "By July 13, 2020, Defendant shall issue a final response to all FOIA requests" from Plaintiffs, "and produce any responsive non-exempt records."

6. On July 6, 2020, SBA released detailed information on each of the 4.9 million PPP loans that had been made up to that point. The loan-level data included the following fields: city, state, ZIP code, NAICS code;[1] business type; race/ethnicity; gender; veteran status; nonprofit status; jobs reported as retained; date approved; lender; and congressional district. For loans of $150,000 or more, it also included business names and street addresses, and loan amounts expressed in ranges (not precise values) as follows: $150,000 to $350,000; $350,000 to $1 million; $1 million to $2 million; $2 million to $5 million; $5 million to $10 million. For loans of less than $150,000, the loan-level data also included the precise value of the PPP loan, but not the business name or street address.

7. SBA withheld the names and street addresses of the smaller borrowers under FOIA Exemption 6, and the precise amounts of the larger loans under FOIA Exemption 4. The data fields described above constituted all of the loan information that was known to my office at the time of the parties' briefing and before the Court's decision on summary judgment.

---

[1] The North American Industry Classification System (NAICS) code is a self-assigned code that best fits a business's primary industry. For example, barber shops are assigned NAICS code 812111, while beauty salons are assigned NAICS code 812112, and nail salons are assigned NAICS code 812113.

8.  On November 5, 2020, this Court denied SBA's summary judgment motion and ordered SBA to "release the names, addresses, and precise loan amounts of all individuals and entities that obtained COVID-related loans pursuant to the Paycheck Protection Program."

9.  Pursuant to this Court Order, on December 1, 2020, SBA released publicly on its FOIA website the Paycheck Protection Program ("PPP") data.  The data fields released at this time were: borrower name, borrower address, loan amount, loan approval date, lender name, NAICS code, business type, race or ethnicity, gender, veteran status, non-profit status, congressional district, and jobs reported.

10.  My office subsequently learned that SBA's electronic loan processing system, E-Tran, might contain other PPP loan data fields.  E-Tran is the system used by lenders to input loan information on individual borrowers, and is used across all SBA loan programs, including PPP.

11.  After initial inquiry into the other PPP loan data fields, SBA (through counsel) informed Plaintiffs' counsel by e-mail on December 23, 2020 that, "as we have recently learned, the Small Business Administration's database for PPP loans contains some data fields that were not produced in response to your clients' FOIA requests."  The email also said that "[w]e are investigating further, and expect that any responsive, non-exempt information contained in these additional data fields will be released by the SBA next week."

12.  Although the further investigation took longer than initially expected, on January 25, 2021, SBA released 35 additional PPP loan data fields on its website.  The fields newly released were the following: loan number, SBA originating office code, processing method, loan status date, loan status, term, SBA guaranty percentage, initial approval amount, current approval amount, undisbursed amount, franchise name, servicing lender location ID, servicing lender address, servicing lender city, servicing lender state, servicing lender zip code, rural urban

indicator, HubZone indicator,[2] LMI indicator,[3] business age description, project city, project county name, project state, project zip code, utilities proceeds, payroll proceeds, mortgage interest proceeds, rent proceeds, refinance EIDL proceeds, healthcare proceeds, debt interest proceeds, originating lender location ID, originating lender, originating lender city, originating lender state.

13.   That same day, SBA issued a letter to Plaintiffs, stating that SBA had "now published the[se] nonexempt records, which are responsive to at least some of the FOIA requests at issue in" this case.  A true and correct copy of this letter is attached as Exhibit A.

14.   SBA explained that it was withholding certain other records, and invoked FOIA Exemptions 4 and 6 as the basis for the withholdings.

15.   First, SBA withheld five data fields related to loan status, in whole or in part, under FOIA Exemption 4.  These fields were: loan status, loan status date, outstanding balance, and two substantively identical (though differently labelled) fields which identify the SBA office servicing the loan.

16.   Second, and also pursuant to Exemption 4, SBA withheld the data field containing the D-U-N-S Number associated with each loan (provided by Dun & Bradstreet, Inc.).  Dun & Bradstreet is a contractor for SBA that, for a fee, provides access to and a limited right to use those numbers, which are unique numerical identifiers for businesses.  Under the terms of the SBA's license agreement with Dun & Bradstreet, D-U-N-S Numbers are proprietary to Dun & Bradstreet.

