James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

Attorney for Defendant
U.S. SMALL BUSINESS ADMINISTRATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>Plaintiff,<br><br>v.<br><br>U.S. SMALL BUSINESS ADMINISTRATION,<br><br>Defendant. | Case No. 3:20-cv-04619-MMC<br><br>**MEMORANDUM IN OPPOSITION TO MOTION FOR ATTORNEY FEES**<br><br>Hearing Date: May 26, 2023, 9:00 am<br><br>Location: Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA<br><br>Judge: Honorable Maxine M. Chesney |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF ISSUES ...................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ............................................................................................................................ 8

    A.   ASBL has not shown eligiblity and entitlement to a fee award for any of its requests. ...... 8

       i.   Advisory Committee Records ............................................................................................ 8

       ii.   PPP Loan Data .......................................................................................................... 11

       iii.  Communications with Congress and the White House .................................................. 14

    B.   ASBL's request for an award of more than $500,000 is entirely unreasonable. ............... 19

       i.   PPP Loan Data ............................................................................................................ 21

       ii.   Advisory Committee Records ..................................................................................... 23

       iii.  Communications with Congress and the White House ................................................. 24

       iv.  Summary ................................................................................................................. 25

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*ACLU Immigrants' Rights Projects v. U.S. Immigration & Customs Enforcement*,
  2018 WL 488997 (N.D. Cal. Jan. 19, 2018) ................................................................21

*Am. Bird Conserv. v. U.S. Fish & Wildlife Serv.*,
  110 F. Supp. 3d 655 (E.D. Va. 2015) ..........................................................................8

*Church of Scientology of California v. U.S. Postal Serv.*,
  700 F.2d 486 (9th Cir. 1983) ...............................................................................10, 13

*Cotton v. Heyman*,
  63 F.3d 1115 (D.C. Cir. 1995) ....................................................................................10

*Farrar v. Hobby*,
  506 U.S. 103 (1992) .....................................................................................................19

*First Amendment Coalition v. Department of Justice*,
  878 F.3d 1119 (9th Cir. 2017) .......................................................................12, 13, 18

*Gerstein v. CIA*,
  2008 WL 4415080 (N.D. Cal. Sept. 26, 2008) ...........................................................22

*Grand Canyon Trust v. Zinke*,
  311 F. Supp. 3d 381 (D.D.C. 2018) ............................................................................11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...............................................................................................19, 24

*Hiken v. Dep't of Defense*,
  836 F.3d 1037 (9th Cir. 2016) ............................................................................ *passim*

*In re Smith*,
  586 F.3d 1169 (9th Cir. 2009) ....................................................................................24

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
  470 F.3d 363 (D.C. Cir. 2006) ....................................................................................19

*King v. Dep't of Justice*,
  830 F.2d 210 (D.C. Cir. 1987) ....................................................................................22

*Kopp v. U.S. Secret Serv.*,

    2019 WL 2327933 (N.D. Cal. May 31, 2019) ............................................21

*Long v. IRS*,

    932 F.2d 1309 (9th Cir. 1991) ...............................................................7, 19

*Moreno v. City of Sacramento*,

    534 F.3d 1106 (9th Cir. 2008) ....................................................................24

*NRDC v. EPA*,

    No. 08-1429 (PLF), 2009 WL 1767570 (D.D.C. June 23, 2009) ................22

*Poulsen v. Dep't of Defense*,

    994 F.3d 1046 (9th Cir. 2021) ...................................................................7, 9

*Role Models Am., Inc. v. Brownlee*,

    353 F.3d 962 (D.C. Cir. 2004) ....................................................................20

*Rosenfeld v. DOJ*,

    904 F. Supp. 2d 988 (N.D. Cal. 2012) ........................................................23

*Rosenfeld v. U.S. Dep't of Justice*,

    903 F. Supp. 2d 859 (N.D. Cal. 2012) ..................................................10, 24

*Schoenberg v. FBI*,

    2 F.4th 1270 (9th Cir. 2021) .....................................................................7, 9

*Sierra Club v. EPA*,

    75 F. Supp. 3d 1125 (N.D. Cal. 2014) ........................................................25

*Southern California Public Radio v. SBA*,

    2021 WL 6752245 (C.D. Cal. Sept. 3, 2021) ..............................................12

*Walker v. U.S. Dept. of Hous. & Urban Dev.*,

    99 F.3d 761 (5th Cir. 1996) .........................................................................24

*Welch v. Met. Life Ins. Co.*,

    480 F.3d 942 (9th Cir. 2007) ......................................................................20

*Wiener v. FBI*,

    943 F.2d 972 (9th Cir. 1991) .......................................................................22

*Willis v. United States*,

    581 F. Supp. 2d 57 (D.D.C. 2008) ...............................................................22

*WP Co. LLC v. SBA*,

    502 F. Supp. 3d 1 (D.D.C. 2020) .................................................................3

*WP Co. LLC v. SBA*,

    514 F. Supp. 3d 267 (D.D.C. 2021) .............................................................4

*WP Co. LLC v. SBA*,

    575 F. Supp. 3d 114 (D.D.C. 2021) .........................................................5, 13

*WP Co. LLC v. SBA*,

    2021 WL 2982173 (D.D.C. July 15, 2021) ...............................................5, 13

**Statutes**

5 U.S.C. § 552 ................................................................................... *passim*

15 U.S.C. § 636 ...................................................................................1, 3

Coronavirus Aid, Relief, and Economic Security (CARES) Act,

    Pub. L. No. 116-136 (Mar. 27, 2020) ..........................................................1

The Paycheck Protection Program and Health Care Enhancement Act,

    Pub. L. No. 116-139 (Apr. 24, 2020) ..........................................................15

**Other Authorities**

*Obtain*, MERRIAM-WEBSTER DICTIONARY,

    https://www.merriam-webster.com/dictionary/obtain ...................................11

*Receive*, MERRIAM-WEBSTER DICTIONARY,

    https://www.merriam-webster.com/dictionary/receive ..................................11

## INTRODUCTION

The American Small Business League (ASBL), plaintiff in this Freedom of Information Act (FOIA) case, filed a motion for summary judgment that was later withdrawn, opposed a stay that was entered by the Court, and submitted several case management statements. For these efforts plaintiff now seeks more than half a million dollars in fees and costs. Its request should be denied or, at a minimum, reduced to a reasonable sum.

