1

2

3

4              IN THE UNITED STATES DISTRICT COURT

5            FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7  AMERICAN SMALL BUSINESS                Case No. 20-cv-04619-MMC
   LEAGUE,
8
              Plaintiff,
9                                         ORDER GRANTING IN PART
       v.                                 PLAINTIFF'S MOTION FOR
10                                        ATTORNEY'S FEES AND COSTS

11 SMALL BUSINESS ADMINISTRATION,         Re: Dkt. No. 74

              Defendant.
12

13        Before the Court is plaintiff American Small Business League's ("ASBL") "Motion

14 for Attorney's Fees and Costs," filed March 27, 2023. Defendant United States Small

15 Business Administration ("SBA") has filed opposition, to which ASBL has replied. The

16 motion came on for hearing on July 19, 2024. Aaron R. Field and Karl Olson of Cannata

17 O'Toole & Olson LLP appeared on behalf of ASBL. James Bickford of the United States

18 Department of Justice Civil Division appeared on behalf of the SBA.

19        Having read and considered the parties' respective written submissions, and

20 having considered the oral arguments made by counsel, the Court, hereby rules as

21 follows.

22                              **BACKGROUND**

23        Plaintiff ASBL is a California organization with the "core mission" of "promot[ing]

24 and advocat[ing] for the interests of small business concerns through public policy

25 change." (See Complaint ("Compl." ¶ 6, Doc. No. 1.) During the coronavirus pandemic,

26 Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act,

27 under which "the SBA was tasked with administering a new loan program, the PPP

28 [Paycheck Protection Program], which offers often forgivable loans to qualifying small

United States District Court
Northern District of California

1  businesses." (See id. ¶ 10.) ASBL submitted several FOIA requests pertaining to the

2  SBA's administration of such funds. (See id. ¶ 18.)

3  **A.  FOIA Requests at Issue**

4      On April 9, 2020, ASBL submitted a Freedom of Information Act ("FOIA") Request

5  to the SBA, whereby it sought documents "regarding advisory committees" that have

6  worked with the SBA ("Initial Request"). (See id. ¶ 18.)[1]

7      On April 16, 2020, ASBL "amended [the initial] FOIA request" ("Amended

8  Request") to seek: (1) "[r]ecords relating to any committee, advisory group, or panel the

9  SBA has established to administer the $350 billion CARES Act response to the

10  coronavirus pandemic" ("CARES Committee Records"); (2) "[a] list of names and

11  bio[graphies] of members who serve on any of the active SBA advisory committees"

12  ("Committee Biographies"); (3) "[d]ata showing how the appropriated funds from the

13  CARES Act were distributed through [the] PPP program [sic]" ("PPP Loan Data"); (4)

14  "[a]ny communication between the White House, SBA, and Congress regarding requests

15  for additional funding for the CARES Act and PPP Program [sic]" ("Interbranch

16  Communications"). (See id. ¶ 18.)

---

[1] The Initial Request reads as follows:

>   All documents indicating, containing, or relating to any committee, advisory
>   panels or groups that currently work or have worked with the Small Business
>   Administration (SBA) between January 1, 2014 and present
>
>   All documents indicating containing, or relating to the names of each
>   individual on each committee, advisory panel, or group that currently works
>   or has worked with the SBA between January 1, 2014 and present
>
>   All records of communications (written, oral, or electronic) containing, relating
>   to, or based on any advisory panels or groups that currently work or have
>   worked with the SBA between January 1, 2016 and the present
>
>   All records of communications (written, oral, or electronic) containing, relating
>   to, or based on the names of each individual on each committee, advisory
>   panel, or group that currently works or has worked with the SBA between
>   January 1, 2014 and present

(See Decl. of Eric Benderson in Supp. of Def.'s Opp'n. to Mot. for Fees ("Benderson
Decl.") Ex. A, April 9, 2020, Email from ASBL to SBA, Doc. No. 76-1.)

United States District Court
Northern District of California

On July 10, 2020, ASBL filed the instant action seeking declaratory and injunctive relief under FOIA. (See id. ¶¶ 27–34.)