17.   Third, SBA also withheld the data field containing the Tax Identification Number of each PPP borrower, pursuant to Exemption 6.  Social Security Numbers are exempt from

---

[2] The HubZone indicator is an indicator of whether the business is in a Historically Underutilized Business Zone.

[3] The LMI indicator is an indicator of whether the business is in a low-to-moderate income business area.

disclosure.  Employer Identification Numbers are not similarly exempt, but as explained below, in the database at issue here they cannot be reliably segregated from Social Security Numbers.

18.  The withholdings are explained at greater length below.  SBA has disclosed, through the data releases on its website, any reasonably segregable non-exempt parts of the records in dispute after withholding exempt information.

**FOIA Exemption 4**

19.  Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

20.  Pursuant to Exemption 4, SBA withheld in part the data fields "LOANSTATCD" and "STATUS," which describe (first as a code, and then in text) the status of each PPP loan.  For each loan, those fields indicate one of the following statuses: current, disbursed; past due, disbursed; delinquent, disbursed; in liquidation, disbursed; lender deferred, disbursed; paid in full;; active undisbursed; and charged off.  SBA released the statuses "paid in full," which is self-explanatory, and "charged off," which indicates that the agency has not been able to collect the full amount due on the loan, and has abandoned its efforts to do so.  SBA also released the status of "active undisbursed" loans.  SBA withheld the other statuses, for reasons explained below.  SBA also withheld in part the data field "LOANSTATDT," which records the date associated with the status reported for that loan.  SBA released the dates associated with the loan statuses that it released, and withheld the rest.  Because "LOANSTATDT" records the date on which a loan entered its present status, and PPP loans begin their lifecycle as "current, disbursed," a recent "LOANSTATDT" for a loan issued some time ago would indicate that the loan was now or had once been "past due, disbursed"; "delinquent, disbursed"; "in liquidation, disbursed"; or "lender

6

deferred, disbursed".  SBA therefore withhold these dates for the same reasons that it withheld those loan stauses, which is explained at greater length below.

21.  SBA withheld in full the following data fields: "OUTBALAMT," which records the balance outstanding on that loan; and "PRCSOFCCD" and "SERVOFCCD."  SBA used to refer to the agency office that manages the loan as the "processing office," but now refers to it as the "servicing office."  Despite the difference in terminology, the "processing office" and the "servicing office" indicate the same agency office.  The fields "PRCSOFCCD," which indicates the internal code for the SBA processing office, and "SERVOFCCD," which indicates the internal code for the SBA servicing office, therefore contain identical information despite their separate labels.  SBA withheld these fields in full because their release would reveal protected information about the status of the loan.

22.  SBA made the withholdings in compliance with its FOIA regulations.  In title 13, part 102 of the Code of Federal Regulations, SBA includes in its list of "Information Generally Exempt From Disclosure" the "[n]on-statistical information on defaults, delinquencies, losses etc.," and "[l]oan status, other than charged-off or paid-in-full."  This list appears in Appendix A to subpart A of part 102, a copy of which is attached as Exhibit B.  SBA added that appendix in 2017 to "list the type of records that SBA typically releases or withholds."  Record Disclosure and Privacy— Direct Final Rule, 82 Fed. Reg. 46369, 46370 (Oct. 5, 2017).  The appendix was effective January 1, 2018, and it codified a long-standing practice of withholding loan status information other than charged-off or paid-in-full, or statistical information, which had been SBA's policy as stated in its Standard Operating Procedures ("SOP") since at least 2004.  *See* SOP 40 03 3 (August 4, 2004).

23.  As of January 24, 2021, SBA had approved 5,550,486 PPP loans, corresponding to a total lender count of 5,448.  SBA, Paycheck Protection Program (PPP) Report at 2, at

https://www.sba.gov/sites/default/files/2021-01/PPP_Report_2021_01_24-508.pdf SBA lacks the means or resources to ask each borrower or each lender about their individual expectations regarding the privacy of interim loan status information.  Instead, SBA has relied on what has long been the agency's understanding:  Borrowers and lenders alike regard the potential default status of a loan as confidential information.  There are significant practical reasons why borrowers and lenders would maintain the confidentiality of loan status information, such as whether a borrower missed a loan payment.  For example, if improperly disclosed and disseminated, that sort of detail about the borrower's relationship with the lender could be misconstrued by non-parties to the loan as a sign of a borrower's financial weakness, which could lead the borrower's other creditors to take actions adverse to the borrower.  Disclosure of such facts also could lead the borrower's business competitors to capitalize on a perception of weakness by, for example, trying to woo away the borrower's customers.   Indeed, under common law decisions well predating the establishment of the SBA, a borrower could in certain circumstances assert a tort claim against the lender if the lender improperly publicized factual assertions about the borrower's delinquency on a loan.