## STATEMENT OF ISSUES

The issues to be decided on this motion are 1) whether plaintiff is eligible for an award of attorney fees, 2) if eligible, whether plaintiff is entitled to such an award, and 3) if both eligible and entitled, whether plaintiff has requested a reasonable sum.

## BACKGROUND

In April 2020, ASBL submitted a FOIA request to the U.S. Small Business Administration (SBA). ASBL sought all records relating to SBA committees or advisory panels, or the members of such committees or panels, for the past six years. Declaration of Eric S. Benderson ("Benderson Decl."), ¶ 4 & Exh. A; *see id.*, Exh. E at 2 (interpreting the FOIA request). A week later, ASBL requested the names and biographies of advisory committee members, and records pertaining to any committee "established to administer the $350 billion CARES Act response to the coronavirus pandemic." *Id.* ¶ 5 & Exh. B at 3. ASBL also sought "Data showing how the appropriated funds from the CARES Act were distributed through [the] PPP program" (*i.e.*, the Paycheck Protection Program) and "Any communication between the White House, SBA, and Congress regarding requests for additional funding for the CARES Act and PPP Program." *Id.*[1]

---

[1] Section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, established the Paycheck Protection Program, see 15 U.S.C. § 636(a)(36), under which

In May 2020, the *Washington Post* and other news organizations filed a FOIA suit against SBA in the District of Columbia, seeking data on PPP loans. *WP Co. LLC v. SBA*, No. 20-cv-1240 (D.D.C. filed May 12, 2020) ("*Wash. Post*"). The terms of their requests varied, but some news organizations explicitly sought "[a]ll public data on every loan made through the [PPP]," or "all [database] fields that contain non-exempt information." Benderson Decl., Exh. C, ¶¶ 51 & 59.

On July 6, SBA released detailed information on each of the 4.9 million PPP loans made to that point. The loan-level data included the following fields: city, state, ZIP code, North American Industry Classification System (NAICS) code; business type; race/ethnicity; gender; veteran status; nonprofit status; jobs reported as retained; date approved; lender; and congressional district. For loans of $150,000 or more, it also included business names and street addresses, and loan amounts expressed in ranges (not precise values). For loans of less than $150,000, the loan-level data included the precise amount of the PPP loan, but not the business name or street address. SBA withheld the names and addresses of the smaller borrowers under FOIA Exemptions 4 and 6, and the precise amounts of the larger loans under Exemption 4. *Id.*, ¶¶ 88 & 94–111.

Following the usual practice in FOIA cases, the *Washington Post* plaintiffs identified the issues that they wished to litigate—the withholdings under claim of exemption, but not the adequacy of the search for responsive records—and SBA submitted a declaration with its motion for summary judgment, defending the challenged withholdings. *Wash. Post*, No. 20-cv-1240 (D.D.C.), ECF Nos. 14 & 15. The *Washington Post* plaintiffs responded in their cross-motion and opposition brief. *Id.*, ECF Nos. 17 & 18. The briefing began August 18 and was completed September 29. *See id.*, ECF No. 21.

---

loans guaranteed by the Small Business Administration could be forgiven after a period of time if the proceeds were used for covered purposes.

ASBL filed this suit on July 10, 2020. ECF No. 1. On September 4, it filed an early motion for partial summary judgment on its claim for "[d]ata showing how the appropriated funds from the CARES Act were distributed through [the] PPP program." Plaintiff acknowledged that SBA had not yet "informed ASBL of whether or the extent to which it intends to disclose records in response to ASBL's FOIA request," nor "whether or the extent to which it intends to withhold records or information based on FOIA exemptions, or, if so, what exemptions it believes apply." MSJ at 15 (ECF No. 20 at 21). But rather than asking the Court to order that SBA provide its response, ASBL attached SBA's filings from the *Washington Post* case to its own summary judgment motion and argued against the position that SBA had taken there. ASBL's motion focused on the names and addresses of smaller PPP borrowers and the precise amounts of larger loans, which were the issues being litigated in the *Washington Post* case. ASBL also discussed its desire to know "whether and the extent to which each borrower's PPP loan was forgiven," *id.* at 1 (ECF No. 20 at 7), though no loans had been forgiven at that time, Benderson Decl. ¶ 7. And it purported to be seeking "the same information about each and every loan approved by the SBA as part of the $650 billion Paycheck Protection Program . . . that the SBA publishes on its website about other loans made pursuant 15 U.S.C. section 636(a)," MSJ at 1 (ECF No. 20 at 7), despite the narrower terms of its FOIA request.

SBA opposed the motion as prematurely filed, and moved to stay briefing pending a decision in the *Washington Post* case. ECF Nos. 23 & 24. This Court granted the stay, and deferred its ruling on ASBL's motion for summary judgment. ECF No. 35. On November 5, 2020, the district court ruled in favor of the *Washington Post* plaintiffs, and ordered SBA to release the withheld names, addresses and loan amounts. *WP Co. LLC v. SBA*, 502 F. Supp. 3d 1 (D.D.C. 2020) ("*Wash. Post I*"). SBA made that release on December 1. The *Washington Post* plaintiffs

were awarded approximately $122,000 for successfully litigating the issue. *WP Co. LLC v. SBA*, 514 F. Supp. 3d 267 (D.D.C. 2021) ("*Wash. Post II*").

ASBL's motion for partial summary judgment, which sought the release of that same information, remained pending. ASBL maintained that its motion was not moot, because it was seeking additional information about the PPP loans. *See* Joint Status Report of Dec. 14, 2020 at 4–5 (ECF No. 39 at 5–6). SBA concluded that ASBL's FOIA request had been satisfied by the detailed information released to date—notwithstanding any attempt to expand the terms of its request in summary judgment briefing. Benderson Decl. ¶ 10; *see* Joint Status Report of Dec. 14, 2020 at 11 n.7 (ECF No. 39 at 12 n.7) (explaining that "ASBL's FOIA request does not call for the release of any additional data"). But the agency realized that such information, if it existed, would be responsive to FOIA requests litigated in the *Washington Post* case, Benderson Decl. ¶ 10, some of which explicitly sought "all [database] fields that contain non-exempt information," *id.*, Exh. C, ¶ 59. And so SBA investigated further. The agency discovered that its database contained additional data that had neither been released to the *Washington Post* plaintiffs nor withheld under claim of exemption. *Id.* ¶ 10 & Exh. F, ¶¶ 10–11.