**B.  Procedural History and Washington Post Litigation**

On May 12, 2020, the Washington Post filed suit in the District of Columbia, seeking "[a]ll public data on every loan made through the [PPP]." (See Def.'s Opp'n. to Pl.'s Mot. for Fees ("Def.'s Opp'n.") at 2:1–5, Doc. No. 75 and WP Co. LLC v. SBA, No. 20-cv-1240 (D.D.C. filed May 12, 2020) ("Washington Post case").) On July 6, 2020, SBA released loan-level data for PPP loans except for the precise amounts of loans of $150,000 or more, and the names and addresses of borrowers of less than $150,000, which it claimed were exempt. (See id. at 2:6–14.) The parties in the Washington Post case litigated the claimed exemption (see id. at 2:15–21), and, on November 5, 2020, the district court in that action ordered the SBA to produce the withheld information, see WP Co. LLC v. SBA, 502 F.Supp.3d 1 (D.D.C. 2020).

On September 4, 2020, ASBL moved for summary judgment (see Pl.'s Mot. for Summ. J., Doc. No. 20), and, on October 26, 2020, this Court, in light of the overlap between ASBL's request and the requests at issue in the Washington Post case, stayed the instant action pending a decision in the Washington Post case. (See Order, Doc. No. 35.) On November 20, 2020, after the ruling in the Washington Post case, this Court lifted the stay. (See Order, Doc. No. 38.)

**C.  SBA's Productions**

**1.  Records Responsive to the Initial Request**

Within approximately a month after the Initial Request was filed, the SBA informed ASBL that such request returned "250,000 potentially responsive emails" and was "unduly burdensome." (See Decl. of Eric Benderson in Supp. of Def.'s Opp'n. to Mot. for Fees ("Benderson Decl.") Ex. E, November 2020 Letter from ASBL to SBA, Doc. No. 76-5 (documenting history of communications between the parties).) On May 22, 2020, ASBL identified its "priorit[y]" documents responsive to its request as those related to the Regional Regulatory Fairness Board ("the RRFB Documents"), and, on June 12, 2020,

1  the SBA agreed to produce those documents. (See id.)

2  In January 2021, ASBL agreed to "narrow" what remained of the Initial Request to

3  "documents relating to ASBL, its president Lloyd Chapman, Raytheon Technologies

4  Corporation . . . Secretary of Defense Lloyd Austin, and the Advisory Committee on

5  Veterans' Affairs" ("the Non-RRFB Documents"). (See Pl.'s Mot. for Fees ("Pl.'s Mot.") at

6  4:11–15 citing Decl. of Karl Olson in Supp. of Pl.'s Mot. ("Olson Decl."), Ex. D, January

7  27, 2021, Bickford Email to Olson Doc. No. 74-1 at 36, 39.) On August 20, 2021, the

8  Court ordered SBA to produce the remaining documents responsive to the narrowed

9  Initial Request by December 17, 2021. (See Minute Order, Doc. No. 51.)

10  **2. Records Responsive to the Amended Request**

11  **a. CARES Committee Records**

12  The SBA informed ASBL that it "ha[d] not established any committee . . . to

13  administer the CARES Act," and, consequently, no records pertaining to this category

14  were produced. (See Benderson Decl. Ex. E at 2.)

15  **b. Committee Biographies**

16  The SBA produced the Committee Biographies on May 18, 2020, prior to the

17  commencement of litigation. (See id.)

18  **c. PPP Loan Data**

19  The SBA initially published PPP loan data on its website on July 6, 2020 (see

20  Benderson Decl. Ex. C, Manger Washington Post Declaration ¶ 88, Doc. No. 76-3), and,

21  pursuant to the Washington Post order, published the initially withheld data on December

22  1, 2020 (see Joint Status Report of December 12, 2020 at 3:6–8, Doc. No. 39).

23  Thereafter, ASBL contended it was seeking, by the third part of its Amended Request,

24  additional data regarding the PPP loans (see id. at 5–6); upon examination prompted

25  thereby, the "SBA determined that it possessed such data" (see Benderson Decl. ¶ 10),

26  and, on January 25, 2021, published it (see id. ¶ 11, Ex. F, Benderson Washington Post