24.  SBA's longstanding policies restricting disclosure of loan status information reflect the agency's understanding that borrowers and lenders regard the information as confidential. Historically, SBA has never released the loan status of its 7(a) or 504 loans, [4] except for the final disposition of a loan—that is, either "paid-in-full" or "charged off."  As set forth in SBA's Standard Operating Procedure ("SOP") regarding Disclosure, which is available on SBA's website,

---

[4] The 504 Loan Program provides long-term, fixed rate financing of up to $5 million for major fixed assets that promote business growth and job creation.  The 504 loans are available through Certified Development Companies (CDCs), community-based partners who regulate nonprofits and promote economic development within their communities. *See* 13 C.F.R. 120.800.

information SBA finds generally exempt from disclosure includes "non-statistical information on defaults, delinquencies, losses, etc." *See* SOP 40 03 4, Appendix C (May 12, 2018), attached in pertinent part as Exhibit C. Because a loan status may change over the lifetime of the loan, it has long been SBA's position that only the ultimate classification of the loan by the parties to the loan agreement—whether paid in full or charged off—is information that should be released to the public.

25.  SBA has traditionally disclosed such final loan status information—*i.e.*, whether the loan is "charged-off or paid-in-full"—because of the connection between the final loan disposition and SBA's own financial obligations. By contrast, a lender's characterization of the borrower as being "delinquent" or in "default" is not a reliable indicator of SBA's ultimate financial obligation. For example, a single missed payment by a borrower could, depending on the particular provisions of the loan agreement, lead the lender to classify the borrower as being in "default," but if the duration of the loan is sufficiently long, the borrower may be able to make up the missed payment so that there is no consequence to SBA of either the missed payment or the "default" designation flowing from that missed payment. In this scenario, if SBA were to release the borrower's loan status as provided by the lender via SBA's standard Form 1502, even if the default were based only on a payment late by one month, and the borrower then became current the following month, the borrower could be harmed by the disclosure, which would not provide nonparties a true picture of SBA's publicly-funded obligation on its guaranty of the loan. Such an example is set forth in SBA's Standard Operating Procedure on Loan Servicing and Liquidation, SOP 50 57 2 7(a), at p. 33.

26.  Congress placed the PPP under Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a). In particular, the CARES Act explicitly authorized the SBA Administrator to guarantee

PPP loans "under the same terms, conditions, and processes" as 7(a) loans. *Id.* § 636(a)(36)(B). Under that general authority to adhere to the "same terms, conditions, and processes" for PPP loans as for 7(a) loans, SBA has continued to follow its SOP on Disclosure, and its FOIA and other pertinent regulations published in the C.F.R., in administering PPP loans. Reporting and loan servicing processes for the PPP therefore are largely consistent with pre-existing processes under the 7(a) program.

27. PPP borrowers are required in the application process to complete SBA Form 2483, which contains, on page 4, a disclosure statement regarding FOIA. That disclosure statement does not describe "[n]on-statistical information on defaults, delinquencies, losses" or "loan status" information as information that SBA would release under FOIA. Form 2483 would not support a conclusion that SBA manifested an intention to disclose PPP loan information collected from lenders (including information collected through SBA's Form 1502), much less confidential financial information about PPP borrowers.

28. SBA requires lenders to submit Form 1502 for monthly loan reporting. SBA required PPP lenders to file SBA Form 1502 in a procedural notice. *Paycheck Protection Program Lender Processing Fee Payment and 1502 Reporting Process*, SBA Procedural Notice No. 5000-20028 (effective May 21, 2020), *at* https://www.sba.gov/sites/default/files/2020-05/5000-20028.pdf. Form 1502 is a Microsoft Excel spreadsheet containing identifying information for each PPP loan. An SBA Form 1502 spreadsheet is available at https://colsonservices.bnymellon.com/_locale-assets/xls/sba-form-1502-blank-template.xlsx. The lender must include all loans in regular servicing status and all pre-guaranty purchase loans in liquidation status in its Form 1502, which the lender must submit on a monthly basis through SBA's Fiscal and Transfer Agent, Colson

Service Corp.  *See* SBA Form 1502 and Instructions, https://www.sba.gov/document/sba-form-1502-sba-form-1502-instructions.