SBA published most of the additional data in January 2021. *Id.*, Exh. F, ¶ 12.[2] But SBA informed the *Washington Post* plaintiffs that it was withholding certain data fields under claim of exemption: loan status and loan status date (which were withheld in part), outstanding balance,

---

[2] The fields newly released were the following: loan number, SBA originating office code, processing method, loan status date and loan status (which were released in part), term, SBA guaranty percentage, initial approval amount, current approval amount, undisbursed amount, franchise name, servicing lender location ID, servicing lender address, servicing lender city, servicing lender state, servicing lender zip code, rural urban indicator, HubZone indicator, LMI indicator, business age description, project city, project county name, project state, project zip code, utilities proceeds, payroll proceeds, mortgage interest proceeds, rent proceeds, refinance EIDL proceeds, healthcare proceeds, debt interest proceeds, originating lender location ID, originating lender, originating lender city, originating lender state. Benderson Decl., Exh. F, ¶ 12.

two fields that identified the SBA office servicing the loan, the D-U-N-S Number of each borrower (a unique identifier provided by Dun & Bradstreet, Inc.), and the Tax Identification Number of each PPP borrower. *Id.*, Exh. F, ¶¶ 14–17. The *Washington Post* plaintiffs again challenged SBA's withholdings, which the agency defended with additional declarations. After two rounds of summary judgment briefing, the district court upheld all of the challenged withholdings. *WP Co. LLC v. SBA*, 2021 WL 2982173 (D.D.C. July 15, 2021) ("*Wash. Post III*"); *WP Co. LLC v. SBA*, 575 F. Supp. 3d 114 (D.D.C. 2021) ("*Wash. Post IV*").

In the meantime, this Court deemed ASBL's summary judgment motion to have been withdrawn in March 2021. ECF No. 46. ASBL never filed another substantive motion, to challenge the withholdings upheld in the *Washington Post* case or anything else.

While the *Washington Post* case was being litigated, SBA continued to respond to the other portions of ASBL's FOIA requests. In May 2020, the agency provided the names and biographies of its advisory committee members. Benderson Decl., Exh. E at 2. And the agency informed ASBL that it had no records pertaining to any committees to administer CARES Act funds, because it had not established such a committee. *Id.* That left ASBL's requests for 1) all agency records relating to SBA committees or advisory panels, or the members of such committees or panels, for a six-year period, and 2) "communication[s] between the White House, SBA, and Congress regarding requests for additional funding for the CARES Act and PPP Program." As to the latter, SBA completed its production of responsive records in January 2021. *Id.*, Exh. G.

As to the former, ASBL first asked SBA to prioritize the processing of emails involving the Regional Regulatory Fairness Board and certain individuals associated with it. *Id.*, Exh. E at 2. SBA agreed to do so if ASBL would pay a processing fee, which it did under protest in February 2021. *Id.*; *see* Joint Case Mgmt. Stmt. of Mar. 19, 2021 at 5, 7 (ECF No. 45 at 6, 8). SBA

completed that production in June 2021.  Joint Case Mgmt. Stmt. of Aug. 13, 2021 at 8 (ECF No. 49 at 9).  ASBL then agreed to narrow its request to a) the prioritized Regional Regulatory Fairness Board records, b) records involving members of the SBA Advisory Committee on Veterans Affairs, and c) records involving any SBA committee and the American Small Business League itself, its founder Lloyd Chapman, the Raytheon Technologies Corporation, or Secretary of Defense Lloyd Austin.  *Id.*  ASBL paid an additional processing fee under protest in August 2021, *id.*, and the Court ordered SBA to complete its production by December 2021, ECF No. 51.

After the completion of production, the parties met and conferred and agreed to postpone summary judgment briefing several times.  In May 2022, in an effort to resolve this litigation, SBA agreed to conduct two additional email searches, and to process the documents responsive to those searches for release to ASBL.  Each search required an email address from one of the following domains: who.eop.gov, mail.house.gov, or senate.gov.  In addition, the first search required that the following four words appear anywhere in the document: health, care, enhancement, and act. The second search required that one of the following words or phrases appear somewhere in the document: shake shack, lakers, ruth's, or potbelly.  Benderson Decl., Exh. M at 1.  The parties agreed that SBA would "produce the records, or non-exempt portions thereof, *responsive to those searches*," Benderson Decl. of May 26, 2022, ECF No. 62-1 at 3, ¶ 6 (emphasis added), rather than reviewing the records for responsiveness to ASBL's FOIA request for "communication[s] between the White House, SBA, and Congress regarding requests for additional funding for the CARES Act and PPP Program."  *See also* SBA Consent Mot. at 2 (ECF No. 62 at 3) (explaining that SBA would be producing "records responsive to the New Searches").  But the parties could not agree on a processing rate for those records.  SBA filed an administrative motion, asking the Court to resolve the parties' dispute.  ECF No. 62.  The Court ordered SBA to complete its production by

1　December 1, 2022.  ECF No. 65.

2　　　After meeting and conferring further, SBA made two small supplemental releases and

3　ASBL decided not to raise any substantive challenges to SBA's handling of its FOIA requests.

4　Benderson Decl. ¶ 18.  This motion for attorney fees followed.

5　　　　　　　　　　　　　　**LEGAL STANDARD**

6　　　"A party seeking attorney fees in a FOIA action must show that it is both eligible for, and

7　entitled to, such fees." *Hiken v. Dep't of Defense*, 836 F.3d 1037, 1043 (9th Cir. 2016).  The party

8　is eligible for attorney fees if it "substantially prevailed" in the litigation by "obtain[ing] relief

9　through either . . . (I) a judicial order, or an enforceable written agreement or consent decree; or

10　(II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not

11　insubstantial."  5 U.S.C. § 552(a)(4)(E); *see Poulsen v. Dep't of Defense*, 994 F.3d 1046, 1050

12　(9th Cir. 2021).