27  Declaration, Doc. No. 73-6).

28  //

United States District Court
Northern District of California

### d. Interbranch Communications

On January 22, 2021, the SBA completed its initial production of records responsive to ASBL's request for interbranch communications (see Benderson Decl. Ex. G, January 22, 2021 SBA Letter to ASBL, Doc. No. 76-7), which production comprised nine pages of documents (see Olson Decl. ¶ 10).  After a series of meet-and-confers about that production, ASBL, by letter dated February 11, 2022, proposed "ten new search terms" for the purpose of identifying additional records responsive to its request for documents in this category. (See Olson Decl. ¶¶ 11–12; Ex. J, February 11, 2022, SBA Letter to ASBL, Doc. No. 74-1 at 73–74.) Ultimately, the parties agreed to two new searches, the first requiring the words "health," "care," "enhancement," and "act" to appear somewhere in the document, and the second requiring one of the words or phrases "shake shack," "lakers," "ruth's," or "potbelly" to appear somewhere in the document. (See Benderson Decl. Ex. M, January 10, 2023, SBA Letter to ASBL, Doc. No. 76-13.) Both searches were to be limited to emails from the domains "who.eop.gov, mail.house.gov, or senate.gov." (See id.) On June 8, 2022, the Court entered an order setting a production schedule for the documents responsive to these searches. (See Order, Doc. No. 65.)

### 3. Conclusion: SBA's Productions

On February 24, 2023, the parties informed the Court that "[t]he merits of the dispute [were] . . . concluded." (See Sixth Joint Status Report, Doc. 72.)

### DISCUSSION

By the instant motion, ASBL seeks an award of attorney's fees in the amount of $514,392.50, and an award of costs in the amount of $2,691.40. (See Supplemental Declaration of Irene Lee in Supp. of ASBL's Mot. for Attorney's Fees ("Supp. Lee Decl."), Ex. A, Doc. No. 78-1.)

### A. Eligibility

Pursuant to FOIA, the Court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in a case where the plaintiff

1   has "substantially prevailed." See 5 U.S.C. § 552(a)(4)(E)(i)G.  A plaintiff "substantially

2   prevail[s]" by obtaining relief through: (1) "a judicial order, or an enforceable written

3   agreement or consent decree;" or (2) "a voluntary or unilateral change in position by the

4   agency, if the complainant's claim is not insubstantial." See 5 U.S.C. § 552(a)(4)(E)(ii)(I)–

5   (II). "A complaint is deemed 'eligible' for a fee award by satisfying either subsection." See

6   Poulsen v. Dep't. of Defense, 994 F.3d 1046, 1050 (9th Cir. 2021).

7       Where relief is obtained through a judicial order, the plaintiff, to be eligible for fees,

8   need not show "the FOIA lawsuit" caused the production. See Poulsen, 994 F.3d at 1050.

9   Moreover, even an order scheduling, rather than initially requiring, production suffices,

10  and "even when voluntarily agreed to by the government." See id. at 1053–54.

11      Where, however, the plaintiff obtains relief through a voluntary "change in position

12  by the agency," such plaintiff must "present convincing evidence that the filing of the

13  action had a substantial causative effect on the delivery of the information." See First

14  Amend. Coalition v. U.S. Dep't. of Justice, 878 F.3d 1119, 1128 (9th Cir. 2017) (internal

15  quotations and citation omitted). To determine whether a plaintiff has made the requisite

16  showing of causation, courts consider the following three factors: "(1) when the

17  documents were released, (2) what actually triggered the documents' release, and (3)

18  whether [the plaintiff] was entitled to the documents at an earlier time." See id. at 1129

19  (internal quotations and citation omitted).

20      **1.  Non-RRFB Records**

21      In light of the Court's production-rate order (see Doc. No. 51), the parties agree

22  ASBL is eligible for fees for work performed in connection with ASBL's request for non-

23  RRFB documents (see Pl.'s Mot. at 10:17–23; Def.'s Opp'n. at 9:4–9).

24      **2.  PPP Loan Data**

25      ASBL argues it is eligible for fees for work performed in connection with the SBA's

26  production of the PPP loan data, for two reasons: first, because the Washington Post

27  court entered an order directing the SBA to produce responsive data, and second,

28  because the SBA produced additional data in January 2021 after investigating ASBL's

United States District Court
Northern District of California

United States District Court
Northern District of California

1    request. (See Pl.'s Mot. for Att'y Fees ("Mot.") at 10:24–27; 11:20–22, Doc. 74.) The SBA

2    argues neither reason suffices to establish ASBL "substantially prevailed." (See Def.'s

3    Opp'n. at 11:7.)

### a.  Production Pursuant to <u>Washington Post</u> Order

5        ASBL, citing Judge Berzon's concurrence in <u>First Amend. Coalition</u>, 878 F.3d at

6    1131 (Berzon, J. concurring), contends the <u>Washington Post</u> court's order requiring

7    production of PPP loan data "qualifies as a judicial order through which ASBL obtained

8    relief in this case," because the "plain text" of FOIA does not require the order to be

9    issued in the complainant's case. (See Pl.'s Mot. at 10:24–11:6.)