29.     If a borrower falls more than 60 days behind on any 7(a) or PPP loan payment then, the lender "may demand in writing that SBA honor its guarantee" and purchase a specified portion (for the 7(a) program) or the entirety of the loan (for PPP).  13 C.F.R. § 120.520(a)(1).  In the 7(a) program, that portion is typically 75% or 85% of the total value of the loan.

30.     For all loans SBA has purchased, lenders must provide SBA with a written status report every 6 months, starting with 6 months from the date of purchase, until the lender has provided evidence sufficient to SBA that the loan is resolved.  SOP 50 57, at p..28.

31.     Significant portions of the information SBA collects from ordinary 7(a) lenders fall within two categories of information identified in SOP 40 03 4, Appendix C, and in Appendix A to 13 C.F.R. Part 102, Subpart A—namely, "[n]on-statistical information on defaults, delinquencies, losses etc.," or "[l]oan status, *other than* charged-off or paid-in-full."

32.  After the SBA's purchase, the lender continues to service the loan and submits periodic reports to SBA on the status of the loan.  When the lender concludes that there is little or no likelihood of any further recovery, it submits a "wrap-up" report for SBA's approval.  If SBA approves that report, it proceeds to charge-off the remaining loan balance as a bad debt.  SBA then refers any portion of the loan that is still legally collectible to the United States Department of the Treasury for any further collection efforts.

33.  PPP loans are different from 7(a) loans in several meaningful ways, most important of which is that many of these loans will be forgiven entirely under Section 1106 of the CARES Act.

*See* 15 U.S.C. § 9005.[5]  Loan forgiveness is not a benefit available to a borrower on a 7(a) loan, but instead that benefit is unique to a PPP loan, whose function under the CARES Act and subsequent legislation is to provide small enterprises with financial support necessary to preserve employment while continuing to operate during the dire economic conditions resulting from the pandemic.

34.  All fully forgiven PPP loans would be reflected as "paid in full" on the Form 1502. SBA Procedural Notice No. 5000-20091, Feb. 8, 2021, Second Updated Paycheck Protection Program Lender Processing Fee Payment and 1502 Reporting Process (sba.gov).

35.  SBA is currently processing PPP forgiveness applications submitted by lenders on behalf of borrowers seeking loan forgiveness.  The amount of forgiveness of a PPP loan depends on the borrower's payroll costs over an 8-week or 24-week period, starting on the date the lender makes a disbursement of the PPP loan to the borrower.  About 36 percent of loans have completed the forgiveness process, representing about 32 percent of total 2020 PPP volume (as of March 4, 2021).

36.  SBA will generally forgive any portion of the loan that is used for covered purposes in the 24 weeks after the loan is made.  15 U.S.C. § 9005(a)(3) & (b).  After that period ends, a PPP borrower has ten months to apply for forgiveness, and if the borrower applies for forgiveness

---

[5] The Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act, enacted on December 27, 2020 (Economic Aid Act) (Pub. L. 116-260), reauthorized lending under the PPP through March 31, 2021.  The Economic Aid Act added a new temporary Section 7(a)(37) to the Small Business Act, which authorizes SBA to guarantee additional PPP loans (Second Draw PPP Loans) to eligible borrowers under generally the same terms and conditions available under Section 7(a)(36) of the Small Business Act through March 31, 2021.  The Economic Aid Act also redesignated Section 1106 of the CARES Act as section 7A of the Small Business Act, to appear after section 7 of the Small Business Act.

in that timeframe it is entitled to complete deferment of any payments that would be due on its

loan until SBA adjudicates its application for forgiveness.  *Id.* § 636(a)(36)(M)(ii)(II) & (v).

37.  If a PPP borrower fails to apply for forgiveness or the loan is not forgiven, in full or in

part, the PPP loan has a maturity date of either 2 years or 5 years depending on when the loan was

processed.

38.  If a loan balance remains after forgiveness, the lender must report the reduction in the

loan balance for the forgiveness amount on the next SBA Form 1502 report and must service the

remaining balance of the loan in accordance with PPP requirements.  SBA Procedural Notice No.

5000-20091, Feb. 8, 2021, Second Updated Paycheck Protection Program Lender Processing Fee

Payment and 1502 Reporting Process (sba.gov).

39.  As of the filing of the instant declaration and summary judgment motion, many loans

are designated as "current", because of the deferral period described above.