13　　　"If a party is eligible for attorney fees, the determination of entitlement is within the sound

14　discretion of the trial court."  *Hiken*, 836 F.3d at 1043–44; *accord Schoenberg v. FBI*, 2 F.4th

15　1270, 1275 (9th Cir. 2021); *see* 5 U.S.C. § 552(a)(4)(E)(i) (a district court "may assess" fees if a

16　plaintiff substantially prevails).  "In exercising such discretion, the district court must consider:

17　'(1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from

18　disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the

19　government's withholding of the records had a reasonable basis in law.'"  *Hiken*, 836 F.3d at 1044

20　(quoting *Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991) (per curiam)).  "These factors are not

21　exhaustive."  *Schoenberg*, 2 F.4th at 1275.  "[T]he court may take into consideration whatever

22　factors it deems relevant in determining whether an award of attorney's fees is appropriate."  *Long*,

23　932 F.2d at 1313 (internal quotation omitted).

Finally, "[t]he plaintiff who has proven both eligibility for and entitlement to fees must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Id.* at 1313–14.

## ARGUMENT

**A.**     **ASBL has not shown eligiblity and entitlement to a fee award for any of its requests.**

In this case, ASBL sought three distinct groups of records. The first involved SBA advisory committees; the second concerned loan data from the Paycheck Protection Program; and the third consisted of communications with Congress or the White House. SBA's motion also refers, inappropriately, to other FOIA requests that were not litigated here. *See infra* at 20 (discussing request for records from SBA's press office). ASBL has not shown that it substantially prevailed and is entitled to attorneys' fees for any of the three groups of records at issue. *See Am. Bird Conserv. v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 664 (E.D. Va. 2015) (explaining that the source of a FOIA plaintiff's fee eligibility "is critical because it determines the universe of documents on which plaintiff may be entitled to an award of attorney's fees," and assessing entitlement to fees only where plaintiff had demonstrated fee eligibility for that group of records).

### i.     **Advisory Committee Records**

ASBL initially sought all agency records relating to SBA committees or advisory panels, or the members of such committees or panels, for the past six years. Benderson Decl. ¶ 4 & Exh. A; *see id.*, Exh. E at 2 (interpreting the FOIA request). That request was later narrowed to: a) emails involving the Regional Regulatory Fairness Board and certain individuals,[3] b) records

---

[3] ASBL requested "emails in SBA's possession regarding the Regional Regulatory Fairness Board, and all emails in SBA's possession relating to, mentioning, received by or authored by Jeffrey Koenig and Jerome Toliver (who are on Region 9 of the Regional Regulatory Fairness Board), and Dr. Alison K. Brown." Benderson Decl., Exh. E at 2.

involving members of the SBA Advisory Committee on Veterans Affairs, and c) records involving any SBA committee and ASBL itself, its founder Lloyd Chapman, the Raytheon Technologies Corporation, or Secretary of Defense Lloyd Austin. Joint Case Mgmt. Stmt. of Aug. 13, 2021 at 8 (ECF No. 49 at 9). In August 2021, the Court resolved a dispute as to the pace at which SBA would produce the second and third categories of those records, ordering that production be completed by December 17, 2021. ECF No. 51. Under Ninth Circuit precedent, *see Poulsen*, 994 F.3d at 1053, ASBL "obtained relief through . . . a judicial order" when that deadline was imposed, and therefore "substantially prevailed" on its request for advisory committee records, which makes it eligible for a fee award. 5 U.S.C. § 552(a)(4)(E)(ii).

But eligibility does not imply entitlement, which is a discretionary determination guided by four mandatory considerations. *Schoenberg*, 2 F.4th at 1275; *Hiken*, 836 F.3d at 1043–44. First, the Court must consider "the public benefit from disclosure" of advisory committee records. *Hiken*, 836 F.3d at 1044 (quotation omitted). ASBL argues that "increasing transparency about . . . the SBA's advisory boards, and the SBA's involvement with the Department of Defense (through Raytheon and Lloyd Austin)" "undoubtedly" conferred a public benefit. Mot. at 12–13 (ECF No. 74 at 16–17). But it is not clear why that would be, and ASBL never explains. What "involvement with the Department of Defense" did ASBL discover, or hope to discover? It does not say. And why does "increasing transparency about" the Advisory Committee on Veterans Affairs necessarily benefit the public? Without further explanation, any FOIA request can be described as "increasing transparency about" its subject matter. What is the public's interest in the named individuals on whom ASBL focused in its request for Regional Regulatory Fairness Board records: Dr. Alison K. Brown, Jeffrey Koenig, and Jerome Toliver? Again, ASBL offers no argument. ASBL broadly suggests that "[r]ecords between the SBA and its advisory boards

9

shed light on whether these boards are adequately representing and advocating for small businesses throughout the country," Mot. at 15 (ECF No. 74 at 19), but offers nothing to explain either what is *actually shown* by the records it received, or why it reasonably expected to find something not shown by those records. The meager assertions in its motion do not carry ASBL's burden to establish a public interest in the requested records. *See Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 865 (N.D. Cal. 2012) (explaining that "a plaintiff 'must present convincing evidence' that they are both *eligible* for an award of attorney's fees and that they are *entitled* to such an award" (quoting *Church of Scientology of California v. U.S. Postal Serv.*, 700 F.2d 486, 489, 492 (9th Cir. 1983))). ASBL does not offer a single concrete example of anything of public interest that was sought or disclosed as a result of its advisory committee requests.

Courts often analyze a plaintiff's interest in the requested records together with any commercial benefit. *Id.* at 869. Although ASBL does not appear to have a commercial interest in the advisory committee records,[4] its request for records relating to ASBL itself and its founder, Lloyd Chapman, suggest a degree of self-interest that counsels against a fee award. *See Cotton v. Heyman*, 1115, 1120 (D.C. Cir. 1995) ("When a litigant seeks disclosure for . . . personal reasons, an award of fees is usually inappropriate."). Finally, the Court must consider whether the government's withholding of the records had a reasonable basis in law. *Hiken*, 836 F.3d at 1044. But the government did not withhold these records; it was merely ordered to produce them at a faster pace than it had proposed.

Taken together, the mandatory factors weigh against an award of attorneys' fees for ASBL's litigation of its request for advisory committee records.

---

[4] ASBL cites another court's finding that there was no commercial purpose in its request for records from the SBA press office, but that request is not at issue in this case. *See infra* at 20.

###### ii. PPP Loan Data

ASBL also sought "[d]ata showing how the appropriated funds from the CARES Act were distributed through [the] PPP program." Benderson Decl. ¶ 5 & Exh. B at 3. ASBL argues that it substantially prevailed on this portion of its request for two reasons: a) because the disclosure of previously withheld names, addresses, and precise loan amounts was ordered in the *Washington Post* case, and b) because SBA later released additional data fields. Mot. at 10–11 (ECF No. 74 at 14–15). It is wrong on both counts.