10       In <u>First Amend. Coalition</u>, the Ninth Circuit held that a plaintiff, in order to meet the

11   "substantially prevailed" requirement, must demonstrate "a causal nexus between the

12   litigation and the voluntary disclosure or change in position by the Government".  <u>See</u>

13   <u>First Amend. Coalition</u>, 878 F.3d at 1128 ("explicitly reject[ing] the notion that the 2007

14   amendment [to FOIA] eliminated the need to establish causation once a lawsuit has been

15   initiated"). Judge Berzon disagreed, noting "the text of the fees provision . . . plainly does

16   not require a causal nexus between the litigation and the agency's disclosure." <u>See id.</u> at

17   1130. ASBL argues Judge Berzon's "plain text" reading of FOIA supports their contention

18   that any judicial order, not just a judicial order in the complainant's own case, can mean

19   the complainant "substantially prevailed." As set forth below, the Court disagrees.

20       Judge Berzon wrote only for herself; her position was rejected by the majority's

21   holding that, despite the lack of statutory text requiring it, "there must still be a causal

22   nexus between the litigation and the voluntary disclosure." <u>See id.</u> at 1128. With the

23   majority's opinion in mind, the Court concludes litigation in one case does not "cause"

24   disclosure in another. In so holding, the Court finds persuasive the reasoning set forth in

25   <u>So. Cal. Public Radio v. U.S. Small Bus. Admin.</u>, No. 2:20-CV-06490-ODW, 2021 WL

26   6752245, at *2 (S.D. Cal. Sept. 3, 2021), wherein the district court declined to grant fees

27   "based solely on a judicial order in another case, especially when, as here, the plaintiff is

28   not party to the other case and only indirectly benefitted from its ruling." <u>See id.</u>

1      Accordingly, the Court finds ASBL is not eligible for fees based on the <u>Washington</u>

2   <u>Post</u> order.

3                    **b.  Production of Supplemental Data**

4      ASBL next argues it is eligible fees for this portion of its request based on the

5   SBA's January 25, 2021, production of supplemental PPP loan data, which took place

6   after SBA produced data in the <u>Washington Post</u> case. According to ASBL, such

7   subsequent production constitutes a qualifying "voluntary and unilateral change in

8   position." (<u>See</u> Pl.'s Mot. at 11:16–22.)

9      As noted, to determine whether a plaintiff has "substantially prevailed" by causing

10  the agency's voluntary or unilateral change in position, courts consider three factors: "(1)

11  when the documents were released, (2) what actually triggered the documents release,

12  and (3) whether [the plaintiff] was entitled to the documents at an earlier time." <u>See</u> <u>First.</u>

13  <u>Am. Coalition</u>, 878 F.3d at 1129 (finding causation where, prior to production, lawsuit

14  "spanned almost two and a half years" and plaintiff was "met with abject resistance

15  throughout the entire litigation") (internal quotations and citation omitted).

16     Although SBA maintains the release "was triggered by SBA's conclusion that the

17  records should have been produced in response to certain FOIA requests litigated in the

18  <u>Washington Post</u> case," and continues to argue ASBL was not entitled to the data under

19  the terms of its request (<u>see</u> Def.'s Opp'n. at 13:18–20), the SBA admits it looked for the

20  "additional information" as a result of ASBL's request (<u>see</u> <u>id.</u> at 4:4–15), and, as ASBL's

21  initial request sought data on "how" PPP loans were distributed (<u>see</u> Compl. ¶ 10), at

22  least some of the supplemental data was responsive to such request (<u>see</u> Def.'s Opp'n.

23  at 4 n.2 (noting data fields produced)).

24     Accordingly, the Court finds ASBL is eligible for fees incurred in obtaining the

25  supplemental data.