40.  The harms that could result for a PPP borrower from improper disclosure of interim

loan information are obvious and serious.  As explained, such a disclosure would be contrary to

the reasonable expectations the borrower would form from review of SBA's FOIA regulations and

SOP, which explicitly describe SBA's commitment to preservation of confidential loan status

information other than charged-off or paid-in-full final disposition.  Even worse, the borrower's

other creditors could mistakenly infer from a "delinquent" designation that the borrower does not

deserve extensions of credit.  Moreover, the borrower's business competitors could seek to exploit

such a designation by using it to erode customer confidence in the borrower.  It is precisely to

avoid such harms that the common law in certain circumstances recognized a tort cause of action

by a borrower against a lender for improper disclosure of debt-status information.

41.  The borrower's expectation of confidentiality regarding interim loan status information is reinforced by the lender's reciprocal obligations to maintain confidentiality under SBA's Lender Oversight regulations, which proscribe disclosure of confidential information obtained for the purposes of SBA's lender oversight and portfolio management activities.  *See* 13 C.F.R. 120.1060.  SBA's Standard Operating Procedures are requirements imposed upon all lenders in addition to SBA's regulations, Federal Register notices, and official SBA notices.  The loan program requirements are codified at 13 C.F.R. §120.10 *et seq*.  Loan Program Requirements are requirements imposed on lenders by, among other things, the SOPs.  *See* 13 C.F.R. § 120.10 (definition of Loan Program Requirements).

42.  SBA is responsible for monitoring, reviewing, and regulating SBA lenders.  13 C.F.R. §120.1000.  Form 1502 is an important tool through which SBA accomplishes such monitoring.  A lender submits Form 1502 on the understanding, drawn from 13 C.F.R. 120.1060, that the information contained in it is confidential, and through that regulation (as well as SBA's SOP provisions on Disclosure, described above), SBA has provided an assurance that it will maintain that confidentiality.  The lender has a duty to protect the financial information of its customer (the borrower).  In addition, the lender has its own interest in preserving confidentiality, because Form 1502's contents may, if disclosed, allow a lender to derive unfair advantage over other SBA lenders by acquiring information about how its loan portfolio is performing in comparison to those other SBA lenders.  *See* SOP 50 10 6, p. 24 (describing use of lender portal).

43.  The lender's obligation to maintain the confidentiality of Form 1502's contents also arises from the procedures governing SBA's lender "Portal."  Under SOP 50 53 02 (Jan. 21, 2021), SBA communicates its assessment of lender performance to individual 7(a) lenders

14

through that Portal.  Before a lender can receive a PPP processing fee or begin monthly loan

reporting, it must establish a Portal account.  *See* SBA Procedural Notice: Updated PPP Lender

Processing Fee Payment and 1502 Reporting Process.  The Portal contains summary

performance data and credit quality data.  Summary performance data is largely derived from

data that 7(a) lenders provide to SBA through SBA Form 1502.

44.  SBA's regulations prohibit an SBA lender from disclosing confidential information

contained in the lender portal.  *See* 13 C.F.R. 120.1060(b).  For its part, confidential information

is defined as follows:  "all the SBA Lender-related information/data contained in the Lender

Portal except the dollar amounts associated with SBA purchase of and charge off of SBA

Lender's loans and information already publicly available related to the Lender's capital,

nonperforming assets, and regulatory actions (*e.g.,* from a bank's public Call Report).

Confidential Information also includes any information related to SBA's supervision of the SBA

Lender (*e.g.,* review or corrective action correspondence) and any actions taken by SBA related

to enforcement (*e.g.,* informal enforcement actions as defined in SOP 50 53 or by regulation,

notices of proposed enforcement action) unless made public by SBA (*e.g.,* in a Cease and Desist

Order)."  86 Fed. Reg. 9562, 9567 (Feb. 16, 2021).  Because the performance data is derived

from SBA Form 1502, the information contained in the form is encompassed in this prohibition

on disclosure.

45.  SBA does release information on loans that have been charged off and paid-in-full,

which it distinguishes from those loans statuses that are reported in Form 1502 as current, past

due, delinquent, or in default.  Charge-off is an administrative action in which the agency

reclassifies a loan from "liquidation" to "charge-off" status, and the agency removes the

outstanding balance of the loan from its accounting records.  Prior to being charged off or paid-in-full, the lender reports loan status to SBA.

46.  When a loan reaches a point at which the lender concludes there is little or no likelihood of recovery, the lender submits a wrap-up report for SBA's approval.  The wrap-up report is the last submission the lender makes to SBA regarding a loan.  When SBA approves the wrap-up report, SBA proceeds to charge-off the remaining loan balance.  At that point, SBA refers any loan that is still legally collectible to the United States Department of the Treasury for further collection efforts.