As relevant here, a FOIA plaintiff has not substantitally prevailed unless it "has obtained relief through either—(I) a judicial order . . . ; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). On the plain language of that provision, ASBL did not "obtain[] relief" when the District of Columbia district court ordered SBA to release names, addresses, and loan amounts that it had previously withheld from the *Washington Post* plaintiffs. To "obtain" something is to play a role in its acquisition, "to gain or attain usually by planned action or effort." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/obtain (last visited Apr. 24, 2023). ASBL therefore did not "obtain" any relief ordered in the *Washington Post* case. The word is not synonomous with "receive," which simply means "to come into possession of," without the implication of agency. MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/receive (last visited Apr. 24, 2023). *See Grand Canyon Trust v. Zinke*, 311 F. Supp. 3d 381, 386 (D.D.C. 2018) ("Under the first prong, the claimant substantially prevails when the order changed the legal relationship between the parties, and the plaintiff was awarded some relief on the merits of his claim." (internal quotations and marks of alteration omitted)).

ASBL points to the opinion of Judge Berzon in *First Amendment Coalition v. Department*

*of Justice* for the contrary view, that "to 'obtain relief' from an agency simply means to receive the information a requestor is seeking," and argues that it therefore obtained relief through the *Washington Post* order. 878 F.3d 1119, 1131 (9th Cir. 2017). But Judge Berzon wrote only for herself; the other judges on the panel rejected her view. *Id.* at 1128.

Another district court has similarly rejected the argument that a different plaintiff prevailed because of the *Washington Post* order, in a case that ASBL's counsel litigated but does not acknowledge, *Southern California Public Radio v. SBA*, 2021 WL 6752245 (C.D. Cal. Sept. 3, 2021). The plaintiff in that case (a radio station) requested PPP loan data, filed suit in federal court, and moved for summary judgment with a brief lightly adapted from ASBL's filing here. The district court "denied [the radio station's] motion for summary judgment as premature and granted the SBA's motion to stay the case pending a ruling in *Washington Post*." *Id.* at *1. After the *Washington Post* court ordered disclosure, the radio station argued that it was a prevailing party and sought more than $128,000 in attorneys' fees. *Id.* The district court denied the motion, because "the mere fact that [the radio station] seeks the same information another court ordered the SBA turn over to a different FOIA plaintiff" did not make it a prevailing party. *Id.* at *3.

Statutory text and caselaw make clear that an order compelling the release of information in one case does not make a prevailing party out of a plaintiff seeking the same information elsewhere. Because ASBL did not "obtain[] relief through" the *Washington Post* order, 5 U.S.C. § 552(a)(4)(E)(ii)(I), it is not eligible for attorneys' fees on that basis.

ASBL also argues that it is eligible for attorney fees under 5 U.S.C. § 552(a)(4)(E)(ii)(II), because SBA's release of additional fields from its PPP loan database was "a voluntary or unilateral change in position by the agency." SBA concluded that ASBL's request for "[d]ata showing how the appropriated funds from the CARES Act were distributed through [the] PPP

program" was fully satisfied with the release of PPP borrower names, addresses and loan amounts in December 2020, pursuant to the *Washington Post* order. Benderson Decl. ¶ 10; *see* Joint Status Report of Dec. 14, 2020 at 11 n.7 (ECF No. 39 at 12 n.7). At that point, ASBL and the public knew the identity of every PPP borrower and the exact amount of each loan. But in its motion for partial summary judgment and subsequent filings, ASBL pressed for the release of other data fields that it believed to be in SBA's possession. SBA investigated, discovered the existence of such fields, and concluded they should have been produced or withheld in the *Washington Post* case. Benderson Decl. ¶ 10. It voluntarily released the non-exempt fields in January 2021, and successfully defended its withholdings, which ASBL did not challenge. *Wash. Post III*, 2021 WL 2982173 (D.D.C. July 15, 2021); *Wash. Post IV*, 575 F. Supp. 3d 114 (D.D.C. 2021).

The Ninth Circuit has established "three factors which a court should consider in determining whether the plaintiff has substantially prevailed" through a voluntary release: "(1) 'when the documents were released,' (2) 'what actually triggered the documents' release,' and (3) 'whether [the plaintiff] was entitled to the documents at an earlier time.'" *First Amendment Coal.*, 878 F.3d at 1129 (quoting *Church of Scientology*, 700 F.2d at 492). The additional PPP data fields were released in January 2021, only six months after ASBL filed suit. *Cf. id.* (finding for plaintiff where documents were released "roughly two and a half years after the lawsuit was initiated" after "abject resistance throughout the entire litigation"). The release followed ASBL's inquiries, but was triggered by SBA's conclusion that the records should have been produced in response to certain FOIA requests litigated in the *Washington Post* case. Benderson Decl. ¶ 10.

And ASBL has not shown that it was entitled to the records at an earlier time. ASBL sought "[d]ata showing how the appropriated funds from the CARES Act were distributed through [the] PPP program." When SBA released the PPP borrower identities and precise loan amounts,

ASBL (and the public at large) had complete information about the distribution of PPP funding. ASBL does not even attempt to explain how the data fields released in January 2021—such as "loan number" or "SBA originating office code"—showed the distribution of funds through the Paycheck Protection Program. To the extent that its argument rests on the "loan status" field—where SBA released information about loans that had been paid in full or charged off as bad debts, but withheld all other statuses, Benderson Decl., Exh. F, ¶ 20—as a proxy for loan forgiveness, no PPP loans had been forgiven when ASBL submitted its FOIA request or filed its summary judgment motion. Benderson Decl. ¶ 7; *see id.*, Exh. F, ¶ 34 (explaining that forgiven loans were recorded as "paid in full"). ASBL has not demonstrated eligibility for a fee award on the basis of SBA's voluntary disclosure of additional PPP data fields.

Because ASBL did not substantially prevail on its request for PPP loan data, it is not eligible for a fee award for its litigation of that request.