26                 **3.  Interbranch Communications**

27     ASBL contends it "substantially prevailed" on its request for interbranch

28  communications because the SBA "ultimately [produced records] totaling more than

United States District Court
Northern District of California

1   17,000 pages" in response to negotiated search terms (<u>see</u> Pl.'s Mot. at 11:23–27), and

2   the Court issued an order "setting the production rate" for these searches (<u>see</u> Order,

3   Doc. No. 65). The SBA argues ASBL did not "substantially prevail" because said

4   searches were "new," and were not fairly encompassed by the FOIA request at issue in

5   the litigation. (<u>See</u> Def.'s Opp'n. at 17:14–18:6.)

6       As noted, ASBL's Amended Request included a request for "any communication

7   between the White House, SBA, and Congress regarding requests for additional funding

8   for the CARES Act and PPP Program." (<u>See</u> Compl. ¶ 10.) As further noted, the parties

9   ultimately agreed to two searches: (1) emails that had "health AND care AND

10   enhancement AND act" in the document ("Health Care Enhancement Act search"), and

11   (2) emails that had "'shake shack' OR lakers OR ruth's OR potbelly" in the document

12   ("Specific PPP Recipients search"), with both searches limited to emails from

13   who.eop.gov (the White House Executive Office of the President), mail.house.gov (the

14   House), or senate.gov (the Senate) domains. (<u>See</u> Benderson Decl. Ex. M.) As the SBA

15   notes, these searches resulted in the production of some documents that were unrelated

16   to the original FOIA request. (<u>See</u> Def.'s Opp'n. at 15:13–16:19.)

17      Although the Court accepts SBA's assertion that many of the resulting emails were

18   outside the scope of ASBL's request, the limitation of the search to communications

19   between the SBA, the White House, and the houses of Congress demonstrates that

20   ASBL was seeking documents within ASBL's Amended Request, even if the results were

21   overinclusive. Accordingly, the Court finds that, given its issuance of a scheduling order,

22   ASBL is eligible for fees incurred in obtaining the production of interbranch

23   communications documents. <u>See</u> <u>Poulsen</u>, 994 F.3d at 1053–54.

24   **B.  Entitlement**

25      Once a court has ascertained the plaintiff's statutory eligibility for fees under either

26   subsection of § 552(a)(4)(E)(ii), it then "exercise[es] its discretion" to determine whether

27   the plaintiff has demonstrated it is "entitled" to fees. <u>See</u> <u>Long v. U.S. I.R.S.</u>, 932 F.2d

28   1309, 1313 (9th Cir. 1991). In making that determination, courts consider four criteria: "(1)

1   the public benefit from the disclosure, (2) any commercial benefit to the plaintiff resulting

2   from the disclosure, (3) the nature of the plaintiff's interest in the disclosed documents,

3   and (4) whether the government's withholding of the records had a reasonable basis in

4   law." See id. Courts, in considering the above factors, "must be careful not to give any

5   particular criterion dispositive weight." See Church of Scientology of California v. U.S.

6   Postal Serv., 700 F.2d 486, 493 (9th Cir. 1983) (abrogated on other grounds).

7          **1. Public Benefit**

8          In weighing the public benefit factor, courts take into account the "degree of

9   dissemination and the likely public impact that might result from disclosure." See Church

10  of Scientology of California, 700 F.2d at 493. This factor weighs against an award of

11  attorney's fees when it "merely subsidizes a matter of private concern." See id.

12  Nevertheless, courts consider public benefit broadly, and have "recognized a public

13  interest in determining whether government programs . . . involve waste, fraud, or abuse."

14  See WP Co. LLC, 502 F.Supp.3d at 23. Where "at least one of the requested documents

15  was not previously available to the public," the public benefit factor weighs in favor of the

16  plaintiff. See Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

17         As to all the categories of documents as to which the Court has found eligibility,

18  namely, the non-RRFB documents, the supplemental PPP data, and the interbranch

19  communications, the SBA, noting ASBL has not specified the content of the records it

20  received, argues ASBL has failed to show there was a public interest in those records.

21  The Court, however, finds the public interest factor weighs in favor of an award of fees as

22  to all three categories of documents, as ASBL sought and received previously non-public

23  documents regarding a highly publicized spending program.

24         Accordingly, this factor weighs in favor of an award of fees.

25         **2. Commercial Benefit and Nature of Plaintiff's Interest**

26         Courts consider the second and third factors together to determine "whether the

27  plaintiff had a sufficient private incentive to pursue his FOIA request even without the

28  prospect of obtaining attorneys' fees." See McKinley v. Fed Hous. Fin. Agency, 739 F.3d

United States District Court
Northern District of California

707, 712 (D.C. Cir. 2014) (internal quotation and citation omitted). Where "a litigant seeks disclosure for . . . personal reasons, an award of fees is usually inappropriate." See Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995).