47.  The charge-off effectively ends the lender's involvement with the loan.  Following charge-off, the lender no longer reports on the loan through Form 1502.  Once the loan has reached its final disposition and is no longer an active loan subject to continuing Form 1502 reporting, there is no expectation of confidentiality, because ongoing reporting has ended.

48.  After charge-off, a loan is classified as a federal debt.  SBA is responsible for reporting the entire amount of all loans that SBA has charged-off to the appropriate credit reporting bureaus, and is also responsible for reporting charged-off debt to Federal Government delinquent debtor databases, such as the "CAIVRS" (the U.S. Department of Housing and Urban Development Credit Alert System) and "Debt Check" (Treasury Offset Program) databases.  *See* 7(a) Loan Servicing and Liquidation, SOP 50 57 02, Dec. 1, 2015.

49.  Numerous related statutory and regulatory provisions reinforce SBA's conclusion that interim loan status information is properly exempt from FOIA disclosure.

50.  First, consider the Privacy Act of 1974 (5 U.S.C. 552a), as amended, which governs the means by which Federal agencies collect, maintain, use, and disseminate individuals' personal information.  The Privacy Act applies to records about individuals that are maintained in a "system

of records." A system of records is a group of any records under the control of a Federal agency from which information is retrieved by the name of an individual or by a number, symbol, or other identifier assigned to the individual. The Privacy Act requires each Federal agency to publish in the Federal Register a System of Records Notice ("SORN") identifying and describing each system of records the agency maintains, the purposes for which the agency uses the Personally Identifiable Information ("PII") in the system, the routine uses for which the agency discloses such information outside the agency, and how individuals can exercise their rights related to their PII information. SBA 21 is a SORN pertaining to loan files, and sets forth the approved routine uses of individual borrower information. *SBA 21—Loan System*, *at* https://www.govinfo.gov/content/pkg/PAI-2017-SBA/xml/PAI-2017-SBA.xml#sba21. Under the routine use described at subdivision (*o*), release of "delinquent debt information of persons delinquent in paying a debt owed to or guaranteed by the SBA" is only shared with other government agencies for the purpose of collecting a debt or for reporting purposes. That SORN provision would not lead an individual borrower to form the expectation that interim delinquent debt information on a PPP loan would generally be disclosed outside the Government under FOIA.

51. Second, consider the Right to Financial Privacy Act, 12 U.S.C. § 3403. The information reported on the Form 1502 is properly considered a "financial record" under that statute, which prohibits financial institutions from providing the Government access to or copies of information contained in the financial reports of any customer except in accordance with that statute. A financial institution may provide a financial record to the Government for purposes of processing an application for assistance in the form of a Government loan or loan guaranty and to carry out its responsibilities under the loan or loan guaranty. Therefore, while SBA is allowed access to the borrower information under the Right to Financial Privacy Act, it would be

inconsistent with the Right to Financial Privacy Act to conclude that SBA's access entails release of that borrower information to nonparties through FOIA.

52. Third, consider the Federal Credit Reform Act of 1990 ("FCRA"), 2 U.S.C. § 661 *et seq*. If SBA were to release a loan status reflecting past due, delinquent or default of the recipients of PPP loans, borrowers could be denied an application for credit or employment, or have another adverse action taken against them based on their PPP loan status. Existing laws protect consumers from these types of adverse actions by restricting how credit reports can be used and released to third parties. 15 U.S.C. §1681b. These protections provide the consumer with the right to dispute the credit report, and they limit access to the report to only those with a valid need to know its contents. At least as to those PPP borrowers who qualify as consumers protected by the FCRA provisions described, SBA release of any adverse information regarding a PPP loan would certainly undermine those FCRA provisions.

53. SBA's concern about improper disclosure of PPP loan information is not simply theoretical. Entities such as the website federalpay.org have created a searchable database of all PPP borrowers that includes addresses and loan amount and calculates the estimated average payroll of those businesses. If SBA were to also release interim loan status information, that information could be made readily accessible. For example, searching an entity name through the Google search engine would lead an observer to the federalpay.org site, further undermining the integrity of consumer privacy laws and regulations.

54. For the same reasons set forth above, SBA has withheld the outstanding balance of the PPP loans, and the internal codes SBA assigns to a loan to describe the offices that processed and are servicing the loan.