### iii. Communications with Congress and the White House

Finally, ASBL sought "[a]ny communication between the White House, SBA, and Congress regarding requests for additional funding for the CARES Act and PPP Program." Benderson Decl. ¶ 5 & Exh. B at 3. SBA completed its production of records responsive to this request in January 2021. *Id.*, Exh. G. Then, in May 2022, SBA agreed to conduct two additional email searches, and to process the documents responsive to those searches. The additional searches were for "communication[s] between the White House, SBA, and Congress," because each search required an email address from one of the following domains: who.eop.gov, mail.house.gov, or senate.gov. *Id.*, Exh. M at 1. But the searches were not designed to identify "communications . . . regarding requests for additional funding for the CARES Act and PPP Program," which was the only subject at issue in this portion of ASBL's FOIA request. Instead,

SBA agreed that it would "produce the records, or non-exempt portions thereof, *responsive to those [new] searches*," Benderson Decl. of May 26, 2022, ECF No. 62-1 at 3, ¶ 6 (emphasis added), rather than reviewing the records for responsiveness to ASBL's FOIA request. *See also* SBA Consent Mot. at 2 (ECF No. 62 at 3) (explaining that SBA would be producing "records responsive to the New Searches").

The first search required that the following four words appear anywhere in the document: health, care, enhancement, and act. Benderson Decl., Exh. M at 1. The Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139 (Apr. 24, 2020), provided a second round of funding for the Paycheck Protection Program, which was initially authorized by the CARES Act. But SBA did not search for "Health Care Enhancement Act"; it searched for "health AND care AND enhancement AND act," with no requirement that those words bear any relationship to each other.

For example, a White House office sent SBA an email attaching the text of a bill under consideration in Congress. The email also went to a "**Health** & Human Services" mailbox. Benderson Decl., Exh. L at 1 (SBA 16957) (emphasis added). Upon receipt, SBA's server flagged it as "external to the SBA network" and attached an admonition to "use **care** when clicking on links and responding with sensitive information." *Id.* (emphasis added). The bill would have amended the "Whistleblower Protection **Enhancement Act**." *Id.* at 4 (SBA 16960) (emphasis added). This document was therefore produced to ASBL, because it was responsive to the terms of the new search: each of the four keywords appeared somewhere in the email or its attachment. But the document is entirely unrelated to the FOIA request being litigated here; it was produced under the terms of a separate agreement between the parties, in an attempt to avoid further litigation of that FOIA request.

And even where the search returned emails discussing that Act, there was no requirement of any connection to "requests for additional funding" of the Paycheck Protection Program or other any other CARES Act initiative. For example, SBA produced an email from a White House office announcing the signing ceremony for the Health Care Enhancement Act. Benderson Decl., Exh. I (SBA 3540). It produced the Federal Emergency Management Agency's daily COVID-19 briefing paper, circulated to SBA by the White House, whenever it mentioned the Act. *Id.*, Exh. J (SBA 3624, 3644, 3657, 3698, 3726). And it produced correspondence from Congress about the implementation of the Act, entirely unrelated to any "requests for additional funding." For example, Congressman Joe Courtney of Connecticut wrote to ask that SBA "immediately publish guidance enabling agricultural enterprises with fewer than 500 employees to have access to the Economic Injury Disaster Loan and EIDL grant programs," which had been amended by the Health Care Enhancement Act, but are not at issue here. *Id.*, Exh. K at 1 (SBA 9231).

Similarly, the second search required only that one of the following words or phrases appear somewhere in the document: shake shack, lakers, ruth's, or potbelly. *Id.*, Exh. M at 1. That is not a search designed to capture (as ASBL originally requested) "communications . . . regarding requests for additional funding for the CARES Act and PPP Program." Instead, it captured correspondence between Congress or the White House and SBA discussing the PPP loans received by businesses bearing those names (three restaurant chains and a professional basketball team), which had been widely reported in the media.

ASBL's claim that SBA "agreed . . . to conduct two new FOIA searches for records relating to efforts to obtain additional funding for the CARES Act and PPP" is therefore inaccurate. Mot. at 11 (ECF No. 74 at 15). And ASBL's suggestion that SBA "released 17,000 pages of documents relating to efforts . . . to obtain additional funding for the [CARES] Act and the PPP, despite

1 initially claiming that there were only nine pages of responsive documents," Mot. at 3 (ECF No.

2 74 at 7), misprepresents both the searches that SBA agreed to conduct and the documents it

3 released, which ASBL now seeks thousands of dollars in fees for reviewing. *See* Mot. at 8 (ECF

4 No. 74 at 12) (asserting ASBL conducted a "page-by-page review of each of the documents").

5       Indeed, ASBL's motion does not identify a single "communication . . . regarding requests

6 for additional funding for the CARES Act and PPP Program" produced in response to the new

7 searches. Instead, ASBL says that it received "correspondence from Congress to the SBA which

8 was sharply critical of how SBA had handled the PPP rollout," with no indication that the

9 correspondence was responsive to its original request (rather than the May 2022 agreement

10 between the parties). *Id.* The declaration of Irene Lee provides greater detail on what ASBL found

11 in those productions, but again does not claim that they contained "communication[s] . . . regarding

12 requests for additional funding for the CARES Act and PPP Program" that should have been

13 produced by SBA earlier.[5]

14       Despite its failure to identify any "communication . . . regarding requests for additional

15 funding for the CARES Act and PPP Program" produced by the new searches, ASBL claims that

16 SBA's agreement to conduct the searches amounted to "a voluntary or unilateral change in position

17 by the agency," and that ASBL is therefore a prevailing party under 5 U.S.C. § 552(a)(4)(E)(II).

18 But the new searches simply had nothing to do with the FOIA request that ASBL is litigating here:

19 they were not designed to produce records responsive to that request, and ASBL does not seriously

---

[5] *See* ECF No. 74-3 at ¶ 3 ("emails regarding meetings with former President Donald Trump");
*id.* ¶ 4 ("a copy of a flash report by the SBA's Inspector General"); *id.* ¶ 5 ("a news release
regarding a bipartisan letter from the Senate to the Treasury and SBA on an administrative fix to
the 7(a) Loan Program"); *id.* ¶ 6 ("a Draft Economic Report of the President – Household
Response Chapter"); *id.* ¶ 7 ("draft sections of and a one-pager on the Continuing Small
Business Recovery and Paycheck Protection Act").

claim that they did produce such records. To avoid further litigation, SBA agreed to conduct new searches and "produce the records, or non-exempt portions thereof, *responsive to those [new] searches*," Benderson Decl. of May 26, 2022, ECF No. 62-1 at 3, ¶ 6 (emphasis added), rather than reviewing the records for responsiveness to ASBL's FOIA request. *See also* SBA Consent Mot. at 2 (ECF No. 62 at 3) (explaining that SBA would be producing "records responsive to the New Searches").