ASBL lacks any commercial interest in most of the documents it obtained in this litigation, including the PPP supplemental documents and the White House and Congressional communications documents, as well as those related to Raytheon Technologies, Lloyd Austin, and the Advisory Committee on Veterans Affairs (approximately half of the non-RRFB records). The SBA makes no argument as to ASBL's interest in the supplemental PPP loan data and interbranch communications. As the SBA notes, however, a portion of the non-RRFB records ASBL sought as part of its narrowed initial FOIA request related to ASBL itself and its president, Lloyd Chapman, suggesting "a degree of self-interest." (See Def.s' Opp'n. at 10:12–14.) Although ASBL argues even these records are in the public interest because "it is in the public's interest to know if the SBA is properly addressing small business concerns, including those raised by ASBL and its [p]resident" (see Pl.'s Reply at 6:14–17), the Court is not persuaded.

Accordingly, as to the supplemental PPP loan data and the interbranch communications documents, as well as the portion of the non-RRFB documents that do not pertain to ASBL, the Court finds this favor weighs in favor of an award of fees.

### 3.  Basis for Withholding

"The fourth factor is 'whether the government's withholding had a reasonable basis in law'; in other words, whether the government's actions appeared to have 'a colorable basis in law' or instead appeared to be carried out 'merely to avoid embarrassment or to frustrate the requester.'" See Eco. Rights Found. v. Fed. Emergency Mgmt. Agency, 365 F.Supp.3d 993, 1001 (N.D. Cal. June 14, 2018) citing Church of Scientology, 700 F.2d at 492 n.6.

As to the non-RRFB documents, SBA states it "did not withhold" those records but was "merely ordered to produce them at a faster pace than it had proposed." (See Def.'s

1   Opp'n. at 10:18–19.) The Court finds this factor weighs against an award of fees for work

2   performed in connection with the non-RRFB documents. In particular, given the broad

3   nature of the Initial Request and large number of documents that would be responsive

4   thereto, the Court finds it was not unreasonable for the SBA to delay production until the

5   searches were narrowed.

6          As to the supplemental PPP loan data, the SBA argues "ASBL has not shown it

7   was entitled to [this data] at an earlier time," because ASBL "does not attempt to explain

8   how the [supplemental] data fields" were responsive to ASBL's FOIA request. (See id. at

9   14:1–4.) As discussed above, however, the Court has found ASBL's Amended Request

10  did encompass at least some of the responsive production. (See supra Part A.2.b.)

11  Accordingly, as to the supplemental PPP data, the Court finds this factor weighs in favor

12  of an award of fees.

13         As to the interbranch communications documents, the SBA argues the "enormous

14  gap" between ASBL's request as originally formulated and the new searches shows the

15  SBA had "an exceedingly 'reasonable basis in law' for not performing those searches

16  sooner." (See Def.'s Opp'n.  at 19:2–4.) In response, ASBL argues "[t]he new searches

17  . . . could and should have been conducted initially" because "it was obvious that there

18  had to be more than nine pages of records" in response to the original request. In support

19  thereof, ASBL, citing Transgender Law Ctr. v. Immig. & Customs Enf't., 46 F.4th 771, 780

20  (9th Cir. 2022), asserts the SBA "bear[s] the burden of demonstrating the adequacy of

21  their search beyond a material doubt." (See Pl.'s Reply at 7:13–15.) Transgender Law

22  Ctr., however, addressed the merits of an agency's compliance with FOIA not a

23  claimant's entitlement to attorneys' fees, an issue on which the claimant bears the

24  burden. See Long, 932 F.3d at 1309 (noting "prevailing party in FOIA action must

25  demonstrate both eligibility and entitlement to . . . recovery" of fee award).

26         In any event, irrespective of where the burden lies, in this instance the Court finds

27  the disparity between the original request and the eventual search terms supports the

28  SBA's argument as to the initial withholding of some of the records. In that regard, of the

two searches ultimately run, only the Health Care Enhancement Act search appears to seek documents responsive to ASBL's Amended Request for communications regarding the SBA's "requests for additional funding." (See Compl. ¶ 18).[2] ASBL provides no explanation as to why it expected the Specific PPP Recipients search to return documents responsive to such request, and the Court finds SBA had a reasonable justification for the delay in initially running that search. Accordingly, as to the interbranch communications request, the Court finds this factor weighs in favor of an award of fees, but only as to the Health Care Enhancement Act search.