55.  In the PPP program, SBA has assigned and publicly released for each loan an originating office code based on borrower zip code.  SBA's database also records a code for the agency office overseeing the servicing of the loan.  As discussed above, this code appears in two separately-titled but otherwise identical database fields, "PRCSOFCCD" and "SERVOFCCD." When a loan enters liquidation, SBA transfers oversight of the loan to a servicing office specifically designated to handle liquidations.  For loans in liquidation, releasing the servicing office code would reveal their loan status, which is exempt from disclosure for reasons discussed above.  And releasing the servicing office code of all loans that were not in liquidation would, by implication, similarly identify the loans in liquidation (*i.e.*, the loans for which a servicing office was not released).  The servicing office code is therefore protected from disclosure by Exemption 4.

56.  Similarly, SBA is withholding the outstanding balance of PPP loans.  SBA is making monthly updates to its public release of PPP loan data.  Although, by itself, the outstanding balance of a PPP loan at a given moment does not reveal the payment status of that loan, observing monthly changes to the outstanding balance would allow an interested party to deduce whether the loan was current or in arrears.  For example:  If the outstanding balance on a $100,000 loan remained constant for a number of months, then fell to $30,000, and remained at that level for a number of months, an interested part could fairly deduce that $70,000 of the principal had been forgiven, and that the borrower had then fallen behind in his payments on the remaining $30,000 that he owed. As that example illustrates, releasing the outstanding balance on each PPP loan would, over time, allow the public to deduce the status of each loan, and SBA is therefore withholding the outstanding balance information under Exemption 4.

**FOIA Exemption 8**

57.    FOIA Exemption 8 protects matters that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."  5 U.S.C.§ 552(b)(8).

58.    Two legislative purposes stand behind Exemption 8.   The primary purpose is "ensur[ing] the security of financial institutions," which could be undermined by disclosure of information containing frank evaluations of such institutions; the secondary purpose is safeguarding "the relationship between the banks and their supervising agencies."  *Consumers Union of the U.S., Inc. v. Heimann*, 589 F.2d 531, 533, 534 (D.C. Cir. 1978).

59.    SBA is an agency responsible for the regulation or supervision of financial institutions—here, the lenders that make PPP loans and file Form 1502 reports containing interim loan status information about those PPP loans.  *See* 15 U.S.C. 634, 636, 650, and 697; *see also* 13 C.F.R. § 120.1000(a) (SBA "monitors, supervises, examines, regulates, and enforces laws against" various categories of lenders).  For example, SBA's Office of Credit Risk Management (OCRM) is tasked with oversight of SBA lenders.  *See* 13 C.F.R. §120.1000.

60.    Through OCRM, SBA may conduct reviews of the SBA loan operations of SBA lenders, which includes an evaluation of a lender's loan portfolio.  *See* 13 C.F.R. §120.1050.

61.    The information contained in Form 1502 is one of the factors used in evaluating regulatory compliance, including assessment of quantitative risk factors against risk tolerance levels to produce a risk score.  *See* SOP 50 53 02, p. 14.

62.    Moreover, the underlying purposes of Exemption 8 would be served by applying it here.

63.   As to the security of a lender:  The disclosure of interim loan status information that shows, for example, that a particular bank has designated a relatively high number of PPP borrowers as being in delinquent status could be perceived as a deficiency in that bank, which could in turn undermine public confidence in that bank.  And as to the bank's relationship with SBA as regulatory agency:  Lender participation in SBA's programs, including the PPP, depends on candid and complete cooperation from all employees of the lenders, and cooperation of that sort is maintained through preservation of the information collected through Form 1502 as confidential—not through disclosure of information described in SBA's existing regulations and procedures as confidential.

64. Under FOIA Exemption 8, since the information contained in Form 1502 regarding loan status forms the basis of SBA's supervision of lender's loan portfolios, it is protected from release.

### D-U-N-S Numbers

65.   Plaintiffs have requested SBA release the D-U-N-S Number associated with each borrower, which SBA has withheld pursuant to FOIA exemption 4.

66.   D-U-N-S Numbers are provided by Dun & Bradstreet ("D&B") pursuant to  D&B's General Services Administration (GSA) Federal Supply Schedule  contract No. GS00F022DA. SBA placed task orders   73351020F0192 and 73351020F0158 on this schedule The license agreement included in the task orders states that "DUNS Numbers are proprietary to and controlled by D&B.  D&B grants Customer a non-exclusive, perpetual, limited license to use D-U-N-S® Numbers (excluding linkage D-U-N-S® Numbers) solely for identification purposes and only for Customer's internal business use."  In a letter to me, at SBA's request, D&B has provided a further

description of the system and the license agreement binding on SBA.  A true and correct copy of the D&B Letter to me is attached as Exhibit D.