The fact that searches for 1) "health AND care AND entitlement AND act" and 2) "'shake shack' OR lakers OR ruth's OR potbelly" returned 17,000 responsive pages does not show any flaws in SBA's search for "communication[s] . . . regarding requests for additional funding for the CARES Act and PPP Program"—the subject of ASBL's FOIA request. In the words of the FOIA fee provision, ASBL's "claim" to the newly produced records was "insubstantial," and therefore ASBL is not a prevailing party. 5 U.S.C. § 552(a)(4)(E)(II). Said differently, ASBL was not "entitled to the documents at an earlier time," because its FOIA request did not call for their production. *First Amendment Coal.*, 878 F.3d at 1129 (quotation omitted).

ASBL also argues that the Court's scheduling order, which gave SBA a deadline to complete its production of documents identified by the new searches, *see* ECF No. 65, makes ASBL a prevailing party under 5 U.S.C. § 552(a)(4)(E)(ii)(I). Mot. at 10 (ECF No. 74 at 14). Although production orders generally have that effect, *see supra* at 9, that cannot be so where the FOIA request being litigated does not call for the productions being scheduled, and SBA itself filed a motion seeking a production schedule.

And even if the Court concludes that either a) SBA's agreement to conduct new searches or b) the Court's imposition of a deadline for the resulting productions makes ASBL a prevailing party on its FOIA request for "communication[s] . . . regarding requests for additional funding for

the CARES Act and PPP Program," the Court should exercise its discretion to find that ASBL is not entitled to a fee award. The enormous gap between the new searches and the original FOIA request demonstrates that SBA had an exceedingly "reasonable basis in law" for not performing those searches sooner. *Hiken*, 836 F.3d at 1044; *Long*, 932 F.2d at 1313. Even if there is public interest in the resulting productions and no commercial benefit to ASBL, the Court should not find entitlement in these circumstances. *See Long*, 932 F.2d at 1313 ("[T]he court may take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate." (internal quotation omitted)).

**B.      ASBL's request for an award of more than $500,000 is entirely unreasonable.**

If the Court concludes that ASBL is both eligible for and entitled to a fee award (which it should not), then the Court will need to assess the reasonableness of the fees demanded here. *See id.* at 1313–14. "A plaintiff's overall success on the merits . . . must be considered in determining the reasonableness of a fee award." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "Thus, when a plaintiff presents 'distinctly different claims for relief that are based on different facts and legal theories,' the limit on awards to 'prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)). This Court should therefore tailor its fee award, if any, to its conclusions about which component (or components) of ASBL's FOIA request entitled it to such an award. SBA will again discuss each part of ASBL's FOIA request in turn.

Before doing so, however, SBA notes three issues that merit a reduction in ASBL's fee demand. First, ASBL's documentation of its attorneys' time is inadequate. ASBL presents a six-

column chart as Exhibit P to the declaration of Karl Olson. *See* ECF No. 74-1 at 141–45. Each row in the chart represents one month. The first column specifies the month, and the next four columns report the hours worked for each of the attorneys handling this matter, and the paralegals as a group. The final column provides a "Summary of Major Tasks," the only description of the work performed, without any accounting of how much time was spent on any task by any timekeeper. This is egregious "block billing," which "makes it . . . difficult to determine how much time was spent on particular activities." *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). The Ninth Circuit recognizes "the district court's authority to reduce hours that are billed in block format," and has upheld a reduction of 20%, which the Court should impose here. *Id.*; *see Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness").

Second, ASBL is seeking fees for work on a FOIA request that was not at issue in this case. Paragraph 18 of the complaint identifies the FOIA requests for which ASBL sought judicial review, which have been described in detail above. ECF No. 1 at 6, ¶ 18. But ASBL now seeks fees for work on "a FOIA request for records pertaining to the SBA's Press Office and Terrence Sunderland." Mot. at 4 (ECF No. 74 at 8). ASBL reports that "SBA produced 1,005 pages of documents . . . relating to the SBA's Press Office and Terrence Sunderland." *Id.* at 6 (ECF No. 74 at 10). It argues that the production of those records entitles it to a fee award, because "ASBL's focus on increasing transparency about . . . the SBA's Press Office . . . undoubtedly confers a benefit on the public." *Id.* at 12–13 (ECF No. 74 at 16–17) (quotation omitted). ASBL discusses its request for Press Office records on each of pages 12 through 17 of its motion. But that request has never been part of this case, and ASBL cannot recoup the fees spent litigating it here. Although

ASBL's block billing makes it impossible to calculate how much time was expended on this FOIA request, an additional across-the-board reduction of 10% would be reasonable.

Third, ASBL is seeking fees for submitting the FOIA requests and discussing them with SBA before this suit was filed.[6] But "work performed during administrative proceedings prior to litigation is not recoverable under FOIA." *ACLU Immigrants' Rights Projects v. U.S. Immigration & Customs Enforcement*, 2018 WL 488997, at *3 (N.D. Cal. Jan. 19, 2018); *accord Kopp v. U.S. Secret Serv.*, 2019 WL 2327933, at *7 (N.D. Cal. May 31, 2019). The time spent on these tasks, for which ASBL claims nearly $45,000 in fees, should be disallowed.

SBA now turns to the three distinct groups of records at issue in this case.

### i.   PPP Loan Data

ASBL claims approximately $150,000 in fees for work performed from July through October 2020. It appears that the large majority of this time was spent on ASBL's motion for partial summary judgment on the issue of PPP loan data, and its opposition to SBA's motion to stay consideration of that issue.[7]

Whether the hours claimed for this work are reasonable turns almost entirely on the question of whether it was reasonable for ASBL to proceed as it did, filing a motion for partial

---

[6] *See* ECF No. 74-1 at 141 (April 2020: "Prepare and revise FOIA requests. Correspond and attend calls with SBA re: FOIA requests"; May 2020: "Research legal issues presented by FOIA requests and prepare memoranda advising team and client. Prepare agency correspondence re: requests. Prepare for and attend call w/ Mr. Fishman and Ms. Hunter. Consider and discuss possible lawsuit."; June 2020: "Prepare further agency correspondence. Continue researching and analyzing issues related to possible lawsuit, including exhaustion and constructive denial, facts related to records sought and other applicable law.").