### 4. Conclusion: Entitlement

The Court, having weighed the relevant factors, finds ASBL is entitled to fees incurred in obtaining the supplemental PPP loan data and the interbranch communications documents pertaining to the Health Care Enhancement search, but not to the fees incurred in obtaining the non-RRFB documents or the Specific PPP Recipients search pursuant to the interbranch communications request.

### C. Fee Award

With the above findings in mind, the Court determines a fee award is appropriate, see Church of Scientology, 700 F.2d at 492 (holding court "must exercise its discretion in determining whether a fee award is appropriate") (internal quotation and citation omitted), and next turns to that calculation.

### 1. Pre-Litigation Work

ASBL seeks $44,668 in fees for work performed from April through June 2020, prior to the date this lawsuit was filed. (See Lee Decl. Ex. A.) "[W]ork performed during administrative proceedings prior to litigation is not recoverable under FOIA." See ACLU Immigr. Rights Proj. v. U.S. Immigr. & Customs Enf't., No. 16-cv-06066-JSC, 2018 WL 488997, at *3 (N.D Cal. Jan. 19, 2018). The billing entries for this period reference

---

[2] The Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620 (2020), provided additional funding for the PPP.

administrative work, including activities such as "prepar[ing] and revis[ing] FOIA requests," "[p]repar[ing] agency correspondence re: requests," "attend[ing] calls with SBA re: FOIA requests," and "[p]repar[ing] further agency correspondence" (see Lee Decl. Ex. A). The entries, however, also reflect work that is recoverable under FOIA, such as "[r]esearch[ing] legal issues presented by FOIA requests" and "[c]onsider[ing] and discuss[ing] possible lawsuit." (See id.) See, e.g. Assoc. Gen. Contractors, Northern Nev. Chapter v. U.S. E.P.A., 488 F.Supp. 861, 864 (D. Nev. 1980) (finding plaintiff "entitled to reasonable compensation for services rendered in filing the action"); New York Times Co. v. Cent. Intel. Agency, 251 F.Supp.3d 710, 716 (S.D.N.Y. 2017) (finding plaintiff eligible for fees for work which "took place slightly before filing the complaint, all of which relates to drafting the complaint").

Because roughly two-thirds of the described activities in the entries for work performed from April through June 2020 reflect work that is not recoverable under FOIA (see Lee Decl. Ex. A), the Court will award fees for only one-third of the time billed during this period, or $14,890.[3]

### 2. Work Performed During Litigation

As discussed above, ASBL is ineligible for fees based on the PPP loan data produced in the Washington Post case, and it is not entitled to fees for the non-RRFB records or the documents produced pursuant to half of the interbranch communications request.

ASBL seeks $150,880 in fees for work done from July through October 2020 (see Lee Decl. Ex. A), which sum the SBA argues should be reduced by two-thirds because most of such work was devoted to pursuing the PPP loan data. (See Def.'s Opp'n. at 21:11–22:1.) The SBA's argument is supported by ASBL's billing records. (See Lee Decl. Ex. A (time entries including "work on motion for summary judgment," "[r]eview and track

---

[3] The Court notes that, for each time period discussed herein, the precision of its fee calculation is impeded by the form of ASBL's submission, in which, as discussed later herein (see infra Part C.4), all entries are presented in block-billing format.

1   DC case re: PPP data," and "CMC statement[s]" on related issues.) As discussed above,

2   the Court has found ASBL is ineligible for fees based on such work, and, accordingly, will

3   award fees for one-third of the work done in this time period, or $50,293.

4        ASBL seeks $152,268 in fees for work done from November 2020 through

5   December 2021 (see Lee Decl. Ex. A), which sum the SBA argues should be reduced by

6   two-thirds on grounds of excessiveness (see Def.'s Opp'n. at 24:9–10). The work done in

7   this time period resulted in the production of the non-RRFB records, which the Court has

8   determined does not support a fee award, but also the production of the supplemental

9   PPP loan data, which the Court has determined does support a fee award. (See Lee

10  Decl. Ex. A (time entries including "[r]eview and analy[sis] [of] records disclosed and not

11  disclosed by SBA regarding PPP loans; negotiation with "SBA re: search terms, and

12  request for search terms.") Accordingly, the Court will award fees for one-half of the work

13  done in this time period, or $76,134.