67.   SBA is contractually bound by the terms of the agreement and is not at liberty to disclose the numbers publicly on its website.  The terms of the license agreement demonstrate that D&B's assignment of a D-U-N-S Number was intended to be confidential and that SBA agreed to treat it as confidential.

68.   While D-U-N-S Numbers may be retrieved on D&B's own website by looking up each entity individually and providing an email address, D&B restricts the number of requests per email address.  This individual-request-based disclosure is vastly different from a bulk release of over 5 million D-U-N-S Numbers, which would upend D&B's management of its proprietary system and sale of its product.  A request for more than a *de minimis* quantity of D-U-N-S Numbers would require a subscription with D&B for such information.

## FOIA Exemption 6—TaxID

69.  FOIA Exemption 6 provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  5 U.S.C. 552(b)(6).  Social security numbers have long been held as protected from release under FOIA exemption 6 due to the strong privacy interest in one's own social security number and the risk of identity theft if released.

70.   SBA withheld the tax identification numbers (TINs) of PPP borrowers under Exemption 6.  For individual borrowers, this was a social security number (SSN); for other businesses, it was an employer identification number (EIN), the nine-digit number issued by the IRS to identify tax accounts of business entities.

71.     The original PPP application form included a free-text field titled "Business TIN (EIN, SSN)."  A true and correct copy of the original application form is attached as Exhibit E.  The current PPP application form includes a free-text field titled "Business TIN (EIN, SSN, ITIN)."  A true and correct copy of the current application form is attached as Exhibit F.  For ease of analysis, I discuss the original application form only, though this explanation applies with equal force to all versions of the form.

72.     Both EINs and SSNs are nine-digit unique numerical identifiers.  EINs are typically written with a single dash after the second digit (*e.g.*, 12-3456789), while SSNs are usually written with dashes after the third and fifth digits (*e.g.*, 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).  But absent that indication, there is no way to tell from a string of nine digits whether the number is an EIN or SSN.

73.     The PPP application form did not provide any way for a borrower to indicate whether he was providing an EIN or SSN, apart from the placement of one or two dashes in the usual positions.  Because "Business TIN" was a free-text field, the applicant was free to enter the nine-digit number without any dashes at all.

74.     Lenders transmitted information from the PPP application form to SBA through an electronic interface known as "E-Tran."  The interface required lenders to input an applicant's Business TIN as a string of nine digits without dashes, and then to check a box indicating whether the number being submitted was an EIN or SSN.  But because the PPP form did not require the applicant to indicate which type of identification number was being provided, lenders checking the box in E-Tran were often forced to guess whether they were submitting an EIN or SSN with the loan application.

75.     Inevitably, some lenders must have guessed incorrectly, and others must have made a manual error and inadvertently failed to check the box that they intended.  As a result, SBA

reasonably believes that some of the identification numbers recorded as EINs in its PPP loan database are in fact SSNs, and vice versa.  SBA has no way to check or correct for such errors.  If SBA were to release those numbers in mass identified by the lender as EINs, it would almost certainly result in an erroneous release of numerous social security numbers.

76.  In weighing the public interest in disclosure against the privacy interest of PPP loan borrowers, it is appropriate to consider the extent to which there are alternative sources of information available that could serve the public interest in disclosure.  As SBA has now released the names, addresses, and loan numbers for the borrowers, as well as the sixty plus additional fields listed above, there can be no additional public interest served in the release of EINs and SSNs, and in fact, Plaintiffs have not asserted any such public interest whatsoever.

77.  Because of this, SBA has determined that the privacy interest in non-disclosure of social security numbers because of the Agency's inability to separate SSNs from EINs greatly outweighs any public interest the disclosure of those numbers may have.  As the EINs and SSNs are not readily identifiable as one or the other, and there is no means of segregating the information without great risk of releasing SSNs, SBA finds that withholding this field is appropriate under the FOIA.

78.  If in fact, SBA were to inadvertently release SSNs, it would be violating the Privacy Act of 1974, 5 U.S.C. 552a, which prohibits disclosure of information about an individual in a system of records to a third party without that individual's consent.

\*       \*       \*       \*       \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of March 2021.

Eric S. Benderson