[7] *See* ECF No. 74-1 at 141 (July 2020: "Begin work on motion for summary judgment."; August 2020: "Continue researching and drafting summary judgment motion."; September 2020: "Finish drafting, revise, finalize, meet regarding, and file motion for summary judgment and supporting papers."; October 2020: "Research and draft opposition to motion to stay.").

summary judgment before SBA had answered the complaint or provided a declaration. In FOIA cases, summary judgment briefing generally follows the completion of production so that the parties and the court can efficiently address all search issues and claims of withholdings at the same time. *See, e.g.*, *Willis v. United States*, 581 F. Supp. 2d 57, 64–65 (D.D.C. 2008) (explaining that the court denied as premature plaintiff's motion for an "[o]rder directing the government to release all requested records" because they "related to the merits of the parties' FOIA . . . arguments that were yet to be determined"); *NRDC v. EPA*, No. 08-1429 (PLF), 2009 WL 1767570, at *1 (D.D.C. June 23, 2009) (denying without prejudice a FOIA requester's motion for summary judgment because "an immediate award of judgment typically is considered premature" prior to the federal agency's production obligations). And the agency typically moves for summary judgment first, because it is the agency's burden to establish the adequacy of its search and the propriety of any withholdings under FOIA's exemptions. The agency does this by submitting a declaration explaining its search and justifying its withholdings, along with its motion for summary judgment. *See, e.g.*, *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) ("[G]overnment agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." (footnote omitted)). The purpose of the declaration is to "'afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding'" and the adequacy of the search. *Id.* (quoting *King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987)). This Court has followed this well-worn procedure in FOIA cases. *E.g.*, *Gerstein v. CIA*, 2008 WL 4415080 (N.D. Cal. Sept. 26, 2008) (Chesney, J.)

(evaluating the adequacy of explanations in government affidavits after the government filed its motion for summary judgment and the FOIA requester filed a cross-motion).

ASBL's premature motion for summary judgment sought to short-circuit this standard procedure, and asked the Court to rule on the PPP data issue *on the basis of papers filed in the District of Columbia*. The Court properly declined to do so. ECF No. 35. If the Court awards fees, ASBL's demand for the months of July through October 2020 should be reduced by at least two thirds, in light of the impropriety and inefficiency of ASBL's litigation strategy, which is demonstrated by the facts surrounding SBA's release of additional PPP data fields in January 2021. ASBL argues that its motion for summary judgment prompted that release. But even if ASBL's conduct of this litigation had triggered the release—as explained above, it did not—summary judgment briefing was not required. SBA made the release voluntarily after it learned of the existence of the data fields; it did not attempt to withhold them. Benderson Decl. ¶ 10. ASBL is seeking fees for tens of thousands of dollars worth of briefing when a letter would have sufficed.

### ii. Advisory Committee Records

ASBL claims an additional $150,000 in fees for work performed from November 2020 through December 2021. *See* ECF No. 74-1 at 141–43. During that time, SBA made its productions in response to ASBL's request for advisory committee records, and the parties filed a series of status reports, ECF Nos. 39 (Dec. 14, 2020), 42 (Jan. 29, 2021), 45 (Mar. 19, 2021), & 49 (Aug. 13, 2021). ASBL submitted more than six pages of argument in each report, pressing for relief that the Court generally did not grant, and accompanied each report with a superfluous declaration. Counsel for ASBL also reviewed SBA's productions during this period. *See* ECF No. 74-1 at 141–43.

To determine the size of a fee award, the Court must assess "the number of hours

reasonably expended by the prevailing party in the litigation." *Hiken*, 836 F.3d at 1044. "Reasonably expended time is generally time that 'could reasonably have been billed to a private client.'" *Rosenfeld*, 904 F. Supp. 2d at 1003 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)). "To this end, the applicant must exercise 'sound billing judgment' regarding the number of hours worked, and a court should exclude from a fee applicant's initial fee calculation hours that were not 'reasonably expended,' such as those incurred from overstaffing, or 'hours that are excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 433).

The expenditure of $150,000 to file status reports and review records is entirely excessive. If the Court awards fees for this work, it should reduce ASBL's request by at least two thirds. *See In re Smith*, 586 F.3d 1169, 1174 (9th Cir. 2009) ("We have recognized that . . . the district court has the authority to make across-the-board percentage cuts . . . in the number of hours claimed . . . as a practical means of trimming the fat from a fee application.") (internal quotation marks and citations omitted); *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) ("The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment.").

### iii.    Communications with Congress and the White House

ASBL claims another $100,000 in fees for work performed from January through December 2022. *See* ECF No. 74-1 at 143–44. During that time, the parties met and conferred, and SBA produced the records identified by the two new searches for communications between Congress and the White House that it had agreed to perform. As discussed above, ASBL could not have been reviewing those documents to determine if it was satisfied with SBA's response to its FOIA request, because the searches and productions were not designed to respond to the FOIA

request.  *See Sierra Club v. EPA*, 75 F. Supp. 3d 1125, 1149 (N.D. Cal. 2014) ("As Plaintiffs received, at least in part, the relief they sought when the EPA produced the documents, the time they expended reviewing the documents . . . is properly characterized as post-relief activity, separate from the litigation.").  If the Court awards fees for this work, it should reduce ASBL's request by at least half.

### iv.    Summary

As discussed above, if the Court awards fees, the hours spent litigating ASBL's requests for PPP loan data and advisory committee records should each be reduced by two-thirds (*i.e.*, to $50,000) and the hours spent on its request for SBA communications with Congress and the White House should be reduced by half (*i.e.*, to $50,000).  An additional twenty percent reduction should then be imposed to account for block billing, and ten percent to remove the work associated with the request for press office records, which was not litigated here.  Those reductions would produce an award of approximately $35,000 for each of the three components of ASBL's request.

## CONCLUSION

For the reasons set forth above, ASBL's motion for an award of attorney fees should be denied.  If the motion is instead granted, ASBL should only be awarded fees for the portion of the case that renders it both eligible for and entitled to the award, and ASBL's fee demand should be reduced to a reasonable sum as described above.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

/s/ James Bickford

JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: April 24, 2023