14       ASBL seeks $106,798 in fees for work done from January through December

15  2022 (see Lee Decl. Ex. A), which sum the SBA argues should be reduced by one-half

16  because the litigation during the year 2022 was primarily concerned with the interbranch

17  communications request, to which the SBA disputes ASBL entitlement (see Def.'s Opp'n.

18  at 24:18–25:5). As discussed above, ASBL is entitled to fees for one-half of the

19  interbranch communications request. The billing entries in this period, however, also

20  reflect work done regarding the "Regional Regulatory Fairness Board records" (see Lee

21  Decl. Ex. A), which the SBA agreed to produce prior to litigation, and for which ASBL is

22  ineligible (see supra Background Part C.1.) Accordingly, the Court will award fees for

23  one-half of the work done in this period, or $53,399.

24       In addition to the above-discussed time periods, ASBL seeks $83,047 for work

25  done after January 2023, the majority of which includes $74,957.50 in fees-on-fees. The

26  SBA does not dispute any of this request.

27  //

28  //

15

United States District Court
Northern District of California

### 3. Voluntary Reductions

ASBL has voluntarily reduced its fee request by $23,267.50, or $14,957.50 of its request for fees-on-fees, and $8,310 for fees based on a FOIA request not at issue in this litigation. (See Pl.'s Reply at 9:8–10, Lee Decl. Ex. A.)

### 4. Block Billing

Lastly, because the plaintiff has the burden to prove their fees were reasonably incurred, the Court may "reduce hours that are billed in block format" because such format "makes it more difficult to determine how much time was spent on particular activities." See Welch v. MetLife Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) (impliedly accepting 20% reduction for block-billed entries); Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (noting block billing format "lump[s] together multiple tasks, making it impossible to evaluate . . . reasonableness).

In the instant case, ASBL has submitted, for the months April 2020 through May 2023, a "summary of major tasks" performed by all attorneys and paralegals on a monthly basis. (See Lee Decl., Ex. A.) The descriptions provided do not identify which employee performed which task, nor how much time was spent on each task. (See id.; see also The State Bar of California Arbitration Advisory 2016-02 (2016) (noting "[b]lock billing may . . . inadvertently or intentionally inflate the actual time a lawyer takes to complete the listed tasks [by] camouflaging non-compensable tasks"; citing earlier advisory in which it opined block billing "may increase time by 10% to 30%").)

Although ASBL notes block billing is not "*per se*" prohibited (see Pl.'s Reply at 13:14), the records in the cases on which ASBL relies either provided considerably more detail than those submitted here, see Garcia v. Resurgent Capital Servs., No. Cv-11-1253 EMC, 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012) (accepting block-billed records where daily entries "contain[ed] enough specificity as to individual tasks to ascertain whether the amount of time spent performing work was reasonable"), or were offered in a much shorter and far less complex case, see Fisher v. SJB-P.D., Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (noting blind patron's ADA claim against restaurant that

16

refused him and service dog entrance settled "[a] little over a year after the suit was filed").

Although, at the hearing on its motion, ASBL offered to provide more detailed billing records to the Court, ASBL failed to do so upon receiving the SBA's opposition, wherein the SBA clearly raised a challenge to ASBL's block billing. As a result, the SBA was denied the opportunity to review, assess, and potentially challenge the records in a more meaningful manner.

Accordingly, as to the hours awarded that were block billed, the Court reduces its award by 20%, resulting in a fee award of $203,596.40.[4]

## CONCLUSION

For the reasons stated above, ASBL's Motion for Attorney's Fees and Costs is hereby GRANTED in part and DENIED in part, and ASBL is hereby awarded $203,596.40 in fees and $2,691.40 in costs, for a total award of $206,287.80.

**IT IS SO ORDERED.**

Dated: August 6, 2024

MAXINE M. CHESNEY
United States District Judge

---

[4] This sum is calculated as follows: $277,763 initial fee award, comprising $14,890 (April–June 2020) + $50,293 (July–October 2020) + $76,134 (November 2020–December 2021) + $53,399 (January–December 2022) + $83,047 (January–May 2023), minus $23,267.50 in voluntary reductions = $254,495.50, minus twenty percent block billing penalty = $203,596.40.

United States District Court
Northern District of California